ACCEPTED
03-14-00270-CV
5585831
THIRD COURT OF APPEALS
AUSTIN, TEXAS
6/8/2015 2:43:19 PM
JEFFREY D. KYLE
CLERK

NO.03-14-00270-CV̄

IN THE 3rd COURT OF APPEALS
AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
6/8/2015 2:43:19 PM
JEFFREY D. KYLE
Clerk

On appeal from the 207th District Court
of Comal County, Texas
**ORAL ARGUMENT REQUESTED**

## PETITION FOR WRIT OF HABEAS CORPUS, APPELLATE BRIEF, AND MOTION TO STAY JUDGMENT

CHRISTOPHER L. GRAHAM, Applicant, files the petition for writ of habeas corpus, appeal and motion to stay judgment and in support of this petition show the Court the following:

**IDENTITY OF THE PARTIES**

1. Petitioner, in the trial court is Christopher Graham, hereinafter referred to as "Graham"

2. Petitioner is proceeding Pro Se in this matter, State Bar number 24047549, mailing address PO Box 226265, Dallas, Texas; Telephone 469-605-6846; email: clgraham@lgi-law.com

3. Respondent, in the trial court is the State of Texas

4. Respondent's counsel is the Office of the District Attorney Jennifer Tharp; specific counsel handling this habeas corpus has not been designated from the office of the district attorney or is unknown at this time by Petitioner.

## TABLE OF CONTENTS

5. Index of Authorities     2

6. Statement of the Case     4

7. Statement Regarding Oral Argument     6

8. Issues Presented     6

9. Statement of Facts     7

10. Summary of the Argument     10

11. Statement of Jurisdiction     11

12. Standard of Review     12

13. Argument     15

14. Prayer     28

15. Appendix     30

## INDEX OF AUTHORITIES

a. Aguilar v. State, 621 S.W.2d 781 (Tex. Crim. App. 1981)
b. Brown v. United States, 356 U.S. 148, 153, 78 S. Ct. 622, 2 L. Ed. 2d 589 (1958)
c. Ex parte Acker, 949 S.W.2d 314, 316 (Tex.1997)

d. <u>Ex Parte Barnett</u>, 600 S.W.2d 252 (Tex. 1980)
e. <u>Ex parte Butler</u>, 372 S.W.2d 686, 687 (Tex. Crim. App. 1963)—
f. <u>Ex parte Camara</u>, 628 S.W.2d 803, 804 (Tex. Crim. App. 1982)
g. <u>Ex Parte Cardwell</u>, 416 S.W.2d 382 (Tex. 1967).
h. <u>Ex parte Curtis</u>, 568 S.W.2d 363, 366–367 (Tex. Crim. App. 1978)
i. <u>Ex parte Daniels</u>, 722 S.W.2d 707, 709 (Tex.Crim.App. 1987
j. <u>Ex parte Durham</u>, 921 S.W.2d 482, 485 (Tex.App.—Corpus Christi 1996, orig. proceeding)
k. <u>Ex parte Durst</u>, 148 S.W.3d 496, 499 (Tex. App., Houston [14th Dist.] 2004, pet. ref'd)
l. <u>Ex parte Hiester</u>, 572 S.W.2d 300, 303 (Tex.1978)
m. <u>Ex Parte Hightower</u>, 877 S.W.2d 17 (Tex. App. Dallas 1994), writ dismissed w.o.j., (July 28, 1994)
n. <u>Ex parte Jacobs</u>, 664 S.W.2d 360, 364 (Tex. Crim. App. 1984)]
o. <u>Ex parte Keene</u>, 909 S.W.2d 507, 508 (Tex.1995);
p. <u>Ex parte Krupps</u>, 712 S.W.2d 144, 149 (Tex. Crim. App. 1986), cert. denied, 479 U.S. 1102 (1987)
q. <u>Ex Parte Laymon</u>, 679 S.W.2d 532, 534 (Tex.App.—Houston [1st Dist.] 1984, orig. proceeding)
r. <u>Ex parte Moorehouse</u>, 614 S.W.2d 450, 451 (Tex. Crim. App. 1981)
s. <u>Ex parte Occhipenti</u>, 796 S.W.2d 805, 809 (Tex.App.—Houston [1st Dist.] 1990, orig. proceeding)
t. <u>Ex parte Pink</u>, 746 S.W.2d 758, 762 (Tex. Crim. App. 1988)
u. <u>Ex parte McDonald</u>, 852 S.W.2d 730, 735 (Tex. App., San Antonio 1993)
v. <u>Ex parte Murphy</u>, 669 S.W.2d 320, 322 (Tex. Crim. App. 1984), cert. denied, 469 U.S. 823 (1984)
w. <u>Ex parte Reese</u>, 23 S.W.3d 54, 56 (Tex.App.—Austin 2000, pet. ref'd).
x. <u>Ex parte Salfen</u>, 618 S.W.2d 766, 769 (Tex. Crim. App. 1981)
y. <u>Ex parte Shields</u>, 779 S.W.2d 99, 101 (Tex.App.—Houston [1st Dist.] 1989, orig. proceeding)
z. <u>Ex parte Sproull</u>, 815 S.W.2d 250, 250 (Tex.1991).
aa. <u>Ex parte Strickland</u>, 724 S.W.2d 132, 134 (Tex.App.—Eastland 1987, orig. proceeding)
bb. <u>Ex Parte Sweeney</u>, 628 S.W.2d 855 (Tex. App. Fort Worth 1982).
cc. <u>Ex parte Taylor</u>, 807 S.W.2d 746, 748 (Tex. Crim. App. 1991)
dd. <u>Ex parte Thompson</u>, 508 S.W.2d 624, 625 (Tex. Crim. App. 1974)
ee. <u>Ex parte Trillo</u>, 540 S.W.2d 728, 731 (Tex. Crim. App. 1976), *overruled on other grounds,*

ff. Ex Parte Werblud, 536 S.W.2d 542 (Tex. 1976); In re Hammond, 155 S.W.3d 222 (Tex. App. El Paso 2004)

gg. In Re Application of Mackay, 35 P.2d 385 (Cal. 1934)

hh. In re Brown, 114 S.W.3d 7, 12-13 (Tex.App.—Amarillo 2003, orig. proceeding).

ii. In re Farquhar ,492 F2d 561 (D.C. Cir. 1973)

jj. In re Greene, 213 F.3d 223 (5th Cir., 2000)

kk. In re Hammond, 155 S.W.3d 222 (Tex. App. El Paso 2004)

ll. In re Monroe, 532 F.2d 424, 425–426 (5th Cir. [Tex.] 1976)

mm. In re Office of the Atty. Gen., ___ S.W.3d ___ (Tex.2013) (No. 11-0255; 3-8-13)

nn. Lee v. State, 799 S.W.2d 750, 752-753 (Tex. Crim. App. 1990

oo. Roselle  v. State, P.2d 486 (Okla. Crim. App. 1973)

pp. Rowe v. Moore, 756 S.W.2d 117 (Tex. App. Houston 1st Dist. 1988

qq. Taylor v. District Court for the Fourth Judicial Dist., 434 P.2d 679 (Alaska 1967)

rr. Williams v. Estelle, 4566 F.Supp. 1376 (S.D. Tex. 1983

ss. Wise v. Commonweath, 34 S.E. 453 (Va. 1899)

tt. Tex. Cod. Crim. Proc. Art. 4.04 § 1

uu. Tex. Code. Crim. Proc. Art. 11.01

vv. Tex. Code Crim. Proc. Art. 11.23

ww. Tex. Code Crim. Proc. Art. 17.15(1), (2), (3), (4), (5)

xx. Tex. Const. Art. 5 § 5;

yy. Tex. Fam. Code §157.163

zz. Tex. Gov't Code Sec. 21.002(d)

## STATEMENT OF THE CASE

16. On 2/25/2014, State v. Chelsie Chenoweth, case number CR2013-366 was scheduled for arraignment (CR Supplement 1:20) and the Court issued its show cause order against Graham claiming that Graham arrived tardy to court . (CR 1:16)

17. On 3/10/2014,  Graham filed his response contesting the show cause order and requesting among other things a continuance of the show cause

hearing, a court appointed attorney, a personal recognizance bond, and that an administrative law judge be appointed in the case of a finding of contempt. (CR Supplement 1:5-6)

18. The Court rescheduled the 3/13/2014 show cause hearing date to 4/8/2014 (CR Supplement 1:9)

19. On 4/8/2014 the court made a finding of contempt against Graham in case number CR2013-366. (CR 1:24).

20. On 4/8/2014, Graham was committed to the Comal county jail (App. 1) and released after payment of a $5,000 cash appeal bond (App. 2).

21. 4/21/2014, Graham filed notice of appeal (CR 1: 32) and a motion for new trial (CR 1:35).

22. 4/28/2014, the Court denied Graham's motion for new trial (CR 38).

23. 5/5/2014, Graham filed a request for a free transcript (CR Supplement 1:21).

24. 9/2/2014, the State filed its contest of Graham's request for free transcript and affidavit of indigence (CR Supplement 1:23)

25. 9/23/2014 a hearing was held on Graham's request for a free transcript and affidavit of indigence, and the Court denied Graham's request to proceed as indigent on appeal (CR 61)

26. 10/2/2014 Graham filed its motion challenging the order sustaining the State's contest. (CR 1:78).

27. 3/19/2015 Graham filed an Application for Writ of Habeas Corpus. (CR 2nd Supplement 1:4).

28. Graham received no response to the request for a hearing on the application for writ of habeas corpus, and thus requested that the trial court take action on the application either by setting a hearing or ruling on the application. The trial court has done neither. (CR 2nd Supplement 1:9).

## STATEMENT REGRADING ORAL ARGUMENT

29. Oral argument is requested by Graham at this time.

## ISSUES PRESENTED

30. Is a finding of contempt against an attorney wrong where: 1)the attorney appeared at court a few minutes late after having been delayed by traffic and jail transport delays after having been conducting a client interview in a nearby jail during the recess for a client who was scheduled for jury trial in a few days; 2) where the court issuing the show cause order had gone on a lunch break for more than an hour and when the attorney and client had completed the documentation for the disposition of the case and where the court knew that the

attorney and the client had been waiting for several hours to dispose of the case; 3) where the purpose of the scheduled hearing for client had been completed by attorney; 4) where the court singled out attorney for punishment since the court never issued show cause orders to other attorneys tardy by a few minutes to court; 5) where there was no evidence of willful intent to disregard the Court's order, 6) where there was no admonition to the attorney that a failure to return at the designated time would result in contempt; 7) where the finding of contempt was made by an administrative judge where there was no previous finding of contempt by the trial judge; and 8) where the Court did not advise or afford the alleged contemnor with the right to counsel?

**STATEMENT OF FACTS**

31. Graham is currently being illegally restrained as a result of the actions of administrative law Judge Douglas Shaver.

32. The basis of the restraint is the contempt order issued by Judge Shaver on 4/8/2014 (CR 1:24)

33. On 2/12/2014, Graham called the court to request that the case State v. Chelsie Chenoweth, be scheduled for court on 2/13/2014. Graham was told by the court coordinator that the case had been set for hearing. (RR 2:43 l. 25, RR 2:44 l. 1-8)

34. On 2/13/2014, Movant appeared at court expecting to be able to resolve this case and was told that the Court had erred and that case had not been added to that day's docket. Court personnel told Graham to return to court on 2/25/2014. (RR 2:43 l. 25, RR 2:44 l. 1-8)

35. On 2/25/2014, the case State v. Chenoweth, case number 2013CR366 had been set for arraignment hearing. (CR Supplement 1:20). Graham arrived at the court shortly before 9 am, but was in the hallway talking to a client on the phone. (RR 2:47 l. 21, RR 2: 48 l. 1)

36. Client Chenoweth had already checked with the court (RR 2:30 l.15) and shortly thereafter, at around 9 am, Graham announced to the Court that he was prepared to proceed on the arraignment hearing (RR 2: 47 l. 11-18).

37. Shortly before 10 am and after a few minutes of negotiation with the prosecutor in the case, arraignment documents and plea documents were signed and prepared by client Chenoweth indicating that she understood her charges in the case and the plea bargain terms. (RR 2:44 l. 16-22).

38. For several hours, Graham and client Chenoweth waited for the Court to hear and enter the plea in the case all to no avail. (RR 2:44 l.25, RR 2:45 l. 1-4).

39. Movant had to bring the Chenoweth case to the Court's attention several times that the case was ready for plea and ready to be disposed of. (RR 3:48 l. 1-10); (RR 3:62 l. 18-22)

40. The Court took a break for an extended period and did not hear the plea for Graham's client. Around 11:45am, the Court entered recess until 1:15pm for lunch. (RR 3:63 l. 2-9).

41. After Court resumed the Court still did not hear Graham's client's plea (RR 3: 74 l. 11-14).

42. Before breaking for lunch the Court indicated that before Graham's plea was to be heard, that there would be several contested cases that the Court would hear before it considered the Chenoweth plea. (RR 3:62 l. 5-10) ; (RR 3:62 l. 20-21); (RR 3:63 l. 5-6); (RR 3:62 l. 13-21).

43. During the recess, Graham went to the Bexar county jail in order to talk briefly with a client concerning his upcoming jury trial. (RR 3:45 l. 5-14).

44. Due to heavy traffic and delays in transporting inmates in the Bexar county jail, Graham was delayed in coming back to the court by a few minutes. Graham arrived in the courtroom at approximately 1:35pm. (RR 3:54 l. 4-8).

45. When Graham entered the courtroom client Chenoweth had been released and the trial Court presented him with a show cause order, alleging that attorney Graham was in contempt of court. (RR 2:46, l. 4-7).

46. The show cause hearing was scheduled for 3/13/2014 (CR 1:16), however Graham filed a request for continuance of the hearing because he was scheduled for court in another jurisdiction on the same day. (CR Supplement 1:4-6)

47. No contempt finding or order was ever made or entered at the show cause hearing of 3/13/2014 (CR Supplement 1:21). The case was referred to administrative law judge Doug Shaver for hearing on 4/8/2014. (CR Supplement 1:7).

48. On 4/8/2014, Graham was wrongly found guilty of contempt due to being tardy by a few minutes and because he did not appear at the 3/13/2014 show cause hearing even though a continuance was requested. (CR Supplement 1:12)

49. The sentence assessed against Graham was 15 days in the Comal County jail and a $300 fine (CR Supplement 1:12). Graham's bond was set at $5,000 cash (CR Supplement 1:15). Graham paid the $5,000 (five thousand dollar) cash bond in order to secure his release. (CR Supplement 1:16).

## SUMMARY OF ARGUMENT

50. The trial court 1) failed to provide Graham with his right to an attorney 2) failed to inquire into his qualification for a court appointed attorney when such a request was made 3) failed to inform Graham about his right to a jury trial 4) failed to make a contempt finding before transferring the case for hearing before an administrative law judge 5) failed to evaluate the evidence properly in finding contempt since there was no evidence of intentional disrespect to the Court or actual delay in the administration of justice 6) imposed a draconian punishment on Graham of 15 days incarceration which is a violation of his due process rights and 7) imposed a unsupportable amount for an appeals bond when it was not substantiated by the evidence. Consequently, Graham's contempt finding must be reversed

## STATEMENT OF JURISDICTION

46. The court of appeals has appellate jurisdiction in criminal habeas corpus matters Denby v. State, 627 S.W.2d 435 (Tex. App., Houston [1st Dist.] 1981, no pet.), cert. denied, 462 U.S. 1110 (1983). Since the function of a writ of habeas corpus is to secure a person's release from confinement or restraint, the remedy may be used only when a court has entered an order restraining the contemnor , see Tex. Code. Crim. Proc. Art. 11.01. However, this does not mean that the

contemnor must actually be confined while awaiting the disposition of the writ of habeas corpus. It is possible to obtain a stay of the contempt order while seeking habeas corpus relief, *see* Ex parte Camara, 628 S.W.2d 803, 804 (Tex. Crim. App. 1982). A person free on bond is also considered to be in custody for habeas corpus purposes, *see* Ex parte Trillo, 540 S.W.2d 728, 731 (Tex. Crim. App. 1976), *overruled on other grounds,* Aguilar v. State, 621 S.W.2d 781 (Tex. Crim. App. 1981). Graham has filed an application for writ of habeas corpus with the trial court (CR 2nd Supplement 1:4); therefore, this court has appellate jurisdiction to decide this matter.

**STANDARD OF REVIEW**

47. Courts are expected to guard against confusing acts that offend their sensibilities with acts that are actually disrespectful or that obstruct the administration of justice, *see* Brown v. United States, 356 U.S. 148, 153, 78 S. Ct. 622, 2 L. Ed. 2d 589 (1958). The act itself must be shown to be intentionally disrespectful; whether the statement offended the court is not the test. Contempt is not to be presumed; on the contrary, it is presumed not to exist, Ex parte Taylor, 807 S.W.2d 746, 748 (Tex. Crim. App. 1991). Therefore, the fact that conduct may be irritating or exasperating does not necessarily render it contemptuous, *see* Ex parte Pink, 746 S.W.2d 758, 762 (Tex. Crim. App. 1988). To sustain contempt proceedings, the order disobeyed must specifically command or order the

individual to do or not to do some act or acts. The order must provide the person with specific and definite notice of the acts the person must or must not perform in order to avoid being held in contempt, Lee v. State, 799 S.W.2d 750, 752-753 (Tex. Crim. App. 1990). Furthermore, failure to appear in court due to conflicting court settings generally is not appropriate, *see* Ex parte Butler, 372 S.W.2d 686, 687 (Tex. Crim. App. 1963)—contempt improper for minor tardiness caused by conflicting settings in courts of equal jurisdiction.

48. A writ of habeas corpus may be issued in cases in which the court had no power to issue the contempt order, as well as cases in which the power existed but it was exercised in a manner or degree not authorized by law Tex. Code Crim. Proc. Art. 11.23. Thus, a contemnor can challenge the court's jurisdiction to render a contempt judgment as well as the lawfulness of the way in which it enforced its jurisdiction, *see* Ex parte Salfen, 618 S.W.2d 766, 769 (Tex. Crim. App. 1981).

49. A contemnor may also challenge the sufficiency of the evidence to support the contempt order. When reviewing the basis for the contempt order, the appellate court will view the evidence in the light most favorable to the order, *see* Ex parte Murphy, 669 S.W.2d 320, 322 (Tex. Crim. App. 1984), cert. denied, 469 U.S. 823 (1984). However, a contempt order may be set aside if the Court determines that the lower court had no reasonable basis for entering a contempt order, *see* Ex parte Butler, 372 S.W.2d 686, 687 (Tex. Crim. App. 1963). A court will issue a writ of

habeas corpus if the order underlying the contempt is void or if the contempt order itself is void either because the order was beyond the power of the court or because it deprived the contemnor of his or her liberty without due process of law. Ex Parte Barnett, 600 S.W.2d 252 (Tex. 1980). The Court will take into consideration the entire record to determine whether due process was accorded. Ex Parte Cardwell, 416 S.W.2d 382 (Tex. 1967). The Court will decide whether the trial court's contempt finding is so completely without evidentiary support that it deprives the relator of liberty without due process of law. In re Hammond, 155 S.W.3d 222 (Tex. App. El Paso 2004); Ex Parte Hightower, 877 S.W.2d 17 (Tex. App. Dallas 1994), writ dismissed w.o.j., (July 28, 1994).

50. In reviewing the trial court's application of the law to the facts in a contempt proceeding, the appellate court is to apply the same standard used in original mandamus proceedings for review of a trial court's application of the law. Ex Parte Hightower, 877 S.W.2d 17 (Tex. App. Dallas 1994), writ dismissed w.o.j., (July 28, 1994). The Appellate court reviews the trial court's determination of the legal principles controlling its ruling with less deference than it reviews its factual findings. A trial court has no discretion in determining what the law is or in applying the law to the facts, and a trial courts clear failure to analyze or apply the law correctly is an abuse of discretion. Ex Parte Hightower, 877 S.W.2d 17 (Tex. App. Dallas 1994), writ dismissed w.o.j., (July 28, 1994).

## ARGUMENT

### a. The contempt finding must be overturned because Graham was not afforded an attorney at the contempt hearing.

51. Graham was not afforded the right to an attorney. The court must inform a pro se party facing incarceration for indirect contempt (whether civil or criminal) of the right to an attorney. Ex parte Acker, 949 S.W.2d 314, 316 (Tex.1997); Ex parte Strickland, 724 S.W.2d 132, 134 (Tex.App.—Eastland 1987, orig. proceeding); see Tex. Fam. Code §157.163 see, e.g., Ex parte Hiester, 572 S.W.2d 300, 303 (Tex.1978) (trial court could not hold contempt hearing when contemnor's attorney was delayed in federal court); *see* also Ex parte Occhipenti, 796 S.W.2d 805, 809 (Tex.App.—Houston [1st Dist.] 1990, orig. proceeding) (contempt order not required to include recitation that contemnor knowingly and intelligently waived right to counsel). Furthermore, if the pro se party facing incarceration is indigent, the court must inform the party of the right to a court-appointed attorney. Ex parte Keene, 909 S.W.2d 507, 508 (Tex.1995); Ex parte Strickland, 724 S.W.2d at 135. Graham in his Response to Show Cause Order made a request for a court appointed attorney (CR Supplement 1:5). The Court summarily denied the request and refused to conduct a hearing into Graham's indigency (RR 2:5, l. 6-11). Such failure is a violation of Applicant's due process rights.

**b. Graham was not advised of his right against self-incrimination at the contempt hearing before he testified at the contempt hearing**

52. Graham was not notified by the Court of his right against self-incrimination. A party facing incarceration for criminal contempt must be notified of the right against self-incrimination if the contemnor was compelled to testify in a criminal proceeding. See In re Brown, 114 S.W.3d 7, 12-13 (Tex.App.—Amarillo 2003, orig. proceeding). The Court did not provide any notification to Graham of his rights against self-incrimination. Such failure was a violation of Applicant due process rights. (RR 2:42 l. 22-24, RR 2:43 l. 2-10).

**c. Graham was not afforded a right to a jury trial when he was faced with possible punishment over 6 months at the contempt hearing**

53. Graham was entitled to a jury trial. A person accused of contempt has a right to the jury trial if the alleged offense is criminal rather than civil; constructive rather than direct, and serious rather than petty; that is where the possible punishment exceeds 6 months imprisonment. Ex Parte Werblud, 536 S.W.2d 542 (Tex. 1976); In re Hammond, 155 S.W.3d 222 (Tex. App. El Paso 2004). Criminal contempt is punitive. The purpose of a criminal contempt order is to punish the contemnor for some act that affronted the dignity and authority of the court. Ex parte Werblud, 536 S.W.2d at 545; Ex parte Reese, 23 S.W.3d 54, 56 (Tex.App.— Austin 2000, pet. ref'd). In contrast to civil contempt, compliance with the court's

criminal contempt order will not relieve the contemnor from being punished for her past acts. *See* Ex Parte Laymon, 679 S.W.2d 532, 534 (Tex.App.—Houston [1st Dist.] 1984, orig. proceeding). An order for criminal contempt will specify a certain amount of time that the contemnor must spend in jail. *See* In re Office of the Atty. Gen., ___ S.W.3d ___ (Tex.2013) (No. 11-0255; 3-8-13). Indirect, or constructive, contempt is committed outside the presence of the court. Ex parte Durham, 921 S.W.2d 482, 485 (Tex.App.—Corpus Christi 1996, orig. proceeding) (disobeying discovery orders); Ex parte Shields, 779 S.W.2d 99, 101 (Tex.App.— Houston [1st Dist.] 1989, orig. proceeding) (disobeying injunctive order); *see also In re Reece*, 341 S.W.3d at 367 (perjury committed during deposition is indirect contempt if perjury obstructs court's performance of its duties). Indirect contempt requires testimony or documentary evidence to establish the contemptuous conduct. Ex parte Daniels, 722 S.W.2d 707, 709 (Tex.Crim.App. 1987).

54. The contempt order in this case specified a certain number of days of incarceration of Graham, thus this is an instance of criminal contempt. (CR 1:24) This case involves a case of constructive contempt because the circumstances of the time of arrival of Graham were outside of the presence of the court and had to be determined by testimony during a contempt hearing. (RR 2:43; where Graham testifies to circumstances of delay in arriving at court). Graham, however, was

faced with several allegations of how his behavior was alleged to have been contemptuous 1) a failure to arrive exactly at 9 am on 2/25/2014; 2) a failure to return to court at 1:15 pm on 2/25/2014, 3) a failure to appear in court at the 3/13/2014 show cause hearing and 4) and alleged false statements in the Response to Courts Order to Show Cause. (CR 1:19-21). If the allegations would have been proven to be true, the Court could have elected to run the sentences consecutively and Graham would have been exposed to a sentence longer than 6 months. As a result the Court was wrong when it failed to inform and allow Graham to exercise his right to have a jury trial. Instead the trial court scheduled the case to be heard before Judge Shaver, (CR Supplement 1:7). A party facing incarceration for criminal contempt must be notified of the right to a jury trial if the contemnor was subject to "serious" punishment. Ex parte Sproull, 815 S.W.2d 250, 250 (Tex.1991).

### d. This case was illegally transferred to be heard by an administrative law judge when there had been no contempt finding by the trial court

55. The trial court illegally referred the case against Graham to an administrative law judge without following protocol for such transfer. In order to invoke the mandatory requirement for a trial court to refer contempt proceedings to the presiding judge of the administrative region in which the alleged contempt took place the following must take place 1) the offended court must enter a finding of

contempt against an officer of the court and 2) the officer of the court must file a proper motion in the offended court, Tex. Gov't Code Sec. 21.002(d). There was no show cause hearing that was conducted on 3/13/2014; no order of contempt was ever entered finding Graham guilty of contempt by the trial court. (CR Supplement 1:21) Yet the court still referred the case to be heard by administrative judge Douglas Shaver. (CR Supplement 1:7). The illegal transfer violated the Tex. Gov't Code Sec. 21.002(d) and Graham's due process rights and therefore Shaver's contempt order must be reversed.

### e. The $5,000 cash appeal bond and punishment were not supported by any evidence in the record

56. There was no evidence to support such a high bail amount; Graham should have been afforded a personal recognizance bond. The Code of Criminal Procedure requires that bail be set sufficiently high to ensure the defendant's appearance, but not so high as to be an instrument of oppression Tex. Code Crim. Proc. Art. 17.15(1), (2); Ex parte McDonald, 852 S.W.2d 730, 735 (Tex. App., San Antonio 1993). In setting this amount, the official should consider the nature of the offense and the circumstances under which it was committed, Tex. Code Crim. Proc. Art. 17.15(3); The risk of flight must also be evaluated in light of reasonable conditions of bond that diminish any risk of flight. Ex parte Durst, 148 S.W.3d 496, 499 (Tex. App., Houston [14th Dist.] 2004, pet. ref'd); The future safety of

the victim of the alleged offense and the community must also be considered in setting the bail amount Tex. Code Crim. Proc. (5). The official setting bail may consider any criminal record the defendant may have, *see* Ex parte Thompson, 508 S.W.2d 624, 625 (Tex. Crim. App. 1974). The defendant's ability to make bail is another factor to be considered in setting the amount Tex. Code Crim. Proc. Art. 17.15(4). None of these factors were considered by Judge Shaver in setting the $5,000 cash bond in this case. (RR 2:73 l. 11-25); (RR 2:72 l.1-7). A $5,000 cash bond for alleged tardiness to court by Graham is completely disproportionate to the alleged offense. (CR Supplement 1:15). There was no evidence presented that Graham was a flight risk. There was no identifiable "victim" of the alleged offense and there was certainly no evidence that there would be any possible future harm to an alleged "victim". Graham does not have, nor is there any evidence that Graham has any prior criminal history. Furthermore, the Court did not take into consideration Graham's ability to make bail. When there is an accusation of contempt against an officer of the court, the officer of the court is entitled to a personal recognizance bond. Tex. Gov't Code Sec. 21.002(d). There was no evidence elicited that should have changed that requirement during the appeal of this case. The Court's appeal bond setting in this case was comparable to Graham being charged with an aggravated felony.

57. Moreover, punishment of 15 days assessed in this case was draconian, considering that Movant is an officer of the court and has other obligations in other courts. The Court could have and should have and could have considered other alternatives to confinement, such as a fine, community service, house arrest, reporting to confinement on weekends, or work release to name a few. Such a high bail amount and such disproportionate punishment assessed by the trial court violated Graham's due process rights.

**f. When it reset the case to 1:15pm, the Court did not specify that failure to comply for any reason would be grounds for contempt**

58. The Court's instruction does not provide notice that the failure to arrive at 1:15 pm after the recess would result in contempt. The order must provide the person with specific and definite notice of the acts the person must or must not perform in order to avoid being held in contempt, Lee v. State, 799 S.W.2d 750, 752-753 (Tex. Crim. App. 1990). The trial court simply said that the case would be reset to 1:15 pm (RR 3:63 l. 9). The Court gave no admonishment that a failure to comply for any reason would be grounds for contempt, thus a contempt finding against Graham was wrong here.

**g. Graham's actions did not interfere with the administration of justice nor were they intentionally disrespectful to the Court.**

59. Graham's actions did not obstruct the administration of justice nor were they intentionally disrespectful. Criminal contempt usually results from doing an act that the court has prohibited. This may be an act that obstructs the administration of justice or tends to bring the court into disrespect Ex parte Krupps, 712 S.W.2d 144, 149 (Tex. Crim. App. 1986), cert. denied, 479 U.S. 1102 (1987). The essence of contemptuous conduct is that it obstructs or tends to obstruct the proper administration of justice Ex parte Jacobs, 664 S.W.2d 360, 364 (Tex. Crim. App. 1984). However, courts are expected to guard against confusing acts that offend their sensibilities with acts that are actually disrespectful or that obstruct the administration of justice, *see* Brown v. United States, 356 U.S. 148, 153, 78 S. Ct. 622, 2 L. Ed. 2d 589 (1958)]. The act itself must be shown to be intentionally disrespectful; whether the statement offended the court is not the test. Contempt is not to be presumed; on the contrary, it is presumed not to exist Ex parte Taylor, 807 S.W.2d 746, 748 (Tex. Crim. App. 1991). Therefore, the fact that conduct may be irritating or exasperating does not necessarily render it contemptuous *see* Ex parte Pink, 746 S.W.2d 758, 762 (Tex. Crim. App. 1988). However, improper actions by counsel should only be considered contemptuous if they actually interfere with the administration of justice, *see* Ex parte Curtis, 568 S.W.2d 363, 366–367 (Tex. Crim. App. 1978)—attorney's remarks concerning judicial bias not disruptive.

60. For there to be contempt there need be an intentional or willful action or flagrant disregard of an order, <u>Williams v. Estelle</u>, 4566 F.Supp. 1376 (S.D. Tex. 1983); <u>Ex Parte Taylor</u>, 807 S.W.2d 756 (Tex. Crim. App. 1991).  There is no contempt where there is a good faith attempt at substantial compliance with a court order; <u>Rowe v. Moore</u>, 756 S.W.2d 117 (Tex. App. Houston 1st Dist. 1988); Ex Parte Sweeney, 628 S.W.2d 855 (Tex. App. Fort Worth 1982).  If an attorney fails to appear at trial but the facts show a good cause or excusable neglect for the failure then there is no contempt that has been committed.  <u>Williams v. Estelle</u>, 4566 F.Supp. 1376 (S.D. Tex. 1983); <u>Ex Parte Taylor</u>, 807 S.W.2d 756 (Tex. Crim. App. 1991).

61. Graham, being one of the only African-American, out-of-town lawyers practicing on the Court appointment list in Comal county had been singled out for contempt action whereas other attorneys had not (RR 2:26 l.10-20; not a regular practice of the court to make an attorney appearance shortly after 9 am the basis of a show cause order, yet it was the basis of a show cause order against Graham).  Standing in the hall way for a brief period of time in order to complete a client phone call shows the respect that Graham had for the Court for not wanting to interrupt Court proceedings.  There were no obstructions to the proper administration of justice because client Chenoweth was already in the courtroom, had already announced her appearance, and attorney Graham entered the

courtroom a few minutes later and indicated to the court that he was ready to proceed with arraignment (RR 2: 47 l. 11-18). The case had been set for arraignment and the necessary arraignment documents had been signed by the client on 2/25/2014 and presented to the Court. (CR 1:15). The purpose of the hearing for 2/25/2014 had been accomplished and there was no delay in the case. Upon having completed the purposes of the hearing it was usually the Court's practice to reschedule the case for the entry of a plea or for a trial setting. Even though the case was not scheduled for plea disposition on 2/25/2014 (CR Supplement 1:20), Graham was prepared to dispose of the case. Graham brought it to the Court's attention numerous times that the case was ready to be disposed of by entry of a plea all to no avail. (RR 3:48 l. 1-10); (RR 3:62 l. 18-22). Graham waited hours attempting to resolve the case. (RR 2:44 l. 24-25; RR 2:45 l. 1-4). During the lunch recess, Graham went to the jail in Bexar county to talk to a client who had a trial setting in a few days and in the process was a few minutes late in getting back because of traffic and because there was a delay in transporting the client in the Bexar county jail. (RR 3:45 l. 5-14). In fact, Graham made a good faith effort to comply with the Court's order by coming back to the Court as quickly as possible (RR 3:54 l. 4-8).

62. The traffic delay, the jail delay, the fact that the delay was only a few minutes, and the fact that the purpose of the arraignment hearing had been

accomplished, shows that there was no delay in the administration of justice. By bringing it to the trial court's attention that the case was set for plea, Graham was actually expediting the conclusion of the case and the administration of justice. There was no flagrant disregard for the order of the trial court and Graham provided a good cause reasoning or excusable neglect for the slight tardiness in arriving back at Court.

63. Furthermore Graham actions on 3/13/2014 by not appearing at the show cause hearing were not contemptuous because a continuance was requested in advance and the Court was notified of Graham's conflicting court settings on that day. (CR Supplement 1:4-6). Graham also attempted to call the trial court about the conflicting court settings and how he could not attend the 3/13/2014 show cause hearing but was denied (RR 2:46 l. 20-25; RR 2:47 l. 1).

### h. Other Courts refuse to hold contempt in similar cases

64. Courts in Texas have been reluctant to impose contempt where an attorney fails to appear or is tardy because of a conflicting legal obligation, Minor tardiness in arriving to court because of concomitant legal obligations is not contemptuous. Ex parte Butler, 372 S.W.2d 686, 687 (Tex. Crim. App. 1963)(contempt improper for minor tardiness caused by conflicting settings in courts of equal jurisdiction) ; In re Monroe, 532 F.2d 424, 425–426 (5th Cir. [Tex.] 1976) (contempt not

justified when counsel absent due to trial in another jurisdiction and withdrawal of local counsel).

65. Furthermore, Courts in other jurisdictions have been reluctant to find contempt where an attorney is briefly tardy or fails to appear because of conflicting legal obligations: Other courts in other jurisdictions have held that minor tardiness by an attorney does not justify contempt where there is no contumacious intent. *See* In re Farquhar 492 F2d 561 (D.C. Cir. 1973) (defense attorney found not guilty of contempt for returning to trial 8 minutes late where he had 2 conflicting court settings; the court did not find contumacious intent to justify a finding of contempt); In Re Monroe 532 F.2d 424 (5th Cir. 1976) (no finding of contempt where an out of state attorney failed to appear for trial due to conflicting trial engagement; the court found that the attorney's conduct was at most negligent, and that he lacked the intentional or willful action or flagrant disregard of the District Court's rules necessary for contempt); Taylor v. District Court for the Fourth Judicial Dist., 434 P.2d 679 (Alaska 1967) (no finding of contempt where the attorney accepted a criminal action just 2 days before the scheduled trial thinking that the matter would be completed before the date of the trial and where the hearing was still ongoing during the originally scheduled trial; the court determined that while the attorney may have been careless in failing to anticipate the possibility of a conflict, his actions did not give rise to an inference of willful

disobedience of the District Court's order); <u>Ex Parte Butler</u>,372 S.W.2d 686 (Tex. Crim. App. 1963)(no contempt where defense attorney was 10 to 20 minutes late for docket call; the court noted that if the case had been set for trial that the attorney's absence would have only delayed it by a few minutes); <u>Wise v. Commonweath</u>, 34 S.E. 453 (Va. 1899) (no contempt where the attorney was 2.5 hours late for trial and the court was waiting for him where he was involved in another ongoing trial; the court determined that there was not the slightest contempt of or disrespect to the lawful authority of the court that found him in contempt). <u>In Re Application of Mackay</u>, 35 P.2d 385 (Cal. 1934)(no contempt where attorney appeared 38 minutes late in returning to court after a noonday continuance without justification in the absence of an express finding by the trial court that the attorney had the ability to attend the court at the time designated); <u>Roselle v. State</u>, P.2d 486 (Okla. Crim. App. 1973) (no contempt where the court observed that a rule stating that attorneys must always be present when the case is scheduled without allowing any flexibility was unrealistic, and where attorney provided no reason for tardiness); <u>In re Greene</u>, 213 F.3d 223 (5th Cir., 2000)(no finding of contempt where the attorney was 10-12 minutes late for arraignment and offered a plausible reason for tardiness). Since there was a plausible explanation, the delay was slight and caused because of circumstances beyond Graham's control, and there was no delay in the administration of justice because the

objectives of the arraignment hearing had been accomplished, there should be no finding of contempt.

**PRAYER**

WHEREFORE PREMISES Graham seeks the following:

1) a stay of the contempt order while seeking habeas corpus relief and pursuing this appeal in accordance with Ex parte Camara, 628 S.W.2d 803, 804 (Tex. Crim. App. 1982);
2) that the Court grant Graham's application for habeas corpus and reverse the trial court's contempt finding
3) that the Court order the release and return of the $5,000 cash bond money immediately to Christopher Lauren Graham and that all bond obligations be discharged
4) and any other such relief in law or equity.

Respectfully submitted,

Lauren Graham & Associates PLLC

By:

CHRISTOPHER L. GRAHAM
Texas Bar No. 24047549
PO Box 226265
Dallas, Texas 75222
clgraham@lgi-law.com

**CERTIFICATE OF SERVICE**

PETITION FOR WRIT OF HABEAS CORPUS, APPELLATE BRIEF, AND MOTION TO STAY JUDGMENT

This is to certify that on 6/8/2015, a true and correct copy of the above and foregoing document was served on the following parties:

Comal County District Attorney via fax: 830-608-2008
Judge Gary Steel via fax: 830-608-2030
Judge Doug Shaver: 830-608-2030

Christopher L. Graham

## WORD COUNT CERTIFICATE

Pursuant to TEX. R. APP. P. 9.4, I hereby certify that this appellate brief contains 6720 words. This is a computer-generated document created in Microsoft Word. In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the document.

**APPENDIX**

1. Comal County Sheriff's Office Record of Graham's Incarceration    App.    1; page 1

2. Receipt Evidencing Payment of Appeal Bond    App.    2; page 2

3. Clerk's Record Volume 1 of 1    App. 3; (CR 1); page 3

4. Supplemental Clerk's Record Volume 1 of 1    App.    4    (CR Supplement 1); page 95

5. Reporter's Record Volume 1 of 3    App.  5;  (RR  1); page 121

6. Reporter's Record Volume 2 of 3    App.  6;  (RR  2); page 128

7. Reporter's Record Volume 3 of 3    App.  7;  (RR  3); page 203

8. 2nd Supplemental Clerk's Record Volume 1 of 1    App.    8    (CR    2nd Supplement); page 288

# AFFIDAVIT

STATE OF TEXAS

COUNTY OF DALLAS

BEFORE ME, the undersigned Notary Public, on this day personally appeared CHRISTOPHER L. GRAHAM, who, being by me duly sworn on oath deposed and said the following:

"I am the Petitioner for Habeas Corpus in the above-entitled and numbered cause. I have read the Attached Petition for Writ of Habeas Corpus and Motion to Stay Judgment and swear that all of the allegations of fact contained in it are true according to my belief and I have personal knowledge of all statements contained therein."

CHRISTOPHER GRAHAM, affiant

SUBSCRIBED AND SWORN TO BEFORE ME on the ___3___ day of MARCH, 2015, to certify which witness my hand and official seal.

Signature of Notary

ROBIN W. SOLOMON
Notary Public
STATE OF TEXAS
My Comm. Exp. Sep. 02, 2015

_____
Printed or Typed Name

Notary Public in and for
_____ County, Texas

My commission expires: _____



# Comal County Sheriff's Office

3005 WEST SAN ANTONIO ST. • NEW BRAUNFELS, TEXAS 78130
(830) 620-3412 • (830) 608-2082

## RECORDS DIVISION

DATE: February 10, 2015

RE:   Christopher L. Graham                    DOB: 12/04/1980

TO WHOM IT MAY CONCERN:

Christopher L. Graham was incarcerated in the Comal County Jail on the following dates:

April 8, 2014  10:55 AM                to                April 8, 2014  7:22 PM

Cynthia Stautzenberger
Criminal Records Clerk
Comal County Sheriff's Office

I CERTIFY THAT THIS IS TRUE AND CORRECT
INFORMATION TAKEN FROM THE FILES OF
THE COMAL COUNTY SHERIFF'S OFFICE.

CRIMINAL RECORDS CLERK

# 2

# OFFICIAL RECEIPT
## Comal County Sheriff's Office
3005 W San Antonio St.
New Braunfels, TX 78130
Phone: 830-620-3400
Fax: 830 - 608-2082

Payor
REZA ZAND

Receipt No
**2014-00784**

Transaction Date
04/08/2014

On Behalf Of GRAHAM, CHRISTOPHER LAUREN (SO# 627723)

## Amount Received

| Description | Amount Paid |
|---|---|
| Bond Account | 5,000.00 |
| **SUBTOTAL** | 5,000.00 |
| Total Account Balance: $5,000.00 | |

| | PAYMENT TOTAL | 5,000.00 |
|---|---|---|

| | | |
|---|---|---|
| Cashier's Check (Ref # ███████ ) Tendered | 5,000.00 |
| Total Tendered | 5,000.00 |
| Change | 0.00 |

| 04/08/2014 | Cashier | Audit |
|---|---|---|
| 06:54 PM | Station BOND2 | 4124446 |

## OFFICIAL RECEIPT

I CERTIFY THAT THIS IS TRUE AND CORRECT
INFORMATION TAKEN FROM THE FILES OF
THE COMAL COUNTY SHERIFF'S OFFICE.

*C. Stautzenberg*

CRIMINAL RECORDS CLERK



282111107 NEW 01/08 8810004306

HOLD DOCUMENT UP TO THE LIGHT TO VIEW TRUE WATERMARK

**CASHIER'S CHECK**

9863616736     25-3
-----
440

**CHASE** ◯

HOLD DOCUMENT UP TO THE LIGHT TO VIEW TRUE WATERMARK

Date    04/08/2014    Void after 7 years

**Remitter:** REZA ZAND

**Pay To The Order Of:** COMAL COUNTY SHERRIFS OFFICE

$** 5,000.00 **

**Pay:** FIVE THOUSAND DOLLARS AND 00 CENTS

#627723

**Drawer:** JPMORGAN CHASE BANK, N.A.

Do not write outside this box

Memo: *Graham, Christopher*

Note: For information only. Comment has no effect on bank's payment.

Senior Vice President
JPMorgan Chase Bank, N.A.



Security
Features
Details on
Back

# CLERK'S RECORD
**Volume I of I**
Appellant Court Cause No. 03-14-00270-CR
Trial Court Cause No.CR2013-366
In the 207th District Court
Of Comal County, Texas

Honorable Jack Robison, Judge Presiding
Court Reporter: Mary Scopas

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

In Re Christopher L. Graham, Plaintiff (s)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## Appealed to the Court of Appeals for the Third District of Texas, at Austin, Texas

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Attorney (s) for Appellant (s)

Name:              Mr. Christopher L. Graham
Address:           700 N. St. Mary's Street #1400
                   San Antonio, TX 78205
Telephone No:      210-787-3430
Fax No.:           Same as phone number
SBOT No:           24047549
Attorney (s) for:  Christopher L. Graham,  Appellant (s)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Delivered to the Court of Appeals for the Third District of Texas, at Austin, Texas

On this _10th_ day of _November_ , 2014

Kathy H. Faulkner
District Clerk, Comal County, Texas

By:_____ , Deputy

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Appellate Court Cause No: 03-14-00270-CR
Filed in the Court of Appeals Third District of Texas, at Austin, Texas

This _____ day of _____ , 2014

_____ , Clerk

By: _____ , Deputy

1

TRANSCRIPT COVER SHEET
    CLERK'S RECORD VOL. I OF I                          1

INDEX                                                   2-4

CAPTION                                       5-6

INDICTMENT – COUNTS I THRU III
(FILED AUG. 14, 2013)                      7-9

APPLICATION OF INDIGENCE AND
    REQUEST FOR APPOINTMENT
    OF COUNSEL – 9-23-13
    (FILED SEPT. 25, 2013)             10-11

BAIL BOND - $50,000
(FILED MAY 8, 2013)                       12

BAIL BOND - $5,000
(FILED AUG. 19, 2013)                   13

BAIL BOND - $10,000
(FILED AUG. 22, 2013)                   14

WAIVER OF ARRAIGNMENT
(SIGNED FEB. 25, 2014)                 15

SHOW CAUSE ORDER
(SIGNED FEB. 25, 2014)               16-18

SHOW CAUSE ORDER
(SIGNED MAR. 17, 2014)              19-21

AMENDED ORDER APPOINTING
    ATTORNEY – PAUL FINLEY
    (SIGNED MAR. 13, 2014)            22

SHOW CAUSE ORDER-CR2013-519
(SIGNED MAR. 27, 2014)              23

CONTEMPT ORDER-CR2013-366
(FILED APR. 8, 2014)                   24

CONTEMPT ORDER-CR2013-519
(FILED APR. 8, 2014)                   25

ADMONISHMENTS, VOLUNTARY
  STATEMENTS, WAIVERS,
  STIPULATIONS, JUDICIAL
  CONFESSIONS & PLEA BARGAIN
  AGREEMENT – (SIGNED APR. 7, 2014)     26-31

NOTICE OF APPEAL
(FILED APR. 21, 2014)     32-34

MOTION FOR NEW TRIAL
(FILED APR. 21, 2014)     35-38

FIRST REQUEST FOR DESIGNAITON
  OF MATTER'S IN CLERK'S RECORD
  (FILED MAY 5, 2014)     39-40

TRIAL COURT'S CERTIFICATION
  OF DEFENDANT'S RIGHT OF APPEAL
  (SIGNED MAY 19, 2014)     41

JUDGMENT OF CONVICTION BY COURT
  WAIVER OF JURY TRIAL COUNTS I, II & III
  (SIGNED JUNE 13, 2014)     42-50

ORDER AND MEMORANDUM OPINION
(FILED SEPT. 2, 2014)     51-53

STATE'S CONTEST OF APPELLANT'S
  AFFIDAVIT OF INDIGENCE
  (FILED SEPT. 2, 2014)     54-57

CONTEST OF AFFIDAVIT OF INABILITY
  TO PAY COST – DOTTIE NORMAN
  (FILED SEPT. 8, 2014)     58

CONTEST OF AFFIDAVIT OF INABILITY
  TO PAY COST – RICHARD E. ROBERTS
  (FILED SEPT. 8, 2014)     59

ORDER EXTENDING TIME TO CONDUCT
  HEARING – (SIGNED SEPT. 10, 2014)     60

ORDER SUSTAINING STATE'S CONTEST
(SIGNED SEPT. 23, 2014)     61

ORDER SUSTAINING CONTEST TO
  AFFIDAVIT OF INDIGENCE
  (FILED SEPT. 23, 2014)     62

NUNC PRO TUNC
   CONDITIONS OF COMMUNITY
   SUPERVISION – (FILED SEPT. 23, 2014)            63-71

FINDINGS OF FACT & CONCLUSIONS
   OF LAW – (FILED OCT. 2, 2014)            72-77

MOTION CHALLENGING ORDER
(FILED OCT. 2, 2014)            78-80

ORDER FROM THIRD COURT OF
   APPEALS – (FILED OCT. 10, 2014)            81-87

REQUEST FOR DESIGNATION OF
   MATTERS IN CLERK'S RECORD
   (FILED OCT. 29, 2014)            88

CASE TRANACTION SUMMARY            89

JUDGE'S CRIMINAL DOCKET SHEET            90

CLERK'S CERTIFICATE            91-92

4

**CAPTION**

The State of Texas { }
County of Comal   { }


In the 207TH Judicial District of Comal County, Texas, The Honorable, Jack Robison,

Judge Presiding, the following proceedings were held and the following instructions and

Other papers were filed in this cause to with:


Trial Court Cause No: CR2013-366
Appellant Court Cause No: 03-14-00270-CR


In Re Christopher L. Graham, Plaintiff (s)                    IN THE DISTRICT COURT


COMAL COUNTY, TEXAS

NEW BRAUNFELS POLICE DEPARTMENT

CHELSIE MICHELLE CHENOWETH
DOB: ▆▆▆▆ DL: ▆▆▆▆ SID: ▆▆▆▆
TRN: ▆▆▆▆ TRS: A001; D001; D002
§30.02 SECOND DEGREE FELONY
§37.09 THIRD DEGREE FELONY
§31.03(e)(4)(A) STATE JAIL FELONY

ARREST DATE: 04/26/2013

WITNESS: <u>CLAY HEARRELL</u>

CO-DEFENDANTS: <u>ROMULO AUDAN LOYA, III</u>
<u>& ISAAC SIMON FLORES</u>

---

CR2013- **3066**          **G/J DATE: AUGUST 14th, 2013**

**THE STATE OF TEXAS VS. CHELSIE MICHELLE CHENOWETH**

**CHARGE:**
**COUNT I**     **BURGLARY OF HABITATION**     **BOND POSTED: $50,000 SURETY**

**COUNT II**    **TAMPERING WITH PHYSICAL EVIDENCE**   **BOND $** *10,000*

**COUNT II**    **THEFT OF PROPERTY**
            **AGGREGATE VALUE>=$1,500<$20K**     **BOND $** *5,000*

**COURT: 207TH JUDICIAL DISTRICT**

---

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

**COUNT I**
**PARAGRAPH I**
THE GRAND JURORS, duly selected, organized, sworn and empaneled as such for the County of Comal, State of Texas, at the July term, A.D., 2013, of the 207TH Judicial District Court for said County, upon their oaths present in and to said Court that in the county and state aforesaid, and before the presentment of this indictment, on or about the 26th day of April, 2013, **CHELSIE MICHELLE CHENOWETH**, hereinafter styled Defendant, did then and there intentionally or knowingly enter a habitation without the effective consent of the owner, Helen Braune, with the intent to commit theft;

7

## PARAGRAPH II

THE GRAND JURORS, duly selected, organized, sworn and empaneled as such for the County of Comal, State of Texas, at the July term, A.D., 2013, of the 207TH Judicial District Court for said County, upon their oaths present in and to said Court that in the county and state aforesaid, and before the presentment of this indictment, on or about the 26th day of April, 2013, **CHELSIE MICHELLE CHENOWETH**, hereinafter styled Defendant, did then and there intentionally or knowingly enter a habitation without the effective consent of the owner, Helen Braune, and the said Defendant did commit theft of certain property, to-wit: a Coach purse, a Coach wallet and an iPhone.

## COUNT II
## PARAGRAPH I

THE GRAND JURORS, duly selected, organized, sworn and empaneled as such for the County of Comal, State of Texas, at the July term, A.D., 2013, of the 207TH Judicial District Court for said County, upon their oaths present in and to said Court that in the county and state aforesaid, and before the presentment of this indictment, on or about the 26th day of April, 2013, **CHELSIE MICHELLE CHENOWETH**, hereinafter styled Defendant, did then and there, knowing that an investigation was pending or in progress, alter, destroy or conceal a thing, to-wit: a pill, with intent to impair its verity or availability as evidence in the investigation.

## PARAGRAPH II

THE GRAND JURORS, duly selected, organized, sworn and empaneled as such for the County of Comal, State of Texas, at the July term, A.D., 2013, of the 207TH Judicial District Court for said County, upon their oaths present in and to said Court that in the county and state aforesaid, and before the presentment of this indictment, on or about the 26th day of April, 2013, **CHELSIE MICHELLE CHENOWETH**, hereinafter styled Defendant, did then and there, knowing that an offense had been committed, alter, destroy or conceal a thing, to-wit: a pill, with intent to impair its verity, legibility, or availability as evidence in any subsequent investigation of or official proceeding related to said offense.

## COUNT III

THE GRAND JURORS, duly selected, organized, sworn and empaneled as such for the County of Comal, State of Texas, at the July term, A.D., 2013, of the 207TH Judicial District Court for said County, upon their oaths present in and to said Court that in the county and state aforesaid, and before the presentment of this indictment, on or about the 26th day of April, 2013, **CHELSIE MICHELLE CHENOWETH**, hereinafter styled Defendant, did then and there unlawfully appropriate, acquiring or otherwise exercising control over property, to-wit:

1. two Phillips DVD monitors, owned by Meaghan Tawil
2. two GPS systems, cologne, medicine and a power cord, owned by Lynn Flitton
3. two dog waste collection bags, an electric shaving system, a cigar lighter and sunglasses, owned by Gregory McNamer
4. a Coach purse, a Coach wallet and an iPhone, owned by Helen Braune
5. a tool box, tools, a Chase debit card and a watch, owned by Richard Pannell
6. ammunition, shooting supplies, a baton, Skull Candy ear plugs, perfume and United States currency, owned by Teresa Moldes

8

7. a Tom Tom GPS system, owned by Kayla Ruiz

8. a gym bag, clothing and athletic shoes, owned by Latoya Wright

without the effective consent of Meaghan Tawil, Lynn Flitton, Gregory McNamer, Helen Braune, Richard Parnell, Teresa Moldes, Kayla Ruiz or Latoya Wright, and the aggregate value of the property appropriate was $1,500 or more but less than $20,000

**AGAINST THE PEACE AND DIGNITY OF THE STATE.**

**Foreperson of the Grand Jury**

9

Cause No: **CR2013-366**

THE STATE OF TEXAS
VS **Chelsie Chenoweth**

IN THE DISTRICT COURT
OF
COMAL COUNTY, TEXAS

## APPLICATION OF INDIGENCE AND REQUEST FOR APPOINTMENT OF COUNSEL

"I, the undersigned Defendant, do upon oath, make the following statements. I am charged with a felony offense which is punishable by jail incarceration."

SPANISH SPEAKING ONLY? YES: ___ NO: ✓   CHARGE: **Burglary of habitation, theft**

Date of Birth: ▮▮▮▮ S.S.N. ▮▮▮▮ Driver's License Number: ___

Marital Status: (Single)/ Married/ Divorced/ Widowed   Number of Actual Dependants: **1**

How much money do you make: $ **0** per week / month / year? Spouse's income: $ **0** per week / month / year?

Your employer, address and phone number: **Looking for employment**

Spouse's employer, address, and phone number: —

List all sources of income available to you, including AFDC/TANF, Food Stamps, Child Support, S.S.I, or any other income:

Amount: $ **127.00** Source: **Food Stamps** Amount: $___ Source: ___

Your address: **1125 Walnut Valley** Number in household: Adults **2** Children **1**

Who pays for food, gasoline, clothing or other needs? ___

Do you own an automobile or other means of transportation? YES / (NO) Make /Model/Year: — Value: —

Do you own other personal property? (Furniture, Jewelry, etc.) **no**

Do you have any cash available at home or at the jail or in the bank? YES (NO) Amount: $___

Does anyone owe you money? YES / (NO) Who? ___ Amount: $___

Please list all debts that you have: (Rent, Mortgage, Car payment(s), Loan(s), etc.)

Lien holder, Landlord: —

Car Lien holder: — Amount of monthly payment: $___

Other loan(s) or debt(s): Credit Cards, etc.): — Amount of monthly payment: $___

Amount of monthly payment: $___

Amount of monthly payment: $___

(I AM)/ AM NOT free on bail. Amount of bail: $ **6,900** If free on bail, who posted the money? **Grandma**

Amount of money posted: $**6,900** List amount of money it cost YOU to get out of jail $___ Date paid **05/03/13**

I have attempted to hire the following attorneys: —

"I have been advised by the District Court of my right to representation by counsel in the trial of the charge pending against me. I certify that I am without means to employ counsel of my choosing and I hereby request the Court to appoint counsel to me."

"I further understand that I may be ordered to pay all or part of the attorney's fees, and that this appointment of counsel can be reconsidered if there is a material change in my financial circumstances. I further understand that I may be ordered to repay Comal County all or part of the cost of counsel if I am convicted of the charge as costs of court or as a term of probation."

## I DECLARE UNDER PENALTY OF PERJURY THAT THE ABOVE INFORMATION IS TRUE AND CORRECT

Defendant's Signature: ___

Address: ▮▮▮▮ Phone Number: ▮▮▮▮ Date of Birth: ▮▮▮▮

SWORN ___ TO BEFORE ME, THIS THE **22** DAY OF **September**, 20**13**. Today's Date **09/23/13** personally appeared the above named Defendant who subscribed the foregoing instrument and after having been duly sworn by me, stated on his/her oath that the foregoing statements are true and correct.

NOTARY/DEPUTY CLERK

## ORDER APPOINTING COUNSEL

Based on the foregoing Application of Indigency, the following attorney is hereby appointed to represent the defendant in this cause until charges are dismissed, the defendant is acquitted, appeals are exhausted, or the attorney is relieved of this duty or replaced by other counsel by leave of Court, pursuant to Article 26.04, Code of Criminal Procedure:

Name of Attorney: **Christopher Graham** Phone Number: **210-787-3430**

Address: **700 N. St. Mary's St. Ste. 1400 San Antonio, TX 78205**

**9-23-13** Judge Presiding

10



**STEVE THOMAS**
Court Administrator
Comal, Hays and
Caldwell Counties

**COMAL COUNTY**
**OFFICE OF COURT ADMINISTRATION**
22ND, 207TH, 274TH, 433RD
**JUDICIAL DISTRICTS**

# NOTICE OF FELONY COURT APPOINTMENT

## Please FAX back the cover page
*or*
## CALL to confirm receipt of fax

Date: 9/24/13                Time: 3:50 pm

Attorney: Christopher Graham

Fax Number: 210-787-3430

Defendant: Chelsie Michelle Chenoweth

Cause No. CR2013-366    Unindicted ____    In Jail ____

Notes: 5 pages

*Also Note:* Court appointed counsel shall make every reasonable effort to contact the defendant not later than the end of the first working day after appointment and to interview the defendant as soon as practicable.

Receipt confirmed by Attorney    Date: 9/25/2013

150 N. SEGUIN. SUITE 317 • NEW BRAUNFELS. TEXAS 78130 • (830) 221-1270 • FAX (830) 608-2030

11

# BAIL BOND

Court: _District_
Appearance Date: _Instanter_
Time: _Constant_
Cause No.: _Constant_

Type of Bond: _Surety_
SPN: _625351_
Receipt No.: _____

_TRN 9212987540_
_A 001_

## KNOW ALL MEN BY THESE PRESENTS:

That we, _Chelsie Michelle Chenoweth_, as principal, and the undersigned _Patricia Cox DBA A-COPA Bail Bonds Lic# 01-0829_ as sureties, are held and firmly bound unto the STATE OF TEXAS, in the penal sum of _Fifty Thousand_ ($ _50,000_ ) Dollars and, in addition thereto, we are bound for the payment of all fees and expenses that may be incurred by any peace officer in re-arresting the said principal in the event any of the hereinafter stated conditions of this bond are violated for the payment of which sum or sums will and truly to be made, we do bind ourselves, and each of us, our heirs, executors and administrators, jointly and severally.

The condition of this bond is that the Defendant has been charged with _Burglary of Habitation_ a Felony – ~~Misdemeanor~~ offense and to secure his release from custody is entering into this obligation binding him to appear before _District_ Court, as shown above, of _Comal_ County, City of _New Braunfels_ Texas.

Now therefore, if the said Principal shall well and truly make his personal appearance before said Court Instanter as well as before any other court to which the same may be transferred and for any and all subsequent proceedings that may be had relative to said charge in the court of criminal actions based on said charge, and there remain from day to day and term to term of said courts, until discharge by due course of law, then and there to answer said accusation against him, this obligation shall become void, otherwise to remain in full force and effect.

Taken and Approved this day of _5-3-_, 20 _13_  Signed and Dated _May 3_, 20 _13_

_Bob Holder_, Sheriff

By _____, Deputy

_Patricia Cox_, Surety

_A-COPA Bail Bonds_

_2969 W. San Antonio_, Surety

_New Braunfels TX 78130_
ADDRESS

OATH OF SURETIES _830.628.4466_
STATE OF TEXAS
COUNTY OF _Comal_

_Comal_, County, Texas

_Chelsie Chen_, Principal

MAILING ADDRESS

CITY AND STATE

Race _W_  Sex _F_  HT _5'7_  WT _150_

DOB _____  HAIR _Brown_ Eyes _Blue_

DL# _____  State _TX_

NOK: _Stacie Michelle Breid (mom) 830 743 5188_

MAILING ADDRESS

We, each of us, _Patricia Cox DBA A-COPA Bail Bonds Lic# 01-0829_

Do swear that we are worth in our own right, at least the sum of _($100,000) One Hundred Thousand_ Dollars, After deducting from our property all that which is exempt by the Constitution Laws of the STATE OF TEXAS from forced sale, and after satisfying all encumbrances upon our property which are known to us;

and that we reside in the County of _Comal_ and have property in the STATE OF TEXAS Liable to execution worth:

The Said _Patricia Cox_  Sum of _($100,000) One Hundred Thousand_ Dollars

The Said _____  Sum of _____ Dollars

_____ Surety _____ Surety
SIGNATURE                    SIGNATURE

Subscribed and Swore to before me this _3_ day of _May_ A.D. 20 _13_

ALFONSO PEREZ
MY COMMISSION EXPIRES
December 10, 2015

NOTARY PUBLIC STATE OF TEXAS
_12-10-15_
EXPIRATION DATE OF NOTARY

12

# BAIL BOND





Court: _District_
Appearance Date: _Instanter_
Time: _____
Cause No.: _____

Type of Bond: _Surety_
SPN: _625351_
Receipt No.: _____

TRN 9212987540

**KNOW ALL MEN BY THESE PRESENTS:**

That we, _Chelsie Michelle Chenoweth_, as principal, and the undersigned _Patricia Cox DBA A-COPA Bail Bonds Lic #01-0829_ as sureties, are held and firmly bound unto the STATE OF TEXAS, in the penal sum of _Five Thousand_ ($ _5000_ ) Dollars and, in addition thereto, we are bound for the payment of all fees and expenses that may be incurred by any peace officer in re-arresting the said principal in the event any of the hereinafter stated conditions of this bond are violated for the payment of which sum or sums will and truly to be made, we do bind ourselves, and each of us, our heirs, executors and administrators, jointly and severally.

The condition of this bond is that the Defendant has been charged with _Theft Property ≥ $1500 < $20 000_ a ~~Felony~~ – ~~Misdemeanor~~ offense and to secure his release from custody is entering into this obligation binding him to appear before _District_ Court, as shown above, of _Comal_ County, City of _New Braunfels_ Texas.

Now therefore, if the said Principal shall well and truly make his personal appearance before said Court Instanter as well as before any other court to which the same may be transferred and for any and all subsequent proceedings that may be had relative to said charge in the court of criminal actions based on said charge, and there remain from day to day and term to term of said courts, until discharge by due course of law, then and there to answer said accusation against him, this obligation shall become void, otherwise to remain in full force and effect.

Taken and Approved this day of _August 19_, 20 _13_    Signed and Dated _August 19_, 20 _13_

_BOB HOLDER_, Sheriff

_Comal_ ,County, Texas

By _#3345_, Deputy

X _Chelsie C_ , Principal

_____ Surety

MAILING ADDRESS

_A-COPA Bail Bonds_

_2969 W. San Antonio_ ADDRESS, Surety

CITY AND STATE

_New Braunfels TX 78130_ ADDRESS

Race _W_    Sex _F_    HT _5'7"_    WT _150_

830.625.4466

DOB _____    HAIR _Brown_    Eyes _Blue_

OATH OF SURETIES
STATE OF TEXAS
COUNTY OF _Comal_

ID
DL# _____    State _TX_

NOK: _Stacie Michelle Braid (mom) 830-743-5188_

MAILING ADDRESS

We, each of us, _Patricia Cox DBA A-COPA Bail Bonds Lic #01-0829_

Do swear that we are worth in our own right, at least the sum of _($10 000) Ten Thousand_ Dollars, After deducting from our property all that which is exempt by the Constitution Laws of the STATE OF TEXAS from forced sale, and after satisfying all encumbrances upon our property which are known to us;

and that we reside in the County of _Comal_ and have property in the STATE OF TEXAS Liable to execution worth:

The Said _Patricia Cox_ Sum of _($10000) Ten Thousand_ Dollars

The Said _____ Sum of _____ Dollars

SIGNATURE    Surety _____ Surety

SIGNATURE

Subscribed and Swore to before me this _19_ day of _August_ A.D. 20 _13_

ALFONSO PEREZ
MY COMMISSION EXPIRES
December 10, 2015

NOTARY PUBLIC STATE OF TEXAS

_12-10-15_

EXPIRATION DATE OF NOTARY

13

# BAIL BOND




Court: __District__
Appearance Date: __Instanter__
Time: _____
Cause No.: __CR2013-366__

COUNTY OF COMAL · STATE OF TEXAS

Type of Bond: __Surety__
SPN: __625 351__
Receipt No.: _____

TRN 9212987540

## KNOW ALL MEN BY THESE PRESENTS:

That we, __Chelsie   Michelle   Chenoweth__, as principal, and the undersigned __Patricia Cox DBA A-COPA Bail Bonds Lic #01-0829__ as sureties, are held and firmly bound unto the STATE OF TEXAS, in the penal sum of __Ten Thousand__ ($ __10,000__ ) Dollars and, in addition thereto, we are bound for the payment of all fees and expenses that may be incurred by any peace officer in re-arresting the said principal in the event any of the hereinafter stated conditions of this bond are violated for the payment of which sum or sums will and truly to be made, we do bind ourselves, and each of us, our heirs, executors and administrators, jointly and severally.

The condition of this bond is that the Defendant has been charged with __Tamper Fabricate Physical Evid w/Intent to Impair__ a Felony~~ Misdemeanor~~ offense and to secure his release from custody is entering into this obligation binding him to appear before ___District___ Court, as shown above, of ___Comal___ County, City of ___New Braunfels___ Texas.

Now therefore, if the said Principal shall well and truly make his personal appearance before said Court Instanter as well as before any other court to which the same may be transferred and for any and all subsequent proceedings that may be had relative to said charge in the court of criminal actions based on said charge, and there remain from day to day and term to term of said courts, until discharge by due course of law, then and there to answer said accusation against him, this obligation shall become void, otherwise to remain in full force and effect.

Taken and Approved this day of __August 19__, 20 __13__   Signed and Dated __August 19__, 20 __13__

_____ __BOB HOLDER__ _____, Sheriff

By ____ __#3345__ ____, Deputy

____ __Patricia Cox__ ____ Surety

__A-COPA Bail Bonds__
__2969 W. San Antonio__, Surety
__New Braunfels TX 78130__
ADDRESS

OATH OF SURETIES  __830.625.4466__
STATE OF TEXAS
COUNTY OF ___Comal___

_____ __Comal__ _____, County, Texas

x __Chelsie Chenow__ , Principal

███████████ MAILING ADDRESS

███████████ CITY AND STATE

Race __W__   Sex __F__ HT __5 7__ WT __150__

DOB ███████  HAIR __Brown__ Eyes __Blue__
ID
DL# ███████████  State __TX__
NOK: ███████████

███████████ MAILING ADDRESS

We, each of us, __Patricia Cox DBA A-COPA Bail Bonds Lic #01-0829__

Do swear that we are worth in our own right, at least the sum of __($20,000) Twenty Thousand__ Dollars, After deducting from our property all that which is exempt by the Constitution Laws of the STATE OF TEXAS from forced sale, and after satisfying all encumbrances upon our property which are known to us;

and that we reside in the County of ___COMAL___ and have property in the STATE OF TEXAS Liable to execution worth:

The Said __Patricia Cox__   Sum of __($20,000) Twenty Thousand__ Dollars
The Said __Patricia Cox__   Sum of _____ Dollars
SIGNATURE          Surety _____ Surety

Subscribed and Swore to before me this __15__ day of __August__, A.D. 20 __13__

NOTARY PUBLIC STATE OF TEXAS
__12-10-15__
EXPIRATION DATE OF NOTARY

ALFONSO PEREZ
MY COMMISSION EXPIRES
December 10, 2015

14

CAUSE NO. CR 2013-766

THE STATE OF TEXAS                          §

VS.                                         §

Chelsie Chenoweth                           §        COMAL COUNTY, TEXAS

IN THE DISTRICT COURT OF

## WAIVER OF ARRAIGNMENT

COMES NOW, __Chelsie Chenoweth__, Defendant, and hereby represents to the Court :

1. That he/she is the Defendant in the above numbered and entitled cause pending in the District Court of Comal County, Texas;

2. That in the said cause he/she stands charged and accused by indictment of committing an offense against the laws of the State of Texas, same being a felony offense other than a capital felony, to-wit; _tampering w/ evidence, theft property ≥ 1500 < 20k, burglary vehicle 3 state_ ;

3. That he/she is represented by legal counsel, to-wit; _Christopher Graham_.

Defendant understands that he/she has a legal right to be arraigned. With full understanding of the legal rights to be arraigned, I hereby waive the legal right to be arraigned, in the above numbered and entitled cause, and enter a plea of Not Guilty at this time.

_____                    _____
ATTORNEY FOR DEFENDANT                        DEFENDANT

The above waiver of arraignment having been presented to me this the __24__ day of __FEB__, __2014__ The Court finds that the Defendant freely and voluntarily waived the rights of arraignment. The Court hereby approves the Defendant's Waiver herein.

_____
JUDGE PRESIDING                              15

Cause No. CR2013-366

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| vs. | § | OF |
| | § | |
| CHELSIE MICHELLE CHENOWETH | § | COMAL COUNTY, TEXAS |

# SHOW CAUSE ORDER

On the 25th day of February, 2014, the above-styled and numbered cause was called for Arraignment at which time CHRISTOPHER GRAHAM, the Attorney of record, failed to arrive on time for docket call and failed to notify the Court. CHRISTOPHER GRAHAM was ordered to return to Court at 1:15 p.m. and failed to return at said time and arrived at 1:50 p.m.

CHRISTOPHER GRAHAM is given the opportunity to appear before this Court on *March 13, 2014* at *9:00 A.M.* to show cause why he should not be held in contempt for failure to appear in Court on February 25, 2014 and not be punished in accordance with the law.

SIGNED this the 25th day of February, 2014.

_____
JUDGE PRESIDING

16

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Show Cause Order has been sent by Certified Mail, Return Receipt Requested, First Class Mail and via Telecopier #(210) 787-3430 to Attorney, Mr. Christopher Graham at 700 N. St. Mary's Street, Suite 1400, San Antonio, Texas 78205 and hand delivered to Ms. Jennifer Tharp, Comal County District Attorney, 150 N. Seguin, Suite 307, New Braunfels, Texas 78130, on this the 25 day of February, 2014.

_____
JUDGE PRESIDING



17



**STEVE THOMAS**
Court Administrator
Comal, Hays and
Caldwell Counties

**COMAL COUNTY**
**OFFICE OF COURT ADMINISTRATION**
**22ND, 207TH, 274TH, 433RD**
**JUDICIAL DISTRICTS**

**SAVANNAH L. MAURER**
Court Coordinator

**KIMBERLY A. McMAHON**
Asst. Coordinator

**JOHN CALENTINE**
Bailiff

**NICK REININGER**
Bailiff

# FAX TRANSMITTAL

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

DATE:    February 25, 2014

TO:    Mr. Christopher Graham

FAX:    (210) 787-3430

FROM:    Savannah L. Maurer – District Court Administrator

TOTAL NUMBER OF PAGES:   Four

RE:    State of Texas vs. CR2013-366

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MESSAGE

18

150 N. SEGUIN, SUITE 317 ● NEW BRAUNFELS, TEXAS 78130 ● (830) 221-1270 ● FAX (830) 608-2030

| IN RE: | § | IN THE DISTRICT COURT |
| | § | |
| CHRISTOPHER GRAHAM | § | OF |
| | § | |
| | § | COMAL COUNTY, TEXAS |

# SHOW CAUSE ORDER

On the 25th day of February, 2014, the State of Texas vs. Chelsie Michelle Chenoweth was called for Arraignment at which time CHRISTOPHER GRAHAM, the Attorney of record, was required to appear.

On the 13th day of March, 2014, the State of Texas vs. Chelsie Michelle Chenoweth was called for Pre-Trial hearing as well as Attorney Christopher Graham's Show Cause hearing in which he was required to appear.

CHRISTOPHER GRAHAM is now Ordered to show cause to this Court the proceeding transgressions:

1. Failure to arrive on time to the 9:00am docket call on February 25th, 2014;

2. Failure to return to Court at 1:15pm on February 25th, 2014 as instructed by the Court;

3. Failure to appear in Court on March 13th, 2014 for Cause Number CR2013-366, State of Texas vs. Chelsie Michelle Chenoweth, as well as Mr. Graham's own Show Cause notice on the same date without a granted continuance or leave from the Court;

4. False statements in his "Response to Court's Order To Show Cause And Request For Continuance", specifically assertions numbered 5 and 9, among others; and

19

CHRISTOPHER GRAHAM is given the opportunity to appear before this Court on *April 8ᵗʰ, 2014* at *8:30 A.M.* to show cause why he should not be held in contempt of court and not be punished in accordance with the law.

SIGNED this the 17 day of March, 2014.

_____
JUDGE PRESIDING

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Show Cause Order has been sent by Certified Mail, Return Receipt Requested, First Class Mail and via Telecopier # 210-787-3430 to Attorney, Christopher Graham at 700 N. St. Mary's St. Ste. 1400 San Antonio, Texas 78205 and hand delivered to Ms. Jennifer Tharp, Comal County District Attorney, 150 N. Seguin, New Braunfels Texas 78130 on this the ___ day of March____, 2014.

_____
JUDGE PRESIDING

21

CAUSE NO. CR2013-366

| STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | OF |
| | § | |
| Chelsie Chenoweth | § | COMAL COUNTY, TEXAS |

KATHY H. FAULKNER
Clerk District Court, Comal County, TX.
By _____ Deputy

MAR 13 2014

FILED FOR RECORD
AT ____ 10:30 o'clock

### AMENDED ORDER APPOINTING ATTORNEY

On the **13** day of **March**, 20**14**, the Court sua sponte removed Attorney **Christopher Graham** from the aforementioned cause number.

It is hereby ORDERED that **Paul Finley**, be appointed attorney for the above named defendant in this cause.

SIGNED ON THIS THE **13** DAY OF **March**, 20**14**.

_____
JUDGE PRESIDING

22

19

Cause No. CR2013-519

| | | |
|---|---|---|
| IN RE: | § | IN THE DISTRICT COURT |
| | § | |
| CHRISTOPHER GRAHAM | § | OF |
| | § | |
| | § | COMAL COUNTY, TEXAS |

FILED FOR RECORD
2014 MAR 27 PM 3:05
BY
KATHY H. FAULKNER
DISTRICT CLERK-COMAL COUNTY

## SHOW CAUSE ORDER

On the 27th day of March, 2014, the above-styled and numbered cause was called for Docket Call for the March 31, 2014 Jury Trial setting at which time CHRISTOPHER GRAHAM, the Attorney of record, failed to appear when said cause was called.

CHRISTOPHER GRAHAM is given the opportunity to appear before this Court on *April 8, 2014* at *8:30 A.M.* to show cause why he should not be held in contempt for failure to appear in Court on March 27, 2014 and not be punished in accordance with the law.

SIGNED this the _27_ day of March, 2014.

_____
JUDGE PRESIDING

23

40

Cause No. CR2013-366

IN RE: § IN THE DISTRICT COURT

§

CHRISTOPHER GRAHAM § OF

§

§ COMAL COUNTY, TEXAS

CONTEMPT ORDER

On April 8, 2014 came on to be considered the show cause order In Re Christopher Graham. Upon hearing said order this court finds Christopher Graham in contempt for the following transgressions:

1. Failure to arrive on time to the 9:00 a.m. docket on February 25' 2014;
2. Failure to return to court at 1:15 p.m. on February 25, 2014 as instructed by the court; and
3. Failure to appear in Court on March 13, 2014 for Cause Number CR2013-366, State of Texas vs. Chelsie Chenowith, as well as Mr. Graham's own Show Cause notice on the same date without a granted continuance or leave from the court.

After finding Christopher Graham in contempt of court, this court further orders that his punishment be assessed at 15 days in the Comal County Jail and a fine of $300.00.

_____

Judge Presiding

24

Cause No. CR2013-519

IN RE: §
§
CHRISTOPHER GRAHAM §
§
§

IN THE DISTRICT COURT

OF

COMAL COUNTY, TEXAS

CONTEMPT ORDER

On April 8, 2014 came on to be considered the show cause order In Re Christopher Graham. Upon hearing said order this court denies finding Christopher Graham in contempt of court.

_____
Judge Presiding

2014 APR -8 AM 10: 46
FILED FOR RECORD
KATHY H. FAULKNER
DISTRICT CLERK-COMAL COUNTY
BY

25



CAUSE NO. _CR2013-366_

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
|---|---|---|
| v. | § | 207TH JUDICIAL DISTRICT |
| _Chelsie Chenoweth_ § | | COMAL COUNTY, TEXAS |
| Defendant | | |

## ADMONISHMENTS, VOLUNTARY STATEMENTS, WAIVERS, STIPULATIONS, JUDICIAL CONFESSION & PLEA BARGAIN AGREEMENT

I.  **ADMONISHMENTS, ART. 26.13, C.C.P.:** The Defendant is hereby admonished in writing that if convicted, the Defendant may be sentenced within the punishment range marked in the relevant box below:

1.  **Punishment Range:**

☐ Capital Felony (death penalty waived) – Imprisonment in the Institutional Division of the Texas Department of Criminal Justice for a term of Life.

☐ 1st Degree Felony (habitual offender) – Imprisonment in the Institutional Division of the Texas Department of Criminal Justice for Life or for any term of not more than 99 years or less than 25 years.

☐ 1st Degree Felony (repeat offender) – Imprisonment in the Institutional Division of the Texas Department of Criminal Justice for Life or for any term of not more than 99 years or less than 15 years; in addition, a fine not to exceed $10,000.

☐ 1st Degree Felony -- Imprisonment in the Institutional Division of the Texas Department of Criminal Justice for Life or for any term of not more than 99 years or less than 5 years; in addition, a fine not to exceed $10,000.

_ct. 1_
☑ 2nd Degree Felony – Imprisonment in the Institutional Division of the Texas Department of Criminal Justice for any term of not more than 20 years or less than 2 years; in addition, a fine not to exceed $10,000.

_ct 2_
☑ 3rd Degree Felony – Imprisonment in the Institutional Division of the Texas Department of Criminal Justice for any term of not more than 10 years or less than 2 years; in addition, a fine not to exceed $10,000.

☐ State Jail Felony (deadly weapon used or exhibited / State Jail Violent Offender / State Jail Habitual Offender) – Imprisonment in the Institutional Division of the Texas Department of Criminal Justice for any term of not more than 10 years or less than 2 years; in addition, a fine not to exceed $10,000.

_ct 3_
☑ State Jail Felony – Confinement in a State Jail for any term of not more than two years or less than 180 days; in addition, a fine not to exceed $10,000.

☐ Other / Special / Enhancement under Texas Penal Code §12.35(c), §12.42, §12.44 or Texas Health and Safety Code Chapter 481 or Other Provision of law:

_CMC_ Defendant's Initials          Page 1 of 6 – Plea Bargain Agreement

26




2. <u>Plea Bargain</u> – The recommendation as to punishment is not binding on the court. If a plea bargain does exist, the court will inform you in open court before making a finding on your plea whether it will follow the plea bargain. Should the court reject the plea bargain, you will be permitted to withdraw your plea if you desire.

3. <u>Court's Permission to Appeal</u> – If the punishment assessed does not exceed the punishment recommended by the prosecutor and agreed to by you and your attorney, the Court must give its permission to you before you may prosecute an appeal on any matter except for matters raised by written motion filed prior to trial.

4. <u>Citizenship</u> – If you are not a citizen of the United States of America, a plea of guilty or nolo contendere for this offense may result in your deportation, exclusion from admission or denial of naturalization under Federal law.

5. <u>Sexual Offender Registration Requirement</u> – If you receive community supervision, a prison or jail term, or deferred adjudication, for an offense described in Chapter 62 of the Texas Code of Criminal Procedure, you must meet all the registration requirements set out in that chapter. Failure to properly register is a separate criminal offense. By affixing your signature to this document, you and your attorney are acknowledging that your attorney has advised you regarding any applicable registration requirements of Ch.62.

6. <u>Deferred Adjudication</u> – If the Court grants deferred adjudication under Art. 42.12, Sec. 5, Code of Criminal Procedure, on violation of any imposed condition, you may be arrested and detained as provided by law. You will then be entitled to a hearing limited to a determination by the Court of whether to proceed with an adjudication of guilt on the original charge. If the court determines that you have violated a condition of your community supervision, no appeal may be taken from this determination. After adjudication of guilt, all proceedings, including assessment of punishment, pronouncement of sentence, granting of community supervision and your right to appeal continue as if adjudication of guilt had not been deferred. Upon adjudication of guilt, the Court may assess your punishment at any term and fine within the range of the original charge.

7. <u>Community Supervision</u> – The Judge of the Court having jurisdiction of the case shall determine the conditions of community supervision and may, at any time, during the period of community supervision alter or modify the conditions. The Judge may impose any reasonable condition that is designed to protect or restore the community, protect or restore the victim, or punish, rehabilitate, or reform the Defendant.

**(The Rest of this Page Intentionally Left Blank)**


Defendant's Initials



II.  **VOLUNTARY STATEMENTS** – Now comes the Defendant in writing and in open court in the above entitled and numbered cause represented by his attorney with whom he has previously consulted and makes the following voluntary statements:

1. "That I was sane at the time of the offense and am presently competent to stand trial."

2. "That I understand the nature of the charges contained in the indictment or information in this cause."

3. "That the Court has admonished me orally or in writing of the consequences of a plea of guilty. I understand the minimum and maximum punishment provided by law for this offense."

4. "That I have the right to a trial by jury whether I plead "Guilty", "Not Guilty", or "Nolo Contendere"."

5. "That I have the right to remain silent but if I choose not to remain silent, anything I say can be used against me."

6. "That I have the right to be confronted by the witnesses against me whether I have a trial before the Court or the jury."

7. "This plea is made pursuant to a plea bargain."

8. "I _✓_ (am) _____ (am not) a citizen of the United States of America."

III.  **WAIVERS** – Now comes the Defendant in writing and in open court in the above entitled and numbered cause represented by his attorney with whom he has previously consulted and freely, knowingly and voluntarily makes the following waivers:

1. Waive the reading of the indictment or information.

2. Waive the right to be arraigned.

3. Waive the right of trial by jury and request the consent and approval of the Court and of the attorney for the State to such waiver.

4. Waive my right to remain silent in the guilt-innocence and punishment phases of the trial, and state that it is my desire to take the witness stand, knowing anything I may say can be used against me, and make a judicial confession of my guilt.

5. Waive the right to be confronted with and to cross-examine, the witnesses against me both at the guilt/innocence and punishment phases of this matter. This waiver also includes, but is not limited to, any and all statements contained in any pre-sentence investigation report(s) reviewed by the Court in deciding the sentence to be imposed in this matter.

6. Waive service of the indictment and the two day waiting period for arraignment; and I also waive the 10 day period for preparation after appointment of counsel and the 10 day period in which to file written pleadings after arrest.

7. Waive the right to file a motion for new trial.

8. I understand my right to appeal but having entered into a plea agreement with the State and as part of that agreement before sentencing waive my right to appeal from the judgment and sentence or probated sentence agreed upon.

9. Waive the right to a pre-sentence report and request that none be made.

10. Waive any rights I may have in regard to a victim impact statement.

 Defendant's Initials                     Page 3 of 6 – Plea Bargain Agreement

28




IV. <u>**STIPULATIONS AND JUDICIAL CONFESSION**</u> -- Now comes the Defendant in writing and in open court in the above entitled and numbered cause represented by his attorney with whom he has previously consulted and makes the following judicial confession(s) and stipulation(s):

1. "I do admit and judicially confess that I knowingly and intentionally and unlawfully committed the offense(s) alleged in the indictment or information in this cause at the time and place and in the manner alleged and that such allegations are true and correct, and that I am in fact GUILTY of the offense alleged or as a lesser included offenses of the offense(s) charged in the indictment or information. "

2. "Under Texas Code of Criminal Procedure Article 1.15, I hereby consent and stipulate in writing, in open court, to an oral stipulation of the evidence and testimony or to the introduction of testimony by affidavits, written statements of witnesses, and any other documentary evidence in support of the judgment of the Court."

3. "I voluntarily enter my plea of GUILTY to said offense, and my plea is not influenced by any considerations of fear or any persuasion or any delusive hope of pardon. In making my plea of guilty I am not relying on any advice, information or agreement not made to the Court at this time."

4. "I have been advised by my attorney that if I am convicted or placed on deferred adjudication for a reportable sex offense under Chapter 62 of the Code of Criminal Procedure I will be required to meet the registration requirements of that Chapter."

5. "I have read this entire document, discussed it fully with my attorney and understand this document completely and I am aware of the consequence of my plea, and am satisfied I have been effectively represented."

6. "If the punishment recommendation is for deferred adjudication or community supervision, I have inquired into, understand and accept the possible ranges of conditions of community supervision, including those conditions that may require my confinement in a facility up to and including S.A.F.P.F."

**(This Rest of this Page Intentionally Left Blank)**

 Defendant's Initials

29



## V. PLEA AGREEMENT AND SENTENCING RECOMMENDATION – In consideration of

**The Defendant Agreeing:**

1. to plea "Guilty" to the offense(s) of: *Ct. 1: Burglary of a Habitation    Ct. 2: Tampering w/ Evidence    Ct. 3: Theft 1,500 - 30,000*

2. to judicially confess and stipulate as specified in paragraph IV, above;

3. to waive his/her rights as specified in paragraph III, above;

4. to, if placed on deferred adjudication or community supervision, participate in any and all conditions of community supervision including those conditions that may require my confinement in a facility up to and including S.A.F.P.F.;

5. _____ (mark if applicable) to plea "True" and Agree to an affirmative finding to enhancement(s) paragraph(s) or special issues alleged in the indictment or information; and

6. _____ Other:_____

_____

_____

**The State Agrees to recommend the following sentence** *10 years*
*Ct. 1 + Ct. 2:  Institutional Division*

1. __X__ That the Defendant be sentenced to *Ct. 3   2 years State Jail* (months / years) imprisonment in the __X__ Institutional Division of the Texas Department of Criminal Justice __X__ Texas State Jail Facility.

*Ct. 1 + Ct. 2  - 8 years*
2. __X__ That the Defendant be placed on *Ct. 3   5 years* years of regular community supervision.

3. _____ That Defendant be placed on _____ years of deferred adjudication community supervision.

4. __X__ That the Defendant pay a $ *2,000* Fine payable as directed ($_____ probated).

5. __X__ That the Defendant pay $ *TBD* Restitution, payable to _____ as directed.

6. Prosecute only on the lesser included offense of: _____.

7. Take the following unadjudicated offense(s) into consideration pursuant to Texas Penal Code §12.45:_____ and defendant judicially confesses to each element of the offense.

8. __X__ That the Defendant participate in *250* Community Service Hours.

9. _____ That the Defendant be confined _____ days in County jail as a condition of community supervision.

10. __X__ Other: *Sentences in each count shall run concurrent.*

_____

_____

11. Court Costs and a $15.00 crime stoppers fee, payable at sentencing.

*CMC* Defendant's Initials          Page 5 of 6 – Plea Bargain Agreement

39

 

The above terms constitute our agreement, and there are no agreements not set forth above. The Defendant and Counsel request the Court to follow the plea bargain.

Furthermore, the Defendant states, "I CAN READ AND WRITE THE ENGLISH LANGUAGE. IF I AM UNABLE TO READ AND WRITE THE ENGLISH LANGUAGE AN INTERPRETER HAS ASSISTED ME IN READING THIS ENTIRE DOCUMENT AND AIDED ME IN DISCUSSING SAME WITH MY ATTORNEY. I HAVE READ THIS ENTIRE DOCUMENT AND DISCUSSED IT FULLY WITH MY ATTORNEY. I UNDERSTAND THIS DOCUMENT COMPLETELY AND I AM AWARE OF THE CONSEQUENCES OF MY PLEA. MY ATTORNEY HAS DISCUSSED WITH ME THE LAW AND FACTS APPLICABLE TO THIS CASE, AND I AM SATISFIED THAT I HAVE BEEN EFFECTIVELY REPRESENTED. FURTHERMORE, I AM MENTALLY COMPETENT; I UNDERSTAND THE ADMONISHMENTS IN PARAGRAPH I.; I AM FREELY, VOLUNTARILY, KNOWINGLY, AND INTELLIGENTLY ENTERING MY PLEA OF "GUILTY". I WAIVE MY RIGHTS AS SPECIFIED IN PARAGRAPH III. I STIPULATE TO THE EVIDENCE AND I JUDICIALLY CONFESS AS STATED IN PARAGRAPH IV."

_____
DEFENDANT

SWORN AND SUBSCRIBED TO before me by the Defendant, this the 7th day of __April__, 20 14.

The Honorable Kathy Faulkner
District Clerk
Comal County, Texas

By: _____ Deputy

I hereby join, consent to and approve of the waiver of jury trial pursuant to Art. 1.13, C.C.P., and the stipulations of evidence pursuant to Art. 1.15 C.C. P. In addition, I hereby advise the Court that I have fully consulted with the Defendant and have carefully reviewed with him/her this entire document. I believe he/she is mentally competent, understands the admonishments, is aware of the consequences of the plea, and is freely, voluntarily, knowingly and intelligently entering his/her plea of "Guilty", his/her waiver of rights as specified in paragraph III, and his/her stipulations and judicial confession as specified in paragraph IV.

_____
COUNSEL FOR DEFENDANT

I hereby join, consent to and approve of: (1) the stipulations of evidence pursuant to Art. 1.15, C.C.P.; and (2) the waiver of jury trial pursuant to Art. 1.13, C.C.P., conditioned on the Court accepting this Plea Agreement and sentencing the Defendant in accordance with this Plea Agreement.

_____
ASSISTANT CRIMINAL DISTRICT ATTORNEY

### ORDER OF THE COURT

The Court hereby finds that (1) the Defendant was sane when the alleged offense was committed, is mentally competent, is represented by competent counsel, understands the nature of the charges against him/her and the consequences of a plea of guilty or *nolo contendere*, including the minimum and maximum punishment provided by law; (2) the attorney for the Defendant and the State consent and approve the waiver of trial by jury and agree to stipulate the evidence in this case; and (3) the Defendant's plea of guilty, statements, waivers, stipulations, and judicial confession were freely, voluntarily, knowingly and intelligently made.

All stipulations, waivers, and pleas are hereby approved and accepted along with all findings as set out above.

IT IS SO ORDERED on this the ___ day of _____, 20 14.

_____
JUDGE PRESIDING

CMC ___ Defendant's Initials

Page 6 of 6 – Plea Bargain Agreement

31

| | | |
|---|---|---|
| **IN RE** | ) | **IN THE DISTRICT COURT** |
| | ) | |
| **CHRISTOPHER** | ) | |
| **L. GRAHAM** | ) | **207TH JUDICIAL DISTRICT** |
| | ) | |
| | ) | **COMAL COUNTY, TEXAS** |

## NOTICE OF APPEAL

TO THE HONORABLE COURT:

Movant CHRISTOPHER L. GRAHAM, gives notice of its intent to appeal the Court's

contempt order of 4/8/2014. This appeal is taken to the 3th Court of Appeals in Austin, Texas.

Respectfully submitted,

Respectfully submitted,

Lauren Graham & Associates PLLC
700 N. St. Mary's Street #1400
San Antonio, Texas
Tel. and Fax: 210-787-3430

By: _____

Christopher L. Graham
State Bar No. 24047549
Movant

Notice of Appeal

1

**32**

## CERTIFICATE OF SERVICE

This is to certify that on 4/16/2014 a true and correct copy of the above and foregoing document was served on the Comal County District Attorney via facsimile 830-608-2008.

*[signature]*

Notice of Appeal

2

33

 **L UREN GRAHA M**
**AND ASSOCIATES, PLLC**
ATTORNEYS & COUNSELORS
California I Illinois I New York I Texas



2014 APR 21 PM 4: 27 FILED FOR RECORD

4.16.2014

<u>**VIA CERTIFIED MAIL RRR: 7013 3020 0000 8048 0158**</u>
Criminal District Clerk Comal County
150 N. Seguin
New Braunfels, Texas 78130

     RE: *In Re Christopher L. Graham, CR2013-366, CR2013-519*, Notice of Appeal and Motion for New Trial

To Whom it May Concern:

     Please find enclosed the following documents filed in this case:

1) Notice of Appeal
2) Motion for New Trial

     Movant requests a hearing within 10 days of the filing of movant's motion for new trial.

Regards,

Christopher L. Graham, Esq.
LGI PLLC
Lauren Graham & Associates PLLC

34

| | | |
|---|---|---|
| IN RE | ) | IN THE DISTRICT COURT |
| | ) | |
| | ) | |
| CHRISTOPHER | ) | |
| L. GRAHAM | ) | 207TH JUDICIAL DISTRICT |
| | ) | |
| | ) | COMAL COUNTY, TEXAS |

## MOTION FOR NEW TRIAL

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the Movant, CHRISTOPHER L. GRAHAM (hereinafter referred to as "the Movant"), in the above-styled and numbered cause and moves this Court to conduct a hearing on the *Motion for New Trial* and grant the motion for new trial. Furthermore, Movant objects to the following:

1. Movant committed no acts intentionally disrespectful to the court, or that actually obstructed the administration of justice. The cases at issue were in no way delayed except for by actions of the Court that were independent of the actions of Movant, therefore a finding of contempt in this case was improper.

2. The Court allowed for the admission of the court transcript of all docket activities taking place on 2/25/2014. The recording of the Court transcript from the docket call of 2/25/2014 contained matters from other cases that was irrelevant to the contempt proceeding. Furthermore, it contained inadmissible hearsay. The State was unable to prove any hearsay exception calling for the admissibility of the transcript. The admission of the transcript was improper.

3. The Court did not specify that counsel would be subjected to criminal contempt for failure to announce ready at precisely 9 am at the 2/25/2014 docket call. Additionally, the Court did not state that Movant would be held in contempt by arriving at court shortly after 1:15 pm when it had announced other contested matters to be heard during the afternoon session on 2/25/2014. Furthermore, the court did not indicate in its notice of trial documentation in the State v. Cynthia Browne case that a failure to appear by counsel on 3/27/2013 would result in criminal contempt when Movant had spoken to the court coordinator and was told that the case was not going to trial on 3/31/2014. Therefore, criminal contempt was improper.

4. Movant was not afforded counsel nor informed about a right to counsel in the criminal contempt procedure. Therefore the contempt ruling is in error.

5. Court documentation does not reflect that Movant was properly personally served with the show cause order in either case.

6. Movant was entitled to a jury trial in this contempt action since the punishment that could have been assessed could have been more than 6 months.

7. Punishment of 15 days assessed in this case was draconian, considering that Movant is an officer of the court and has other obligations in other courts. The Court could have and should have considered other alternatives to confinement, such as a fine, community service, house arrest or reporting to confinement on weekends, or work release to name a few.

8. There was no evidence in the record to support a $5,000 cash bond that was assessed in this case. Movant is not a flight risk, dangerous, there are no victims at risk as a result of Movant's actions, there was no evidence that Movant was not dutifully going to pursue

appeal in this case or neglect any court appearances. Officers of the court are typically entitled to personal recognizance bonds in contempt matters pending the appointment of an administrative judge. It should be no different on appeal. Movant requests that the cash bond be converted to a personal recognizance bond and that all bond monies be refunded to Movant..

**WHEREFORE, PREMISES CONSIDERED,** Defendant prays that the Court grant a hearing on the *Motion for New Trial* herein and grant the motion for new trial.

Respectfully submitted,

Lauren Graham & Associates PLLC
700 N. St. Mary's Street #1400
San Antonio, Texas
Tel. and Fax: 210-787-3430

By: _____

Christopher L. Graham
State Bar No. 24047549
Movant

<u>CERTIFICATE OF SERVICE</u>

This is to certify that on 4/16/2014 a true and correct copy of the above and foregoing document was served on the Comal County District Attorney via facsimile 830-608-2008.

_____

*Order on Hearing for Motion for New Trial*

On this the ___28___ day of ___April___, 2014, came to be considered *Motion*

*for New Trial* and such Motion for a Hearing is:

(GRANTED)   (DENIED)

_____
JUDGE PRESIDING

FILED FOR RECORD
2014 APR 28 PM 4:00

## VERIFICATION

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF DALLAS** | § |

BEFORE ME, the undersigned authority, personally appeared Christopher L. Graham, who stated, upon oath, that the statements made in the foregoing Motion for New Trial are true and correct.

_____
Christopher L. Graham, Affidant

**SUBSCRIBED AND SWORN TO BEFORE ME** on ___15th___, by ___April___

_____
Notary Public, State of Texas

JIMEKA ALLEN
Notary Public
STATE OF TEXAS
My Comm. Exp. Aug. 04, 2015



# LAUREN GRAHAM
## AND ASSOCIATES, PLLC
### ATTORNEYS & COUNSELORS
California I Illinois I New York I Texas

5.4.2014

**VIA FACSIMILE: 830-608-2006**

Comal District Court Clerk
150 N. Seguin, Suite #304
New Braunfels, Texas 78130

RE:   *State v. Chenoweth, State v. Browne,* Cause Nos. CR2013-366 and CR2013-519, In the 207th District Court, Comal, Texas; Request for Clerk's Record

Dear Clerk of Court:

     This letter constitutes a request for Designation of Matters in Clerk's Record in this cause. When the Clerk's Record has been prepared, please forward it to the 3rd Court of Appeals in Austin.

     Items comprising the clerk's record should include all items designated under Texas Rules of Appellate Procedure 34.5(a) and the following items:

1. Show Cause Orders issued in both cases
2. All contempt Orders entered in both cases
3. All orders entered from any 3/13/2014 show cause hearing that took place in either case
4. All contempt orders entered on 4/8/2014 or any contempt order resulting from the 4/8/2014 show cause hearing taking placed involving either case.
5. Copies of all docket sheets from both cases

     Since the case was court appointed and involving an indigent defendant, there should be no costs for the preparation of these documents for submission to the court of appeals. Should you have any questions please contact me as soon as possible, my cell phone number is 469-605-6846.

Thank you for your cooperation.

Regards,

Christopher L. Graham, Esq.
LGI PLLC
Lauren Graham & Associates PLLC
State Bar Number: 24047549

39



## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this Docketing Statement was served via facsimile to counsel for Appellants at 830-608-2008 on 5/4/2014.

Christopher L. Graham

CASE NO. CR2013-366

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | OF |
| VS | § | |
| Chelsie Chenoweth | § | COMAL COUNTY, TEXAS |

### TRIAL COURT'S CERTIFICATION OF DEFENDANT'S RIGHT OF APPEAL

I, Judge of the trial court, certify this criminal case:

_____ is not a plea-bargain case, and the defendant has the right of appeal. (or)

_____ is a plea-bargain case, but matters were raised by written motion filed and ruled on and not withdrawn or waived, and the defendant has the right of appeal. (or)

_____ is a plea-bargain case, but the trial court has given permission to appeal, and the defendant has the right of appeal. (or)

__✓__ is a plea-bargain case, and the defendant has NO right of appeal. (or)

__✓__ the defendant has waived the right of appeal.

_____  5-19-14
PRESIDING JUDGE                          DATE

I have received a copy of this certification. I have also been informed of my rights concerning any appeal of this criminal case, including any rights to file a pro se petition for discretionary review pursuant to Rule 68 of the Texas Rules of Appellate Procedure. I have been admonished that my attorney must mail a copy of the court of appeal's judgement and opinion to my last known address and that I have only 30 days in which to file a pro se petition for discretionary review in the Court of Criminal Appeals. Tex. R. App. P. 68.2. I acknowledge that, if I wish to appeal this case and if I am entitled to do so, it is my duty to inform my appellate attorney, by written communication, of any change in the address at which I am currently living or any change in my current prison unit. I understand that, because of appellate deadlines, if I fail to timely inform my appellate attorney of any change in my address, I may lose the opportunity to file a pro se petition for discretionary review.

"A defendant in a criminal case has the right of appeal under these rules. The trial court shall enter a certification of defendant's right to appeal in every case in which it enters a judgement of guilt or other appealable order. In a plea bargain case--that is, a case in which a defendant's plea was guilty or nolo contendere and the punishment did not exceed the punishment recommended by the prosecutor and agreed to by the defendant—a defendant may appeal only: (A) those matters that were raised by written motion filed and ruled on before the trial or (B) after getting the trial court's permission to appeal."TEXAS RULE OF APPELLATE PROCEDURE 25.2(a)(2).

Chelsie Chenoweth
DEFENDANT

▬▬▬▬▬▬▬▬▬▬▬
ADDRESS
▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬
TELEPHONE NUMBER

_____
ATTORNEY FOR DEFENDANT
401 Main Plaza
ADDRESS
New Braunfels, TX, 78130

07023300
STATE BAR ID

41  37

CASE NO. CR2013-366 COUNT I
INCIDENT NO./TRN: 9212987540 TRS: A001

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| V. | § | 207TH JUDICIAL DISTRICT |
| | § | |
| CHELSIE MICHELLE CHENOWETH | § | COMAL COUNTY, TEXAS |
| | § | |
| STATE ID NO.: TX-50291363 | § | |

# JUDGMENT OF CONVICTION BY COURT—WAIVER OF JURY TRIAL

| | | | |
|---|---|---|---|
| Judge Presiding: | HON. JACK ROBISON | Date Judgment Entered: | MAY 19, 2014 |
| Attorney for State: | CLAY HEARRELL | Attorney for Defendant: | PAUL FINLEY |

**Offense for which Defendant Convicted:**
BURGLARY OF HABITATION

| | |
|---|---|
| Charging Instrument: INDICTMENT | Statute for Offense: 30.02 PENAL CODE |

**Date of Offense:**
APRIL 26, 2013

| Degree of Offense: SECOND DEGREE FELONY | Plea to Offense: GUILTY | Findings on Deadly Weapon: N/A |
|---|---|---|

**Terms of Plea Bargain:**
TEN (10) YEARS CONFINEMENT IN THE INSTITUTIONAL DIVISION OF THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE, PROBATED EIGHT (8) YEARS AND A $2,000 FINE

| Plea to 1st Enhancement Paragraph: | N/A | Plea to 2nd Enhancement/Habitual Paragraph: | N/A |
|---|---|---|---|
| Findings on 1st Enhancement Paragraph: | N/A | Findings on 2nd Enhancement/Habitual Paragraph: | N/A |

| Date Sentence Imposed: | MAY 19, 2014 | Date Sentence to Commence: | MAY 19, 2014 |
|---|---|---|---|

| Punishment and Place of Confinement: | TEN (10) YEARS IN THE INSTITUTIONAL DIVISION, TDCJ |
|---|---|

THIS SENTENCE SHALL RUN CONCURRENTLY.

☒ SENTENCE OF CONFINEMENT SUSPENDED, DEFENDANT PLACED ON COMMUNITY SUPERVISION FOR EIGHT (8) YEARS.

| Fine: | Court Costs: | Restitution: | Restitution Payable to: ☒ VICTIM (see below) ☐ AGENCY/AGENT (see below) |
|---|---|---|---|
| $2,000.00 | $340.00 | $120.00 | LATOYA WRIGHT 6307 MYRTLE RUN NEW BRAUNFELS, TEXAS 78130 |

**Sex Offender Registration Requirements do not apply to the Defendant.** TEX. CODE CRIM. PROC. chapter 62

The age of the victim at the time of the offense was N/A.

| | If Defendant is to serve sentence in TDCJ, enter incarceration periods in chronological order. |
|---|---|
| Time Credited: | FROM If Defendant is to serve sentence in county jail or is given credit toward fine and costs, enter days credited below. N/A DAYS    NOTES: N/A |

All pertinent information, names and assessments indicated above are incorporated into the language of the judgment below by reference.

This cause was called for trial in COMAL County, Texas. The State appeared by her District Attorney.

42

<u>Counsel / Waiver of Counsel (select one)</u>

☒ Defendant appeared in person with Counsel.

☐ Defendant knowingly, intelligently, and voluntarily waived the right to representation by counsel in writing in open court.

Both parties announced ready for trial. Defendant waived the right of trial by jury and entered the plea indicated above. The Court then admonished Defendant as required by law. It appeared to the Court that Defendant was mentally competent to stand trial, made the plea freely and voluntarily, and was aware of the consequences of this plea. The Court received the plea and entered it of record. Having heard the evidence submitted, the Court found Defendant guilty of the offense indicated above. In the presence of Defendant, the Court pronounced sentence against Defendant.

The Court **FINDS** Defendant committed the above offense and **ORDERS, ADJUDGES AND DECREES** that Defendant is **GUILTY** of the above offense. The Court **FINDS** the Presentence Investigation, if so ordered, was done according to the applicable provisions of TEX. CODE CRIM. PROC. art. 42.12 § 9.

The Court **ORDERS** Defendant punished as indicated above. The Court **ORDERS** Defendant to pay all fines, court costs, and restitution as indicated above.

<u>Punishment Options (select one)</u>

☒ **Confinement in State Jail or Institutional Division.** The Court **ORDERS** the authorized agent of the State of Texas or the Sheriff of this County to take, safely convey, and deliver Defendant to the **Director, INSTITUTIONAL DIVISION, TDCJ.** The Court **ORDERS** Defendant to be confined for the period and in the manner indicated above. The Court **ORDERS** Defendant remanded to the custody of the Sheriff of this county until the Sheriff can obey the directions of this sentence. The Court **ORDERS** that upon release from confinement, Defendant proceed immediately to the parole and/ or probation department. Once there, the Court **ORDERS** Defendant to pay, or make arrangements to pay, any remaining unpaid fines, court costs, and restitution as ordered by the Court above.

☐ **County Jail—Confinement / Confinement in Lieu of Payment.** The Court **ORDERS** Defendant immediately committed to the custody of the Sheriff of **Comal** County, Texas on the date the sentence is to commence. Defendant shall be confined in the **Comal** County Jail for the period indicated above. The Court **ORDERS** that upon release from confinement, Defendant shall proceed immediately to the **N/A.** Once there, the Court **ORDERS** Defendant to pay, or make arrangements to pay, any remaining unpaid fines, court costs, and restitution as ordered by the Court above.

☐ **Fine Only Payment.** The punishment assessed against Defendant is for a **FINE ONLY.** The Court **ORDERS** Defendant to proceed immediately to the Office of the **Comal** County **N/A.** Once there, the Court **ORDERS** Defendant to pay or make arrangements to pay all fines and court costs as ordered by the Court in this cause.

<u>Execution / Suspension of Sentence (select one)</u>

☐ The Court **ORDERS** Defendant's sentence **EXECUTED.**

☒ The Court **ORDERS** Defendant's sentence of confinement **SUSPENDED.** The Court **ORDERS** Defendant placed on community supervision for the adjudged period (above) so long as Defendant abides by and does not violate the terms and conditions of community supervision. The order setting forth the terms and conditions of community supervision is incorporated into this judgment by reference.

The Court **ORDERS** that Defendant is given credit noted above on this sentence for the time spent incarcerated.

<u>Furthermore, the following special findings or orders apply:</u>

SENTENCES IN EACH COUNT SHALL RUN CONCURRENT. THE DEFENDANT SHALL PARTICIPATE IN 250 HOURS OF COMMUNITY SERVICE.

Signed and entered on this _13_ day of _June_____, 2014.

X _____

JUDGE PRESIDING

43

Approved as to form and content:

_____
Prosecutor

Clerk: Kathy Faulkner

Right Thumbprint

44

CASE NO. CR2013-366 COUNT II
INCIDENT NO./TRN: 9212987540 TRS: D001

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| V. | § | 207TH JUDICIAL DISTRICT |
| | § | |
| CHELSIE MICHELLE CHENOWETH | § | COMAL COUNTY, TEXAS |
| | § | |
| STATE ID NO.: TX-50291363 | § | |

## JUDGMENT OF CONVICTION BY COURT—WAIVER OF JURY TRIAL

| | | | |
|---|---|---|---|
| Judge Presiding: | HON. JACK ROBISON | Date Judgment Entered: | MAY 19, 2014 |
| Attorney for State: | CLAY HEARRELL | Attorney for Defendant: | PAUL FINLEY |

Offense for which Defendant Convicted:
**TAMPERING WITH PHYSICAL EVIDENCE**

| Charging Instrument: | Statute for Offense: |
|---|---|
| **INDICTMENT** | **37.09 PENAL CODE** |

Date of Offense:
**APRIL 26, 2013**

| Degree of Offense: | Plea to Offense: | Findings on Deadly Weapon: |
|---|---|---|
| **THIRD DEGREE FELONY** | **GUILTY** | **N/A** |

Terms of Plea Bargain:
**TEN (10) YEARS CONFINEMENT IN THE INSTITUTIONAL DIVISION OF THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE, PROBATED EIGHT (8) YEARS AND A $2,000 FINE**

| Plea to 1st Enhancement Paragraph: | **N/A** | Plea to 2nd Enhancement/Habitual Paragraph: | **N/A** |
|---|---|---|---|
| Findings on 1st Enhancement Paragraph: | **N/A** | Findings on 2nd Enhancement/Habitual Paragraph: | **N/A** |

| Date Sentence Imposed: | MAY 19, 2014 | Date Sentence to Commence: | MAY 19, 2014 |
|---|---|---|---|

| Punishment and Place of Confinement: | TEN (10) YEARS IN THE INSTITUTIONAL DIVISION, TDCJ |
|---|---|

THIS SENTENCE SHALL RUN **CONCURRENTLY.**

☒ SENTENCE OF CONFINEMENT SUSPENDED, DEFENDANT PLACED ON COMMUNITY SUPERVISION FOR **EIGHT (8) YEARS.**

| Fine: | Court Costs: | Restitution: | Restitution Payable to: ☒ VICTIM (see below) ☐ AGENCY/AGENT (see below) |
|---|---|---|---|
| **$2,000.00** | **$340.00** | **$120.00** | LATOYA WRIGHT 6307 MYRTLE RUN NEW BRAUNFELS, TEXAS 78130 |

**Sex Offender Registration Requirements** do not apply to the Defendant. TEX. CODE CRIM. PROC. chapter 62

The age of the victim at the time of the offense was **N/A.**

| Time Credited: | If Defendant is to serve sentence in TDCJ, enter incarceration periods in chronological order. FROM If Defendant is to serve sentence in county jail or is given credit toward fine and costs, enter days credited below. **N/A DAYS    NOTES: N/A** |
|---|---|

All pertinent information, names and assessments indicated above are incorporated into the language of the judgment below by reference.

This cause was called for trial in **COMAL** County, Texas. The State appeared by her District Attorney.

45

<u>Counsel / Waiver of Counsel (select one)</u>

☒ Defendant appeared in person with Counsel.

☐ Defendant knowingly, intelligently, and voluntarily waived the right to representation by counsel in writing in open court.

Both parties announced ready for trial. Defendant waived the right of trial by jury and entered the plea indicated above. The Court then admonished Defendant as required by law. It appeared to the Court that Defendant was mentally competent to stand trial, made the plea freely and voluntarily, and was aware of the consequences of this plea. The Court received the plea and entered it of record. Having heard the evidence submitted, the Court found Defendant guilty of the offense indicated above. In the presence of Defendant, the Court pronounced sentence against Defendant.

The Court FINDS Defendant committed the above offense and ORDERS, ADJUDGES AND DECREES that Defendant is GUILTY of the above offense. The Court FINDS the Presentence Investigation, if so ordered, was done according to the applicable provisions of TEX. CODE CRIM. PROC. art. 42.12 § 9.

The Court ORDERS Defendant punished as indicated above. The Court ORDERS Defendant to pay all fines, court costs, and restitution as indicated above.

<u>Punishment Options (select one)</u>

☒ Confinement in State Jail or Institutional Division. The Court ORDERS the authorized agent of the State of Texas or the Sheriff of this County to take, safely convey, and deliver Defendant to the Director, INSTITUTIONAL DIVISION, TDCJ. The Court ORDERS Defendant to be confined for the period and in the manner indicated above. The Court ORDERS Defendant remanded to the custody of the Sheriff of this county until the Sheriff can obey the directions of this sentence. The Court ORDERS that upon release from confinement, Defendant proceed immediately to the parole and/ or probation department. Once there, the Court ORDERS Defendant to pay, or make arrangements to pay, any remaining unpaid fines, court costs, and restitution as ordered by the Court above.

☐ County Jail—Confinement / Confinement in Lieu of Payment. The Court ORDERS Defendant immediately committed to the custody of the Sheriff of Comal County, Texas on the date the sentence is to commence. Defendant shall be confined in the Comal County Jail for the period indicated above. The Court ORDERS that upon release from confinement, Defendant shall proceed immediately to the N/A. Once there, the Court ORDERS Defendant to pay, or make arrangements to pay, any remaining unpaid fines, court costs, and restitution as ordered by the Court above.

☐ Fine Only Payment. The punishment assessed against Defendant is for a FINE ONLY. The Court ORDERS Defendant to proceed immediately to the Office of the Comal County N/A. Once there, the Court ORDERS Defendant to pay or make arrangements to pay all fines and court costs as ordered by the Court in this cause.

<u>Execution / Suspension of Sentence (select one)</u>

☐ The Court ORDERS Defendant's sentence EXECUTED.

☒ The Court ORDERS Defendant's sentence of confinement SUSPENDED. The Court ORDERS Defendant placed on community supervision for the adjudged period (above) so long as Defendant abides by and does not violate the terms and conditions of community supervision. The order setting forth the terms and conditions of community supervision is incorporated into this judgment by reference.

The Court ORDERS that Defendant is given credit noted above on this sentence for the time spent incarcerated.

<u>Furthermore, the following special findings or orders apply:</u>

SENTENCES IN EACH COUNT SHALL RUN CONCURRENT. THE DEFENDANT SHALL PARTICIPATE IN 250 HOURS OF COMMUNITY SERVICE.

Signed and entered on this ___13___ day of ___June___, 2014.

X _____
JUDGE PRESIDING

46

Approved as to form and content:

Prosecutor

Clerk: Kathy Faulkner

Right Thumbprint

47



| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| V. | § | 207TH JUDICIAL DISTRICT |
| | § | |
| CHELSIE MICHELLE CHENOWETH | § | COMAL COUNTY, TEXAS |
| | § | |
| STATE ID NO.: TX-50291363 | § | |

# JUDGMENT OF CONVICTION BY COURT—WAIVER OF JURY TRIAL

| Judge Presiding: | HON. JACK ROBISON | Date Judgment Entered: | MAY 19, 2014 |
| Attorney for State: | CLAY HEARRELL | Attorney for Defendant: | PAUL FINLEY |

Offense for which Defendant Convicted:
**THEFT OF PROPERTY AGGREGATE VALUE >=$1,500< $20K**

| Charging Instrument: | Statute for Offense: |
| INDICTMENT | 31.03(e)(4)(A) PENAL CODE |

Date of Offense:
**APRIL 26, 2013**

| Degree of Offense: | Plea to Offense: | Findings on Deadly Weapon: |
| STATE JAIL FELONY | GUILTY | N/A |

Terms of Plea Bargain:
**TWO (2) YEARS CONFINEMENT IN THE STATE JAIL DIVISION OF THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE, PROBATED FIVE (5) YEARS AND A $2,000 FINE**

| Plea to 1st Enhancement Paragraph: | N/A | Plea to 2nd Enhancement/Habitual Paragraph: | N/A |
| Findings on 1st Enhancement Paragraph: | N/A | Findings on 2nd Enhancement/Habitual Paragraph: | N/A |

| Date Sentence Imposed: | MAY 19, 2014 | Date Sentence to Commence: | MAY 19, 2014 |

| Punishment and Place of Confinement: | TWO (2) YEARS CONFINEMENT IN THE STATE JAIL DIVISION, TDCJ |

THIS SENTENCE SHALL RUN **CONCURRENTLY.**

☒ SENTENCE OF CONFINEMENT SUSPENDED, DEFENDANT PLACED ON COMMUNITY SUPERVISION FOR **FIVE (5) YEARS.**

| Fine: | Court Costs: | Restitution: | Restitution Payable to: ☒ VICTIM (see below)  ☐ AGENCY/AGENT (see below) |
| $2,000.00 | $340.00 | $120.00 | LATOYA WRIGHT 6307 MYRTLE RUN NEW BRAUNFELS, TEXAS 78130 |

**Sex Offender Registration Requirements do not apply to the Defendant.** TEX. CODE CRIM. PROC. chapter 62

The age of the victim at the time of the offense was **N/A.**

| Time Credited: | If Defendant is to serve sentence in TDCJ, enter incarceration periods in chronological order. **FROM** |
| | If Defendant is to serve sentence in county jail or is given credit toward fine and costs, enter days credited below. **N/A DAYS    NOTES: N/A** |

All pertinent information, names and assessments indicated above are incorporated into the language of the judgment below by reference.

This cause was called for trial in **COMAL** County, Texas. The State appeared by her District Attorney.

43

<u>Counsel / Waiver of Counsel (select one)</u>

☒ Defendant appeared in person with Counsel.

☐ Defendant knowingly, intelligently, and voluntarily waived the right to representation by counsel in writing in open court.

Both parties announced ready for trial. Defendant waived the right of trial by jury and entered the plea indicated above. The Court then admonished Defendant as required by law. It appeared to the Court that Defendant was mentally competent to stand trial, made the plea freely and voluntarily, and was aware of the consequences of this plea. The Court received the plea and entered it of record. Having heard the evidence submitted, the Court found Defendant guilty of the offense indicated above. In the presence of Defendant, the Court pronounced sentence against Defendant.

The Court **FINDS** Defendant committed the above offense and **ORDERS, ADJUDGES AND DECREES** that Defendant is **GUILTY** of the above offense. The Court **FINDS** the Presentence Investigation, if so ordered, was done according to the applicable provisions of TEX. CODE CRIM. PROC. art. 42.12 § 9.

The Court **ORDERS** Defendant punished as indicated above. The Court **ORDERS** Defendant to pay all fines, court costs, and restitution as indicated above.

<u>Punishment Options (select one)</u>

☒ **Confinement in State Jail or Institutional Division.** The Court **ORDERS** the authorized agent of the State of Texas or the Sheriff of this County to take, safely convey, and deliver Defendant to the Director, **INSTITUTIONAL DIVISION, TDCJ.** The Court **ORDERS** Defendant to be confined for the period and in the manner indicated above. The Court **ORDERS** Defendant remanded to the custody of the Sheriff of this county until the Sheriff can obey the directions of this sentence. The Court **ORDERS** that upon release from confinement, Defendant proceed immediately to the parole and/ or probation department. Once there, the Court **ORDERS** Defendant to pay, or make arrangements to pay, any remaining unpaid fines, court costs, and restitution as ordered by the Court above.

☐ **County Jail—Confinement / Confinement in Lieu of Payment.** The Court **ORDERS** Defendant immediately committed to the custody of the Sheriff of **Comal** County, Texas on the date the sentence is to commence. Defendant shall be confined in the **Comal** County Jail for the period indicated above. The Court **ORDERS** that upon release from confinement, Defendant shall proceed immediately to the **N/A**. Once there, the Court **ORDERS** Defendant to pay, or make arrangements to pay, any remaining unpaid fines, court costs, and restitution as ordered by the Court above.

☐ **Fine Only Payment.** The punishment assessed against Defendant is for a **FINE ONLY**. The Court **ORDERS** Defendant to proceed immediately to the Office of the **Comal** County **N/A**. Once there, the Court **ORDERS** Defendant to pay or make arrangements to pay all fines and court costs as ordered by the Court in this cause.

<u>Execution / Suspension of Sentence (select one)</u>

☐ The Court **ORDERS** Defendant's sentence **EXECUTED**.

☒ The Court **ORDERS** Defendant's sentence of confinement **SUSPENDED**. The Court **ORDERS** Defendant placed on community supervision for the adjudged period (above) so long as Defendant abides by and does not violate the terms and conditions of community supervision. The order setting forth the terms and conditions of community supervision is incorporated into this judgment by reference.

The Court **ORDERS** that Defendant is given credit noted above on this sentence for the time spent incarcerated.

<u>Furthermore, the following special findings or orders apply:</u>

SENTENCES IN EACH COUNT SHALL RUN CONCURRENT. THE DEFENDANT SHALL PARTICIPATE IN 250 HOURS OF COMMUNITY SERVICE.

Signed and entered on this __13__ day of ___June___, 2014.

X _____

JUDGE PRESIDING

49

Approved as to form and content:

Prosecutor

Clerk: Kathy Faulkner



Right Thumbprint

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-14-00270-CV
NO. 03-14-00271-CV

In re Christopher L. Graham

FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
NOS. CR2013-366 & CR2013-519
HONORABLE LLOYD DOUGLAS SHAVER, JUDGE PRESIDING

## ORDER AND MEMORANDUM OPINION

PER CURIAM

Christopher L. Graham has filed notices of appeal stating he is appealing from the trial court's order of contempt dated April 8, 2014. He has also filed motions for a free record and affidavits of indigence, but this Court has been informed that the trial court orally stated that Graham was not indigent. Because of the uncertainty of the issue, we abate the cause to the trial court for proceedings under rule 20.1. *See* Tex. R. App. P. 20.1. Any contest to the affidavit must be filed within ten days of the date of this order. *See id.* R. 20.1(e)(1). If a contest is not filed within ten days, the allegations in Graham's affidavit shall be deemed true and he shall be entitled to proceed in his appeal without advance payment for the record. *See id.* R. 20.1(f).

If a contest is filed, the trial court shall treat the affidavit as if it had been filed in the trial court and shall hold a hearing or sign an order extending the time for a hearing within ten days of the date the contest is filed. *See id.* R. 20.1(i)(2). In no event shall the contest be heard any later

51

than twenty days from the date the trial court signs an order extending the time to conduct the hearing, and if the court determines that the contest should be sustained, it must sign a written order to that effect within the time period set for the hearing. *See id.* R. 20.1(i)(3), (4). If no contest is timely filed, the trial court clerk shall notify this Court of that fact so that the case may be reinstated. If a contest is filed and heard in a timely manner, the trial court clerk shall provide this Court with a supplemental clerk's record containing the trial court's determinations related to Graham's affidavit of indigence. The supplemental clerk's record must be filed within thirty-five days of the date of this order.

It is ordered August 29, 2014.


Before Justices Puryear, Pemberton, and Field

Abated and Remanded

Filed:  August 29, 2014

2

52

COURT OF APPEALS
FOR THE
THIRD DISTRICT OF TEXAS
P.O. BOX 12547, AUSTIN, TEXAS 78711-2547
(512) 463-1733

Date: August 29, 2014

Case Numbers: 03-14-00270-CV & 03-14-00271-CV
Trial Court Nos.: CR2013-366 & CR2013-519

Style: In re Christopher L. Graham

The enclosed opinion was sent this date to the following persons:

Mr. Christopher Graham
8551 Boat Club Road, #121 #159
Ft. Worth, TX 76179
* DELIVERED VIA E-MAIL *

The Honorable Lloyd Douglas Shaver
District Court Presiding Judge
P. O. Box 8693
Horseshoe Bay, TX 78657
* DELIVERED VIA E-MAIL *

The Honorable Billy Ray Stubblefield
Administrative Judge
Williamson County Courthouse
405 Martin Luther King, Box 2
Georgetown, TX 78626
* DELIVERED VIA E-MAIL *

The Honorable Jennifer A. Tharp
Comal County Criminal District Attorney
150 North Seguin, Suite 370
New Braunfels, TX 78130
* DELIVERED VIA E-MAIL *

The Honorable Kathy H. Faulkner
District Clerk
Comal County Courthouse Annex
150 N. Seguin, Suite 304
New Braunfels, TX 78130
* DELIVERED VIA E-MAIL *

53

CR2013-366 & CR2013-519

| | | |
|---|---|---|
| IN RE | § | IN THE 207th JUDICIAL |
| | § | |
| | § | DISTRICT COURT OF |
| | § | |
| CHRISTOPHER L. GRAHAM | § | COMAL COUNTY, TEXAS |

**STATE'S CONTEST OF APPELLANT'S AFFIDAVIT OF INDIGENCE**

TO THE HONORABLE JUDGES OF SAID COURT:

COMES NOW THE STATE OF TEXAS, by and through her Assistant

District Attorney, and files this Contest of Appellant's Affidavit of Indigence in the

above-captioned causes. Because Appellant filed his 'affidavit' in the Court of

Appeals, this contest will be filed on the same day in both the Court of Appeals

and the 207th District Court to ensure compliance with the Rules of Appellate

Procedure. *See* Tex. R. App. P. 20.1(e). The contests are identical, aside from the

caption.

### I.

The State of Texas contests the statements in Appellant's affidavit of

indigence, and respectfully demands strict proof thereof.

### II.

Appellant did not timely file an affidavit of indigence. An appellant "must

file the affidavit of indigence in the trial court with or before the notice of appeal."

Tex. R. App. P. 20.1(c)(1). The notice of appeal in this case was filed in the 207th

1

54

District Court on April 21, 2014, and in the Court of Appeals on April 22, 2014. The motion containing Appellant's 'Statement of Inability to Pay Costs on Appeal' was filed with the Court of Appeals on August 19, 2014. Courts have strictly construed the time requirements of Rule 20.1. *Mikkilineni v. City of Houston*, 4 S.W.3d 298, 299 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) (in which the Court found the appellant's motion to proceed *in forma pauperis* was not timely filed under Rule 20.1); *Ford v. Whitehead*, 2 S.W.3d 304, 306 (Tex. App.—San Antonio 1990, no pet.) (in which the Court affirmed the trial court's sustaining a court reporter's contest because the appellant's affidavit was untimely filed).

## III.

Appellant did not sufficiently comply with Texas Rule of Appellate Procedure 20.1(b), in that he failed to give complete information about the amount of his current employment income (20.1(b)(1)), the personal property he owns (20.1(b)(3)), the amount of cash he has on hand and amount on deposit available for withdrawal (20.1(b)(4)), his other assets (20.1(b)(5)), the amount of his monthly expenses (20.1(b)(8)), and whether an attorney is providing him with free legal services (20.1(b)(10)). *See* Tex. R. App. P. 20.1(b). The State notes Appellant is an attorney and is presumably performing 'free legal services' related to the

2

appeal; furthermore, the Appellant lists 'car payments' as a monthly expense, but does not specify the amount or list the car as personal property.

## IV.   PRAYER

The State of Texas prays that this contest be sustained and that Appellant be required to pay the costs of his appeal, rather than the State. Further, the State prays for all further relief, both special and general, in law and in equity, to which it may be entitled.

WHEREFORE, PREMISES CONSIDERED, the State respectfully requests that the State's Contest of Appellant's Affidavit of Indigence be SUSTAINED.

Respectfully submitted,

**Joshua D. Presley**
SBN: 24088254
preslj@co.comal.tx.us
Comal Criminal District Attorney's Office
150 N. Seguin Avenue, Suite 307
New Braunfels, Texas 78130
Ph: (830) 221-1300 / Fax: (830) 608-2008

3

56

## CERTIFICATE OF SERVICE

I, Joshua D. Presley, Assistant District Attorney for the State of Texas, Appellee, hereby certify that a true and correct copy of this *State's Contest of Appellant's Affidavit of Indigence* has been delivered to Appellant Christopher L. Graham's attorney of record in this matter:

Christopher L. Graham
8551 Boat Club Road, #121 #159
Ft. Worth, TX 76179
Phone: (469) 605-6846
*Counsel for Appellant on Appeal*

By fax at (210) 787-3430, this 2nd day of September 2014.

**Joshua D. Presley**

4

57

NO. 03-14-00270-CV, 03-14-00271-CV

IN RE ) IN THE DISTRICT COURT OF
)
) COMAL COUNTY, TEXAS
)
CHRISTOPHER L. GRAHAM ) 274TH JUDICIAL DISTRICT

FILED FOR RECORD
14 SEP -8 PM 2: 53
KATHY H. FAULKNER
DISTRICT CLERK-COMAL COUNTY
BY

## CONTEST OF AFFIDAVIT OF INABILITY TO PAY COSTS

TO THE HONORABLE JUDGE OF SAID COURT:

DOTTIE NORMAN, the visiting court reporter for the above-referenced court in the above-entitled and numbered cause, hereby contests the affidavit of inability to pay costs which alleges that Appellant, Christopher L. Graham, is unable to pay costs in this case filed by Christopher L. Graham, Appellant. DOTTIE NORMAN moves the Court, pursuant to the provisions of Rule 20.1 of the Texas Rules of Appellate Procedure, to set this matter for hearing and to take evidence and require Appellant, Christopher L. Graham, to prove his alleged inability by competent evidence other than by the affidavit.

Wherefore, DOTTIE NORMAN prays that this matter be set for hearing and that the Court sustain this contest to the affidavit filed by Appellant, Christopher L. Graham, and order Appellant, Christopher L. Graham, to pay costs in advance as required by the Texas Rules of Appellate Procedure. In the alternative, DOTTIE NORMAN, prays that the Court determine the amount of costs which Appellant can pay or give security for and order such payment of security.

Respectfully submitted,

_signature_

DOTTIE NORMAN, Visiting Court Reporter
1806 Toro Canyon Road
Austin, Texas 78746
Telephone (512)327-4650
Facsimile (512)327-3651

58

NO. 03-14-00270-CV, 03-14-00271-CV

FILED FOR RECORD
14 SEP -8 PM 2: 53
KATHY H. FAULKNER
DISTRICT CLERK-COMAL COUNTY
BY

IN RE                                    )        IN THE DISTRICT COURT OF
                                         )
                                         )        COMAL COUNTY, TEXAS
                                         )
CHRISTOPHER L. GRAHAM                     )        274TH JUDICIAL DISTRICT

## CONTEST OF AFFIDAVIT OF INABILITY TO PAY COSTS

TO THE HONORABLE JUDGE OF SAID COURT:

RICHARD E. ROBERTS, JR., the official court reporter for the above-referenced court in the above-entitled and numbered cause, hereby contests the affidavit of inability to pay costs which alleges that Appellant, Christopher L. Graham, is unable to pay costs in this case filed by Christopher L. Graham, Appellant. RICHARD E. ROBERTS, JR. moves the Court, pursuant to the provisions of Rule 20.1 of the Texas Rules of Appellate Procedure, to set this matter for hearing and to take evidence and require Appellant, Christopher L. Graham, to prove his alleged inability by competent evidence other than by the affidavit.

Wherefore, RICHARD E. ROBERTS, JR. prays that this matter be set for hearing and that the Court sustain this contest to the affidavit filed by Appellant, Christopher L. Graham, and order Appellant, Christopher L. Graham, to pay costs in advance as required by the Texas Rules of Appellate Procedure. In the alternative, RICHARD E. ROBERTS, JR., prays that the Court determine the amount of costs which Appellant can pay or give security for and order such payment of security.

Respectfully submitted,

RICHARD E. ROBERTS, JR., Official Court Reporter
274th Judicial District Court
P.O. Box 311905
New Braunfels, Texas 78131
Telephone (830) 228-4634
Facsimile (830) 885-4634

59

CR2013-366 & CR2013-519

IN RE § IN THE 207TH JUDICIAL

§ DISTRICT COURT OF

CHRISTOPHER L. GRAHAM § COMAL COUNTY, TEXAS

## ORDER EXTENDING TIME TO CONDUCT HEARING

The Texas Court of Appeals, Third District, abated the appeals in No. 03-14-00270-CV and No. 03-14-00271-CV, related to cause numbers CR2013-366 and CR2013-519, for proceedings under rule 20.1. *See* Tex. R. App. P. 20.1.

The State having timely filed a contest of Appellant's affidavit of indigence on September 2, 2014, within 10 days of the August 29, 2014 Order of the Court of Appeals, a hearing must be held or an order extending the time for a hearing must be signed within 10 days of the date the contest was filed. *See Id.* R. 20.1(i)(2).

Accordingly, it is hereby ORDERED that the time for conducting a hearing is extended 20 days from the date of the signing of this order. *See Id.* R. 20.1(i)(3).

SIGNED AND ENTERED this the __10__ day of September, 2014.

_____
JUDGE PRESIDING

FILED FOR RECORD

2014 SEP 16 PM 2:35

KATHY H. FAULKNER
DISTRICT CLERK COMAL COUNTY
BY

60

CR2013-366 & CR2013-519

IN RE                                    §        IN THE 207th JUDICIAL
                                         §
                                         §        DISTRICT COURT OF
                                         §
CHRISTOPHER L. GRAHAM                     §        COMAL COUNTY, TEXAS

## ORDER SUSTAINING STATE'S CONTEST

The Texas Court of Appeals, Third District, abated the appeals in No. 03-14-00270-CV and No. 03-14-00271-CV, related to cause numbers CR2013-366 and CR2013-519, for proceedings under rule 20.1. *See* Tex. R. App. P. 20.1.

On September 23, 2014, a hearing was held on Christopher L. Graham's affidavit of indigence and the State's contest to said affidavit, within the period set for the hearing. The Court, having considered the evidence, finds that the State's Contest of Appellant's Affidavit of Indigence should be sustained.

Accordingly, the State's Contest is hereby SUSTAINED, and the Appellant Christopher L. Graham may not proceed without the advance payment of costs.

SIGNED AND ENTERED this the 23rd day of September, 2014.

_____
JUDGE PRESIDING

1

61

NO. 03-14-00270-CV, 03-14-00271-CV

IN RE ) IN THE DISTRICT COURT OF
)
) COMAL COUNTY, TEXAS
)
CHRISTOPHER L. GRAHAM ) 274th JUDICIAL DISTRICT

FILED FOR RECORD
SEP 23 2014
KATHY H FAULKNER
Clerk District Court, Comal County, TX.
By

## ORDER SUSTAINING CONTEST TO AFFIDAVIT OF INDIGENCE

Came on for hearing on the 23rd day of September, 2014, Court Reporter Richard E. Roberts Jr.'s Contest to Christopher L. Graham's Affidavit of Indigence. All parties were represented by counsel or pro se and the Court, after hearing evidence and argument, is of the opinion that the Contest should be, and hereby is, SUSTAINED; and

IT IS THEREFORE ORDERED that the Affidavit of Indigence filed by Christopher L. Graham is denied and considered of no further force or effect.

SIGNED this 23rd day of September, 2014.

_____
JUDGE PRESIDING

62

NO: CR2013-366
Count I

THE STATE OF TEXAS           IN THE 22ND DISTRICT COURT

VS.                        OF

Chelsie Michelle Chenoweth        COMAL COUNTY, TEXAS

~~Amended~~ *Nunc Pro Tunc*

## CONDITIONS OF COMMUNITY SUPERVISION

In accordance with the authority conferred by the Community Supervision Law of the State of Texas, you have been placed under supervision this date 5/19/14, for a period of **Eight (8) years** by the Honorable Jack Robison, 207th District Court of Comal County, Texas. It is the order of the Court that you shall comply with the following conditions of community supervision;

1) Obey all orders of the Court and the Supervision Officer;

2) Commit no offense against the laws of this State, of any other State, or of the United States;

3) Abstain from the use of alcoholic beverages and narcotic or habit forming drugs, marijuana and controlled substances;

4) Avoid persons or places of disreputable or harmful character (including places where narcotic drugs, marijuana and controlled substances are present, sold or used, and where alcoholic beverages are sold, except for bona fide eating places;) do not associate with persons who possess, sell, or use narcotic drugs, marijuana, or controlled substances; and do not associate with persons who have been convicted of a felony;

5) Report to the Supervision Officer as often as weekly beginning this date and as directed by your Supervision Officer;

6) Permit the Supervision Officer to visit you at your home or elsewhere;

7) Obtain and keep gainful employment in a lawful occupation;

8) Do not change place of residence without the permission of the Supervision Officer; and within five (5) days of any change of employment or marital status, report such fact to the Supervision Officer;

9) Remain within COMAL/ _____ County, Texas during the term of probation except by written permission of the Comal County supervision officer;

10) Support your dependents;

11) Pay your Crime Stoppers Fee of $15.00 and Court Cost in the amount of $ 346.00 today and pay an additional $25.00 cost within 30 days for offenses after 09/01/97 if time payments are required to the Court.

12) Fine $2,000.00 ($0.00 PROBATED); Restitution $120.00 ____; and/or compensation paid to appointed counsel $450.00; and/or $0.00 Family Violence fee in the total amount of $3,070.00 are payable in consecutive monthly installments of $70.00 to be paid to the Comal County District Clerk's Office on or before the 10th day of each month until the total amount has been paid. The first payment of $70.00 is due on or before the 10th day of June, 2014; (Concurrent with Count I)

13) Pay $60.00 per month supervision/probation fee to the Comal County Community Supervision and Corrections Department for 96 consecutive months by the 10th day of each month, beginning on the 10th day of June, 2014; except for months in which you are granted permission by this department to live and work outside of the State of Texas and are successfully supervised through the Interstate Compact Procedure in the receiving state. (Paying on Count I)

14) The defendant does hereby agree that if he hereafter leaves the State of Texas, he does hereby waive extradition to the State of Texas from any jurisdiction, in or outside the United States, where he

63    5

may be found, and the defendant does hereby waive any contest to any effort by any jurisdiction to return him to the State of Texas.

Additionally, you must abide by any further conditions indicated below:

15) Submit to testing as directed by the Supervision Officer or his agent, for the use or consumption of alcohol or controlled substances, daily or as otherwise instructed and pay any required fees to the Comal County CSCD including but not limited to an initial $50.00 fee.

16) Perform 250 hours of Community Service Restitution (CSR) work at a minimum of 16 hours per month with a Court Pre-Approved CSR Agency(s) and Project(s) as directed by the CSR Program of the Community Supervision and Corrections Department of Comal County, Texas.

17) Provide verification of employment and income by the 10th day of each month to the community Supervision Officer. Provide copies of all W-2 forms, Federal Income Tax returns and all similar documents to the Community Supervision Officer by the 15th day of May of each year during the period of probation.

18) The defendant is subject to deportation and is deported, do not return to the United States illegally. The defendant must report to the Comal County Community Supervision and Corrections Department by mail on or before the 10th day of each month that he resides outside of the United States and provide verification of income. If the defendant returns to the United States, defendant must report to the Comal County Community Supervisions and Corrections Department within 10 days of re-entry.

19) If convicted of a felony, submit a DNA specimen for the purpose of creating a DNA record with the Texas Department of Public Safety. Sample will be taken as directed by your Supervision Officer and ordered by the Court;

20) Attend daily and successfully complete the Day Treatment Program of the District Resource Center in lieu of residential treatment and the defendant shall comply with all rules and regulations of said center. (Via Free-world)

21) Attend Alcoholics Anonymous or Narcotics Anonymous meetings weekly or as directed by the Supervision Officer and provide written verification to the Supervision Officer.

22) Faithfully attend an alcohol/drug abuse aftercare program daily or as directed by your supervision officer, provide written verification of said attendance and pay all required fees.

23) Attend and successfully complete, and participate in the following group: Theft Intervention, as directed by your Community Supervision Officer, and pay any required fees.

24) Attend G.E.D. classes as directed by the community supervision officer in order to obtain a G.E.D. and provide written verification to the supervision officer, and pay any required fees.

25) Have no contact with the co-defendant(s) in this Cause: Isaac Simon Flores, Romulo Aurdan Loya.

26) Have no contact (spoken, written, by telephone, by messenger, or other form) with the victim in this Cause, or anyone in their immediate family.

27) Submit to alcohol and/or drug evaluation and counseling as directed by the supervision officer, pay all costs, and provide written verification of attendance to the Supervision Officer.

28) The defendant is to be considered for placement in Challenge Court.

You are hereby advised that under the law of this State, the Court shall determine the terms and conditions of your supervision, and may at any time during the period of supervision, alter or modify the

64

conditions of your community supervision. Pursuant to Article 42.12 Sec.10 (d) (e) and Section 21 Code of Criminal Procedure, your conditions may be modified to address any violation of any of the conditions set out above within the Community Supervision and Corrections Department Programs and Sanctions Policy, which could be up to and including SAFPF. The Court also has the authority at any time during the period of your supervision to revoke your supervision for violation of any of the conditions set out above;

Witness our signatures this _22_ day of _Sept_ .2014.

_Judy Hernandy_
Supervision Officer

_Jack Robison_
Honorable Jack Robison
207th District Court

Receipt acknowledged this date:

_Chelsie Chenaue_
Defendant

_____
Attorney

65

THE STATE OF TEXAS

VS.

Chelsie Michelle Chenoweth

IN THE 22ND DISTRICT COURT

OF

COMAL COUNTY. TEXAS

~~Amended~~ *Nunc Pro Tunc*

## CONDITIONS OF COMMUNITY SUPERVISION

In accordance with the authority conferred by the Community Supervision Law of the State of Texas, you have been placed under supervision this date 5/19/2014, for a period of Eight (8) years by the Honorable Jack Robison, 207th District Court of Comal County, Texas. It is the order of the Court that you shall comply with the following conditions of community supervision;

1) Obey all orders of the Court and the Supervision Officer;

2) Commit no offense against the laws of this State, of any other State, or of the United States;

3) Abstain from the use of alcoholic beverages and narcotic or habit forming drugs, marijuana and controlled substances;

4) Avoid persons or places of disreputable or harmful character (including places where narcotic drugs, marijuana and controlled substances are present, sold or used, and where alcoholic beverages are sold, except for bona fide eating places;) do not associate with persons who possess, sell, or use narcotic drugs, marijuana, or controlled substances; and do not associate with persons who have been convicted of a felony;

5) Report to the Supervision Officer as often as weekly beginning this date and as directed by your Supervision Officer;

6) Permit the Supervision Officer to visit you at your home or elsewhere;

7) Obtain and keep gainful employment in a lawful occupation;

8) Do not change place of residence without the permission of the Supervision Officer; and within five (5) days of any change of employment or marital status, report such fact to the Supervision Officer;

9) Remain within COMAL/ _____ County, Texas during the term of probation except by written permission of the Comal County supervision officer;

10) Support your dependents;

11) Pay your Crime Stoppers Fee of $15.00 and Court Cost in the amount of $ 346.00 today and pay an additional $25.00 cost within 30 days for offenses after 09/01/97 if time payments are required to the Court.

12) Fine $2,000.00 ($0.00 PROBATED); Restitution $120.00 ; and/or compensation paid to appointed counsel $TBD ;and/or $0.00 Family Violence fee in the total amount of $3,070.00 are payable in consecutive monthly installments of $60.00 to be paid to the Comal County District Clerk's Office on or before the 10th day of each month until the total amount has been paid. The first payment of $70.00 is due on or before the 10th day of June, 2014; (Concurrent with Count I)

13) Pay $0.00 per month supervision/probation fee to the Comal County Community Supervision and Corrections Department for 96 consecutive months by the 10th day of each month, beginning on the 10th day of N/A, 2014; except for months in which you are granted permission by this department to live and work outside of the State of Texas and are successfully supervised through the Interstate Compact Procedure in the receiving state. (Paying on Count I)

14) The defendant does hereby agree that if he hereafter leaves the State of Texas, he does hereby waive extradition to the State of Texas from any jurisdiction, in or outside the United States, where he

66

may be found, and the defendant does hereby waive any contest to any effort by any jurisdiction to return him to the State of Texas.

Additionally, you must abide by any further conditions indicated below:

15) Submit to testing as directed by the Supervision Officer or his agent, for the use or consumption of alcohol or controlled substances, daily or as otherwise instructed and pay any required fees to the Comal County CSCD including but not limited to an initial $50.00 fee.

16) Perform 250 hours of Community Service Restitution (CSR) work at a minimum of 16 hours per month with a Court Pre-Approved CSR Agency(s) and Project(s) as directed by the CSR Program of the Community Supervision and Corrections Department of Comal County, Texas.

17) Provide verification of employment and income by the 10th day of each month to the community Supervision Officer. Provide copies of all W-2 forms, Federal Income Tax returns and all similar documents to the Community Supervision Officer by the 15th day of May of each year during the period of probation.

18) The defendant is subject to deportation and is deported, do not return to the United States illegally. The defendant must report to the Comal County Community Supervision and Corrections Department by mail on or before the 10th day of each month that he resides outside of the United States and provide verification of income. If the defendant returns to the United States, defendant must report to the Comal County Community Supervisions and Corrections Department within 10 days of re-entry.

19) If convicted of a felony, submit a DNA specimen for the purpose of creating a DNA record with the Texas Department of Public Safety. Sample will be taken as directed by your Supervision Officer and ordered by the Court;

20) Attend daily and successfully complete the Day Treatment Program of the District Resource Center in lieu of residential treatment and the defendant shall comply with all rules and regulations of said center. (Via Free-world)

21) Attend Alcoholics Anonymous or Narcotics Anonymous meetings weekly or as directed by the Supervision Officer and provide written verification to the Supervision Officer.

22) Faithfully attend an alcohol/drug abuse aftercare program daily or as directed by your supervision officer, provide written verification of said attendance and pay all required fees.

23) Attend and successfully complete, and participate in the following group: Theft Intervention, as directed by your Community Supervision Officer, and pay any required fees.

24) Attend G.E.D. classes as directed by the community supervision officer in order to obtain a G.E.D. and provide written verification to the supervision officer, and pay any required fees.

25) Have no contact with the co-defendant(s) in this Cause: Isaac Simon Flores, Romulo Aurdan Loya.

26) Have no contact (spoken, written, by telephone, by messenger, or other form) with the victim in this Cause, or anyone in their immediate family.

27) Submit to alcohol and/or drug evaluation and counseling as directed by the supervision officer, pay all costs, and provide written verification of attendance to the Supervision Officer.

28) The defendant is to be considered for placement in Challenge Court.

You are hereby advised that under the law of this State, the Court shall determine the terms and conditions of your supervision, and may at any time during the period of supervision, alter or modify the

67

conditions of your community supervision. Pursuant to Article 42.12 Sec.10 (d) (e) and Section 21 Code of Criminal Procedure, your conditions may be modified to address any violation of any of the conditions set out above within the Community Supervision and Corrections Department Programs and Sanctions Policy, which could be up to and including SAFPF. The Court also has the authority at any time during the period of your supervision to revoke your supervision for violation of any of the conditions set out above;

Witness our signatures this _____ 22 day of _____ Sept _____ , 2014.

_____
Supervision Officer

Receipt acknowledged this date:

_____
Honorable Jack Robison
207th District Court

_____
Defendant

_____
Attorney

68

NO: CR2013-366
Count III

THE STATE OF TEXAS

VS.

Chelsie Michelle Chenoweth

IN THE 22ND DISTRICT COURT

OF

COMAL COUNTY, TEXAS

~~Amended~~ *Nunc Pro Tunc*

CONDITIONS OF COMMUNITY SUPERVISION

In accordance with the authority conferred by the Community Supervision Law of the State of Texas, you have been placed under supervision this date 5/19/2014, for a period of Five (5) years by the Honorable Jack Robison, 207th District Court of Comal County, Texas. It is the order of the Court that you shall comply with the following conditions of community supervision;

1) Obey all orders of the Court and the Supervision Officer;

2) Commit no offense against the laws of this State, of any other State, or of the United States;

3) Abstain from the use of alcoholic beverages and narcotic or habit forming drugs, marijuana and controlled substances;

4) Avoid persons or places of disreputable or harmful character (including places where narcotic drugs, marijuana and controlled substances are present, sold or used, and where alcoholic beverages are sold, except for bona fide eating places;) do not associate with persons who possess, sell, or use narcotic drugs, marijuana, or controlled substances; and do not associate with persons who have been convicted of a felony;

5) Report to the Supervision Officer as often as weekly beginning this date and as directed by your Supervision Officer;

6) Permit the Supervision Officer to visit you at your home or elsewhere;

7) Obtain and keep gainful employment in a lawful occupation;

8) Do not change place of residence without the permission of the Supervision Officer; and within five (5) days of any change of employment or marital status, report such fact to the Supervision Officer;

9) Remain within COMAL/ _____ County, Texas during the term of probation except by written permission of the Comal County supervision officer;

10) Support your dependents;

11) Pay your Crime Stoppers Fee of $15.00 and Court Cost in the amount of $ 346.00 today and pay an additional $25.00 cost within 30 days for offenses after 09/01/97 if time payments are required to the Court.

12) Fine $2,000.00 ($0.00PROBATED); Restitution $120.00 ____; and/or compensation paid to appointed counsel $TBD ;and/or $0.00 Family Violence fee in the total amount of $3,070.00 are payable in consecutive monthly installments of $60.00 to be paid to the Comal County District Clerk's Office on or before the 10th day of each month until the total amount has been paid. The first payment of $70.00 is due on or before the 10th day of June, 2014; (Concurrent with Count I)

13) Pay $0.00 per month supervision/probation fee to the Comal County Community Supervision and Corrections Department for 60 consecutive months by the 10th day of each month, beginning on the 10th day of N/A, 2014; except for months in which you are granted permission by this department to live and work outside of the State of Texas and are successfully supervised through the interstate Compact Procedure in the receiving state. (Paying on Count I)

14) The defendant does hereby agree that if he hereafter leaves the State of Texas, he does hereby waive extradition to the State of Texas from any jurisdiction, in or outside the United States, where he

69

may be found, and the defendant does hereby waive any contest to any effort by any jurisdiction to return him to the State of Texas.

Additionally, you must abide by any further conditions indicated below:

15) Submit to testing as directed by the Supervision Officer or his agent, for the use or consumption of alcohol or controlled substances, daily or as otherwise instructed and pay any required fees to the Comal County CSCD including but not limited to an initial $50.00 fee.

16) Perform 250 hours of Community Service Restitution (CSR) work at a minimum of 16 hours per month with a Court Pre-Approved CSR Agency(s) and Project(s) as directed by the CSR Program of the Community Supervision and Corrections Department of Comal County, Texas.

17) Provide verification of employment and income by the 10th day of each month to the community Supervision Officer. Provide copies of all W-2 forms, Federal Income Tax returns and all similar documents to the Community Supervision Officer by the 15th day of May of each year during the period of probation.

18) The defendant is subject to deportation and is deported, do not return to the United States illegally. The defendant must report to the Comal County Community Supervision and Corrections Department by mail on or before the 10th day of each month that he resides outside of the United States and provide verification of income. If the defendant returns to the United States, defendant must report to the Comal County Community Supervisions and Corrections Department within 10 days of re-entry.

19) If convicted of a felony, submit a DNA specimen for the purpose of creating a DNA record with the Texas Department of Public Safety. Sample will be taken as directed by your Supervision Officer and ordered by the Court;

X 20) Attend daily and successfully complete the Day Treatment Program of the District Resource Center in lieu of residential treatment and the defendant shall comply with all rules and regulations of said center. (Via Free-world)

21) Attend Alcoholics Anonymous or Narcotics Anonymous meetings weekly or as directed by the Supervision Officer and provide written verification to the Supervision Officer.

22) Faithfully attend an alcohol/drug abuse aftercare program daily or as directed by your supervision officer, provide written verification of said attendance and pay all required fees.

23) Attend and successfully complete, and participate in the following group: Theft Intervention, as directed by your Community Supervision Officer, and pay any required fees.

24) Attend G.E.D. classes as directed by the community supervision officer in order to obtain a G.E.D. and provide written verification to the supervision officer, and pay any required fees.

25) Have no contact with the co-defendant(s) in this Cause: Isaac Simon Flores, Romulo Aurdan Loya.

26) Have no contact (spoken, written, by telephone, by messenger, or other form) with the victim in this Cause, or anyone in their immediate family.

27) Submit to alcohol and/or drug evaluation and counseling as directed by the supervision officer, pay all costs, and provide written verification of attendance to the Supervision Officer.

28) The defendant is to be considered for placement in Challenge Court.

You are hereby advised that under the law of this State, the Court shall determine the terms and conditions of your supervision, and may at any time during the period of supervision, alter or modify the

70

NO: CR2013-366
Count III

conditions of your community supervision. Pursuant to Article 42.12 Sec.10 (d) (e) and Section 21 Code of Criminal Procedure, your conditions may be modified to address any violation of any of the conditions set out above within the Community Supervision and Corrections Department Programs and Sanctions Policy, which could be up to and including SAFPF. The Court also has the authority at any time during the period of your supervision to revoke your supervision for violation of any of the conditions set out above;

Witness our signatures this _22_ day of _Sept_. _2014_.

_____
Supervision Officer

_____
Honorable Jack Robison
207th District Court

_____
Defendant

Receipt acknowledged this date:

_____
Attorney

71

CR2013-366 & CR2013-519

IN RE                                 §            IN THE 207th JUDICIAL
                                      §
                                      §            DISTRICT COURT OF
                                      §
CHRISTOPHER L. GRAHAM                 §            COMAL COUNTY, TEXAS

## FINDINGS OF FACT & CONCLUSIONS OF LAW

The Texas Court of Appeals, Third District, abated the appeals in No. 03-14-00270-CV and No. 03-14-00271-CV, related to cause numbers CR2013-366 and CR2013-519, for proceedings under rule 20.1. *See* Tex. R. App. P. 20.1.

On the 23rd day of September, 2014, came on for hearing Contests to Christopher L. Graham's Affidavit of Indigence. After the hearing, and considering evidence presented at the hearing, within the Court's knowledge, and the law applicable to the facts, the Court sustained the Contests to Appellant's Affidavit of Indigence and makes the following findings:

## FINDINGS OF FACT

1.   Christopher L. Graham failed to give complete information about his current employment income. Graham did not submit tax returns into evidence and repeatedly claimed to not remember even general amounts of income from several sources.

I

72

2. Although Graham is retained for some cases, when questioned about his bank accounts, he acknowledged only one business account and made no mention of an IOLTA account.

3. Graham failed to give complete information about the amount of cash he has on hand, on deposit, and available for withdrawal. Graham's flat assertions that he had no money available were not credible.

4. Graham failed to give complete information about personal property he owns.

5. Graham's monthly living expenses, including significant monthly expenses to reside in a Ramada Inn and car payments on the BMW he drives are covered by Graham's parents. Graham does not personally make significant expenditures on monthly living expenses.

6. Graham personally paid the majority of his $5,000 bond.

7. Graham has been licensed as attorney for nearly a decade, and has a substantial annual income from criminal court appointments in multiple counties, in addition to income from clients who retain Graham. When responding to the State's questions on specific amounts obtained from various counties, Graham was often evasive and noncommittal; however, the Court finds his income is likely in excess of $60,000 annually.

2

73

8. The State's Contest was filed within 10 days of the Order of the Court of Appeals. An order extending the time for the hearing was signed within 10 days of the filing of said Contest, the hearing was held within the time allowed by the order, and the orders sustaining the contests were signed on the day of the hearing.

## CONCLUSIONS OF LAW

1. Graham did not timely file an affidavit of indigence, and the Contests to Graham's Affidavit can be sustained on this ground. An appellant "must file the affidavit of indigence in the trial court with or before the notice of appeal." Tex. R. App. P. 20.1(c)(1). The notice of appeal in this case was filed in the 207th District Court on April 21, 2014, and in the Court of Appeals on April 22, 2014. The motion containing Graham's 'Statement of Inability to Pay Costs on Appeal' was filed with the Court of Appeals on August 19, 2014. Courts have strictly construed the time requirements of Rule 20.1. *Mikkilineni v. City of Houston*, 4 S.W.3d 298, 299 (Tex. App.— Houston [1st Dist.] 1999, pet. denied) (in which the Court found the appellant's motion to proceed *in forma pauperis* was not timely filed under Rule 20.1); *Ford v. Whitehead*, 2 S.W.3d 304, 306 (Tex. App.—San Antonio 1990, no pet.) (in which the Court affirmed the trial court's

sustaining a court reporter's contest because the appellant's affidavit was untimely filed).

2. This Court had jurisdiction to hear the contests, and at no time were the allegations in Graham's Affidavit required to be deemed true. *See* Tex. R. App. P. 20.1.

3. This Court further concludes that Graham is not indigent, and the contests may also be sustained on that basis. Graham failed to meet his burden at the hearing to show by a preponderance of the evidence that he would be unable to pay costs "if he really wanted to and made a good faith effort to do so." *See Thomas v. Olympus/Nelson Prop. Mgmt.*, 97 S.W.3d 350, 352 (Tex. App.—Houston [14th Dist.] 2003, no pet.). Graham failed to make even a prima facie showing of indigence; he did not produce tax returns, specific evidence, or even general estimates of his income. When questioned regarding amounts of income from multiple sources during the State's cross examination, Graham claimed he did not remember. Graham's failure to produce any evidence to satisfy his burden and his lack of memory is notable in light of the express requirements of 20.1(b)(1) of the Texas Rules of Appellate Procedure – particularly since the State pointed out Graham's failure to produce complete information in its Contest, filed weeks before the hearing took place. If 'business had been slow,' as Graham claimed,

4

75

presumably he would have had time to marshal *some* evidence of his actual income, or at least provide the court with a general estimate. Additionally, Graham testified that his parents paid his substantial monthly living expenses, and Graham acknowledged that he had paid most of his $5,000 bail himself. *See Whitehead v. State*, 130 S.W.3d 876, 878 (Tex. Crim. App. 2004) (holding that courts can consider the ability to post bail to the extent that ability relates to other factors).

4. Although Graham requests further findings under § 13.003 of the Texas Civil Practice and Remedies Code, because this Court has already sustained the contests to Graham's Affidavit, such findings are unnecessary. *See Baughman v. Baughman*, 65 S.W.3d 309, 315 (Tex. App.—Waco 2001, pet. denied) ("By determining that [appellant] was not indigent, it became unnecessary for the trial court to reach the issues of whether the appeal was not frivolous and whether the clerk's and reporter's records were necessary to present the issues on appeal).

This Court concludes that the Contests to Graham's Affidavit should be sustained because said Affidavit was not timely filed. Even in the event the Affidavit had been timely filed, this Court further concludes that the contests should be sustained because Graham is not indigent.

5

WHEREFORE, PREMISES CONSIDERED, the contests to Graham's Affidavit of Indigence are SUSTAINED.

IT IS ORDERED that the above findings of fact and conclusions of law be forwarded to and filed with the Texas Court of Appeals, Third District, at Austin, Texas.

SIGNED this, the ___7th___ day of ___September___, 2014.

_____
JUDGE PRESIDING

6

77

ACCEPTED
03-14-00270-CV
2692845
THIRD COURT OF APPEALS
AUSTIN, TEXAS
10/2/2014 2:35:58 AM
JEFFREY D. KYLE
CLERK

## NO. 03-14-00270-CV, 03-14-00271-CV

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
10/2/2014 2:35:58 AM
JEFFREY D. KYLE
Clerk

IN RE:

CHRISTOPHER L. GRAHAM

)
)
)
)
)

IN THE 3RD COURT OF APPEALS

TRAVIS COUNTY, TEXAS

## MOTION CHALLENGING ORDER

**TO THE HONORABLE JUDGE OF SAID COURT:**

Now comes Appellant, and makes this Motion to Challenge the Order of the Trial Court of 9/24/2014, sustaining the contest to Appellant's Affidavit of Indigence. This motion is filed in accordance with Tex. R. App. P. 20.1(j)(1) and shows the Court the following:

### FACTS

1. On or around 8/18/2014, Appellant mailed a Motion for Free Appellant Record along with an affidavit of indigence for filing with the court

2. On 9/2/2014 a motion to contest the affidavit was filed in this case.

3. On 9/23/2014, the trial court sustained the contest to Appellant's affidavit of indigence and the trial court denied the Appellant's Motion for Free Appellant Record.

### ARGUMENT

4. The Court made an erroneous decision when it sustained the contest because though there was evidence of past income by Appellant, no evidence was provided to show that Appellant presently had the means to pay for the reporter's and clerk's records. As a result the Court should have granted Appellant's request. The test for determining indigence is whether the record as a whole shows by a preponderance of the evidence that

**78**

the applicant would be unable to pay the costs, or a part of the costs, if the applicant wanted to and made a good-faith effort to do so Higgins v. Randall County Sheriff's Office, 257 S.W.3d 684, 686 (Tex. 2008). Appellant testified to there being no money in bank accounts or from another source that could be used for payment at this time. Such evidence was uncontroverted.

PRAYER

WHEREFORE PREMISES CONSIDERED Appellant asks that this court have prepared and delivered a free copy of the clerk's record and reporter's record of the indigence hearing to be delivered to the court of appeals. Also that the Court reverse the trial court's ruling and dispense with the Appellant's need to pay for the court record and reporter's record.

Respectfully submitted,

Cell Tel. (469)605-6846<br>Fax. (210) 787-3430

By: _____
CHRISTOPHER L. GRAHAM


_____
Declarant

CERTIFICATE OF CONFERENCE
I attempted to contact the parties regarding the contents of this motion to no avail.

_____

Christopher L. Graham

79

## CERTIFICATE OF SERVICE

This is to certify that on 10/2/2014, a true and correct copy of the above and foregoing document was served on the following parties

Comal County District Attorney via fax: 830-608-2008
Judge Gary Steel via fax: 830-608-2030
Judge Doug Shaver: 830-608-2030

Christopher L. Graham

80

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-14-00270-CV
NO. 03-14-00271-CV

In re Christopher L. Graham

FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
NOS. CR2013-366 & CR2013-519
HONORABLE LLOYD DOUGLAS SHAVER, JUDGE PRESIDING

## ORDER

**PER CURIAM**

Christopher L. Graham filed a motion challenging the trial court's orders sustaining contests to his affidavit of indigency. *See* Tex. R. App. P. 20.1(j)(1). Having reviewed the motion and the record, including the trial court's findings of fact and conclusions of law, we conclude that the trial court's orders did not constitute an abuse of discretion. *See Morris v. Aguilar*, 366 S.W.3d 208, 211-12 (Tex. App.—Austin 2010) (applying abuse-of-discretion standard to review of trial court's order sustaining indigency contest), *rev'd on other grounds*, 369 S.W.3d 168 (Tex. 2012) (per curiam). An abuse of discretion does not occur as long as some evidence of a substantive and probative character exists to support the trial court's decision. *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied). The test for indigence is whether the record as a whole shows by a preponderance of the evidence "'that the applicant would be unable to pay the costs, or a part thereof, or give security therefor, if he really wanted to and made a good-faith effort to do so.'"

*Higgins v. Randall Cnty. Sheriff's Office,* 257 S.W.3d 684, 687 (Tex. 2008) (quoting *Pinchback v. Hockless,* 164 S.W.2d 19, 20 (Tex. 1942)).

Graham contends that the trial court erred by sustaining the contests because no evidence was provided to show that he currently has the means to pay for the reporter's and clerk's records. At the hearing on the contests, Graham bore the burden of proving the allegations in his affidavit of indigence. *See* Tex. R. App. 20.1(g)(1). During the hearing, Graham (who is an attorney) equivocated when asked specific questions about his income from court appointments in various cities and counties, stating that he did not know what the exact numbers were. He also would not state how much money he had made on retained cases or how much his earnings were for the past year, again stating that he did not know how much he had made. Graham's lack of knowledge about his income, given that there is evidence that he was employed, does not establish that he is unable to pay the costs for the reporter's record and the clerk's record.

In addition, Graham testified at the hearing that his parents pay his $750 per month car payment, his approximately $1500 per month hotel bill, and provided some part of the $5,000 cash bond to get him released from jail. He also testified that he had not asked his parents to loan him the money for the costs of the reporter's record and the clerk's record. When an affidavit is contested, one of the allegations that the party who filed the affidavit must prove is his inability to obtain a loan for the court costs. *See* Tex. R. App. P. 20.1(b)(9), (g)(1). Graham did not establish that he would be unable to obtain a loan from his parents.

The record as a whole does not show that Graham established that he would be unable to pay the costs, "if he really wanted to and made a good-faith effort to do so." *Higgins,* 257 S.W.3d

2

**82**

at 687. We conclude that the trial court did not abuse its discretion by sustaining the contests.[1]

Accordingly, we deny Graham's motion challenging the trial court's orders sustaining the contests

and his motion for free appellate record. *See* Tex. R. App. P. 20.1(j)(4).

It is ordered on October 9, 2014.

Before Justices Puryear, Pemberton, and Field

---

[1] We note that in one of the conclusions of law, the trial court stated that the contests to Graham's affidavit could be sustained on the ground that Graham failed to timely file his affidavit of indigence. We disagree. The Texas Supreme Court has held that appellate courts may dismiss an appeal for untimely filing of an indigency affidavit (or payment of a filing fee) only after allowing the appellant a reasonable time to correct the defect. *See Higgins v. Randall Cnty. Sheriff's Office*, 193 S.W.3d 898, 899-900 (Tex. 2006) (per curiam). Accordingly, the late filing of an affidavit, standing alone, cannot support the sustaining of an indigency contest.

3

# COURT OF APPEALS
## FOR THE
# THIRD DISTRICT OF TEXAS
P.O. BOX 12547, AUSTIN, TEXAS 78711-2547
(512) 463-1733

Date:         October 9, 2014

Case Numbers:  03-14-00270-CV & 03-14-00271-CV
Trial Court Nos.:  CR2013-366 & CR2013-519

Style:        In re Christopher L. Graham

---

You are hereby informed that appellant's motion to challenge order and motion for free appellate record were denied on the date noted above. Also, the enclosed order was sent this date to the following persons:

Mr. Christopher Graham
8551 Boat Club Road, #121 #159
Ft. Worth, TX 76179
* DELIVERED VIA E-MAIL *

The Honorable Lloyd Douglas Shaver
District Court Presiding Judge
P. O. Box 8693
Horseshoe Bay, TX 78657
* DELIVERED VIA E-MAIL *

The Honorable Billy Ray Stubblefield
Administrative Judge
Williamson County Courthouse
405 Martin Luther King, Box 2
Georgetown, TX 78626
* DELIVERED VIA E-MAIL *

The Honorable Jennifer A. Tharp
Comal County Criminal District Attorney
150 North Seguin, Suite 370
New Braunfels, TX 78130
* DELIVERED VIA E-MAIL *

The Honorable Kathy H. Faulkner
District Clerk
Comal County Courthouse Annex
150 N. Seguin, Suite 304
New Braunfels, TX 78130
* DELIVERED VIA E-MAIL *

84

ACCEPTED
03-14-00270-CV
2692845
THIRD COURT OF APPEALS
AUSTIN, TEXAS
10/2/2014 2:35:58 AM
JEFFREY D. KYLE
CLERK

## NO. 03-14-00270-CV, 03-14-00271-CV

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
10/2/2014 2:35:58 AM
JEFFREY D. KYLE
Clerk

| | | |
|---|---|---|
| **IN RE:** | ) | **IN THE 3RD COURT OF APPEALS** |
| | ) | |
| **CHRISTOPHER L. GRAHAM** | ) | |
| | ) | |
| | ) | **TRAVIS COUNTY, TEXAS** |

## MOTION CHALLENGING ORDER

**TO THE HONORABLE JUDGE OF SAID COURT:**

Now comes Appellant, and makes this Motion to Challenge the Order of the Trial Court of 9/24/2014, sustaining the contest to Appellant's Affidavit of Indigence. This motion is filed in accordance with Tex. R. App. P. 20.1(j)(1) and shows the Court the following:

### FACTS

1. On or around 8/18/2014, Appellant mailed a Motion for Free Appellant Record along with an affidavit of indigence for filing with the court

2. On 9/2/2014 a motion to contest the affidavit was filed in this case.

3. On 9/23/2014, the trial court sustained the contest to Appellant's affidavit of indigence and the trial court denied the Appellant's Motion for Free Appellant Record.

### ARGUMENT

4. The Court made an erroneous decision when it sustained the contest because though there was evidence of past income by Appellant, no evidence was provided to show that Appellant presently had the means to pay for the reporter's and clerk's records. As a result the Court should have granted Appellant's request. The test for determining indigence is whether the record as a whole shows by a preponderance of the evidence that

**85**

the applicant would be unable to pay the costs, or a part of the costs, if the applicant wanted to and made a good-faith effort to do so <u>Higgins v. Randall County Sheriff's Office</u>, 257 S.W.3d 684, 686 (Tex. 2008). Appellant testified to there being no money in bank accounts or from another source that could be used for payment at this time. Such evidence was uncontroverted.

PRAYER

WHEREFORE PREMISES CONSIDERED Appellant asks that this court have prepared and delivered a free copy of the clerk's record and reporter's record of the indigence hearing to be delivered to the court of appeals. Also that the Court reverse the trial court's ruling and dispense with the Appellant's need to pay for the court record and reporter's record.

Respectfully submitted,

Cell Tel. (469)605-6846
Fax. (210) 787-3430

By: _____
CHRISTOPHER L. GRAHAM

_____
Declarant

CERTIFICATE OF CONFERENCE
I attempted to contact the parties regarding the contents of this motion to no avail.

_____

Christopher L. Graham

## CERTIFICATE OF SERVICE

This is to certify that on 10/2/2014, a true and correct copy of the above and foregoing document was served on the following parties

Comal County District Attorney via fax: 830-608-2008
Judge Gary Steel via fax: 830-608-2030
Judge Doug Shaver: 830-608-2030

Christopher L. Graham

87



# LAUREN GRAHAM
## AND ASSOCIATES, PLLC
### ATTORNEYS & COUNSELORS
California | Illinois | New York | Texas



10.26.2014
VIA EMAIL: dckkhf@co.comal.tx.us
**VIA FACSIMILE: 830-608-2006**
Comal District Court Clerk
150 N. Seguin, Suite #304
New Braunfels, Texas 78130

RE: *State v. Chenoweth, State v. Browne,* Cause Nos. CR2013-366 and CR2013-519, In the 207th District Court, Comal, Texas; Request for Clerk's Record

Dear Clerk of Court:

This letter constitutes a request for Designation of Matters in Clerk's Record in this cause. When the Clerk's Record has been prepared, please forward it to the 3rd Court of Appeals in Austin.

Items comprising the clerk's record should include all items designated under Texas Rules of Appellate Procedure 34.5(a) and the following items:

1. Show Cause Orders issued in both cases
2. All contempt Orders entered in both cases
3. All orders entered from any 3/13/2014 show cause hearing that took place in either case
4. All contempt orders entered on 4/8/2014 or any contempt order resulting from the 4/8/2014 show cause hearing taking placed involving either case.
5. Copies of all docket sheets from both cases
6. Copies of all documents establishing the amount of the bond for Christopher L. Graham in this case
7. Copies of all documents indicating payment by Christopher L. Graham of the $5,000 the cash bond in order to secure release pending appeal of the finding of contempt

Indicate the total of the costs for the preparation of these documents, so that payment can be made immediately and the appeal may proceed forward. The total price can be forwarded to me via fax at 214-989-4258 or via email at clgraham@lgi-law.com

Thank you for your cooperation.

Regards,

Christopher L. Graham, Esq.
LGI PLLC
Lauren Graham & Associates PLLC
State Bar Number: 24047549

88

Case Number: CR2013-366

| Fee Category | Charges | Payments | Credits | Balance | Disb | Escrow |
|---|---|---|---|---|---|---|
| **Administration Fee ($2)** | 6.00 | 2.00 | 0.00 | 4.00 | 0.00 | 2.00 |
| Administration Fee ($2) | 6.00 | 2.00 | 0.00 | 4.00 | 0.00 | 2.00 |
| **Attorney Fees** | 500.00 | 0.00 | 0.00 | 500.00 | 0.00 | 0.00 |
| Court Appointed Attorney | 500.00 | 0.00 | 0.00 | 500.00 | 0.00 | 0.00 |
| **Court Costs** | 432.00 | 178.00 | 0.00 | 254.00 | 0.00 | 178.00 |
| Arrest With Warrant - Comal County | 50.00 | 26.18 | 0.00 | 23.82 | 0.00 | 26.18 |
| Bond Fee | 10.00 | 5.24 | 0.00 | 4.76 | 0.00 | 5.24 |
| Clerk's Fee | 40.00 | 20.94 | 0.00 | 19.06 | 0.00 | 20.94 |
| CLERK'S RECORD | 92.00 | 0.00 | 0.00 | 92.00 | 0.00 | 0.00 |
| Consolidated Court Costs | 133.00 | 69.63 | 0.00 | 63.37 | 0.00 | 69.63 |
| Court Technology Fund | 4.00 | 2.09 | 0.00 | 1.91 | 0.00 | 2.09 |
| Courthouse Security | 5.00 | 2.62 | 0.00 | 2.38 | 0.00 | 2.62 |
| Crime Stoppers Fee | 15.00 | 7.85 | 0.00 | 7.15 | 0.00 | 7.85 |
| Electronic Filing Fee | 5.00 | 2.62 | 0.00 | 2.38 | 0.00 | 2.62 |
| Indigent Defense Fee | 2.00 | 1.05 | 0.00 | 0.95 | 0.00 | 1.05 |
| Jury Service Fee | 4.00 | 2.09 | 0.00 | 1.91 | 0.00 | 2.09 |
| Juvenile Fund | 4.00 | 2.09 | 0.00 | 1.91 | 0.00 | 2.09 |
| Records Management & Preservation | 22.50 | 11.78 | 0.00 | 10.72 | 0.00 | 11.78 |
| Records Management District | 2.50 | 1.31 | 0.00 | 1.19 | 0.00 | 1.31 |
| Restitution Fee | 12.00 | 6.28 | 0.00 | 5.72 | 0.00 | 6.28 |
| Support of Judiciary-County | 0.60 | 0.31 | 0.00 | 0.29 | 0.00 | 0.31 |
| Support Of Judiciary-State | 5.40 | 2.83 | 0.00 | 2.57 | 0.00 | 2.83 |
| Time Payment | 25.00 | 13.09 | 0.00 | 11.91 | 0.00 | 13.09 |
| **Fines** | 2,000.00 | 0.00 | 0.00 | 2,000.00 | 0.00 | 0.00 |
| County Fine | 2,000.00 | 0.00 | 0.00 | 2,000.00 | 0.00 | 0.00 |
| **Restitution** | 120.00 | 0.00 | 0.00 | 120.00 | 0.00 | 0.00 |
| Restitution | 120.00 | 0.00 | 0.00 | 120.00 | 0.00 | 0.00 |
| **Totals** | 3,058.00 | 180.00 | 0.00 | 2,878.00 | 0.00 | 180.00 |

**Indirect Total**          0.00

STATE OF TEXAS
COUNTY OF COMAL
I certify this to be a true and correct copy
of the record FILED & RECORDED in
the Official Court records of District Court
on this date and time stamped
thereon.

Kathy H. Faulkner
Comal County
District Clerk

By: _____

89

Chelsie Michelle Chenoweth

**OFFENSE** _Burg. of Hab.- Ct.1; Tamp Tab-Ct.11; Theft of - Ct.11_

**STATE'S ATTY.** _Byrd_

**DATE IND.** _8/14/13_ **AMT. BOND** $50K-Ct.1, $10,000-Ct.11, $5,000 Ct.111

**DEF'S ATTY.** _Clay Harrell_

**CAPIAS ISSUED** ✓ **BONDSMEN** _A Cope Bailbonds-Ct.1,11 &111_

| DATE | |
|---|---|
| 2/25/14 | △ present; arraign. date; next jtr 1:15, no counsel Essen shown counsel |
| 3/13/14 | A pro-se; no counsel; send order on arraignt to counsel; Substituted finding of counsel; issue SDDa couns apptd DA to represent court. 4 order transmitting 2/25 finding |
| 4-7-14 | △ felony EOA — w/ counsel; PSI |
| 5-19-14 | △ found guilty x 3, 6ys 1 &2 sent to yo TDCJ-ID probated 8yrs $2,000 fine 250 hrs CSR ORDTMT-Free World Ct.111 2yrs S/ Prob. 8yrs |

**PLEA OF GUILTY**

Both sides announce ready for trial, and the State and defendant and his attorney waive trial by jury, defendant enters a plea of guilty/nolo contendere to the charge contained in the indictment, viz:

**DATE** _____

_[signatures]_

Defendant having previously pled guilty/nolo contendere to the consequences and effect of said plea, and defendant having persisted in said plea, said plea of guilty/nolo contendere is received by the Court, evidence is heard and concluded.

**JUDGE PRESIDING**

(Pre-Sentencing Investigation: Ordered _____ Waived _____ )

Offense Committed on: _____

**PUNISHMENT AND SENTENCE**

Defendant having previously plead guilty/nolo contendere to the offense charged in the indictment is found guilty and punishment is hereby fixed at confinement in the Texas Department of Criminal Justice Institutional Division (Comal County Jail)

**DATE** _____

for a period of _____

Defendant is sentenced to serve a term of _____ years in the Texas Department of Criminal Justice Institutional Division (Comal County Jail).

Notice of Appeal _____ Given. _____ Not Given. _____ Right of Appeal Waived _____

(Plea Bargaining Agreement: Followed _____ Rejected _____ )

**JUDGE PRESIDING**

**PUNISHMENT AND PROBATION SENTENCE**

**DATE** _____

Defendant having previously plead guilty/nolo contenders to the offense charged in the indictment is found guilty and punishment is hereby fixed at confinement in the Texas Department of Criminal Justice Institutional Division (Comal County Jail)

for a period of _____

and the defendant having made application for probation and the Court being of the opinion that probation should be granted in this cause, it is hereby ORDERED that the execution of said (penitentiary) (jail) sentence is suspended during good behavior of the defendant, and defendant is placed on probation under the supervision of the Adult Probation Department of Comal County, Texas subject to conditions imposed as per draft of order on file, a copy of which is given to the defendant in open court.

(Plea Bargaining Agreement: Followed _____ Rejected _____ Right of Appeal Waived _____ )

**JUDGE PRESIDING**

**DEFERRED ADJUDICATION**

**Date** _____

Defendant granted Deferred Adjudication and placed on Probation for a period of _____ years.

Defendant to pay fine, cost and restitution and per month supervision fee, per order on file, a copy of which was delivered to defendant in open court.

**REVOCATION OF PROBATION**

**Date** _____

Both sides announce ready for trial. Defendant waives reading of the Motion to Revoke and pleads TRUE/NOT TRUE to the allegations contained therein. Defendant warned of his rights to be confronted by the witnesses against him and of his right against self-incrimination. Evidence heard and defendant is found to HAVE/HAVE NOT violated the terms of his probation as alleged in the Motion to Revoke (Probation is revoked.) (Defendant ordered continued on probation.) Punishment is now (fixed at) (reduced to) confinement in the Texas Department of Criminal Justice Institutional Division (Comal County Jail) for a period of _____ years. Defendant is sentenced to serve a term of _____ years in the Texas Department of Criminal Justice Institutional Division (Comal County Jail).

Right of Appeal Waived _____

**JUDGE PRESIDING**

**CLERK'S CERTIFICATE**

**The State of Texas ( )**

**County of Comal   ( )**

I, **Kathy H. Faulkner**, Clerk of the District Court of Comal County, Texas do hereby

Certify that the documents contained in this record to which this certification is attached

Are all of the documents specified by Texas Rule of Appellate Procedure 34.5 (a) and all

Other documents timely requested by a party to the proceeding under Texas Rule of

Procedure 34.5 (b).

**GIVEN UNDER BY HAND AND SEAL** at my office in Comal County, Texas this

/6th Day of **NOVEMBER, 2014.**

**KATHY H. FAULKNER, DISTRICT CLERK**
**District Court, Comal County, Texas**

By: _____Deputy

92

95

**SUPPLEMENTAL CLERK'S RECORD**
Volume I of I
Appellant Court Cause No. 03-14-00270-CR
Trial Court Cause No. CR2013-366
In the 207th District Court
Of Comal County, Texas

Judge - Honorable Jack Robison, Judge Presiding
Court Reporter: Mary Scopas
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## IN RE CHRISTOPHER L. GRAHAM, PLAINTIFF (S)
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
### Appealed to the Court of Appeals for the Third District of Texas, at Austin, Texas

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
Attorney (s) for Appellant (s)

Name: Mr. Christopher L. Graham
Address: 700 N. St. Mary's Street #1400
San Antonio, TX 78205
Telephone No: (210) 787-3430
Fax No.: same as phone number
SBOT No: 24047549
Attorney (s) for: Christopher L. Graham, Appellant (s)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
Delivered to the Court of Appeals for the Third District of Texas, at Austin, Texas

On this 1st day of March, 2015

Heather N. Kellar
District Clerk, Comal County, Texas

By: _____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
Appellate Court Cause No: 03-14-00270-CR Filed in the Court of
Appeals Third District of Texas, at Austin, Texas

This _____ day of _____, 2015

_____, Clerk

By: _____, Deputy

96

SUPPLEMENTAL TRANSCRIPT COVER SHEET CLERKS RECORD VOL I OF I    1

INDEX    2

CAPTION    3

RESPONSE TO COURTS ORDER TO SHOW CAUSE AND REQUEST FOR
CONTINUANCE (FILED MAR 10, 2014)    4-6

LETTER FROM JUDGE GARY STEEL (FILED MAR 17, 2014)    7

SHOW CASUE ORDER (FILED MAR 17, 2014)    8-10

PRECEPT TP SERVE (FILED MAR 31, 2014)    11

CONTEMPT ORDER (FILED APR 8, 2014)    12

BAIL BOND (FILED FEB 25, 2015)    13

RECEIPT OF PAYMENT (FILED FEB 25, 2014)    14

CONTEMPT OF COURT (FILED FEB 25, 2015)    15

COMAL COUNTY SHERIFFS OFFICE CASH BOND    16

SUPPLEMENTAL CLERKS RECORD REQUEST (FEB 24, 2015)    17-18

CASE SUMMARY    19-24

BILL OF COST    25

CLERKS CERTIFICATE    26

The State of Texas { }
County of Comal    { }

In the 207TH Judicial District of Comal County, Texas, The Honorable, Jack Robison,

Judge Presiding, the following proceedings were held and the following instructions and

Other papers were filed in this cause to with:

Trial Court Cause No: CR2013-366 Appellant
Court Cause No: 03-14-00270-CR

**IN RE CHRISTOPHER L. GRAHAM**          **IN THE DISTRICT COURT**

                                        **COMAL COUNTY, TEXAS**

## NO. CR2013-366

| | | |
|---|---|---|
| STATE OF TEXAS | ) | IN THE COUNTY COURT AT LAW |
| | ) | |
| V. | ) | |
| | ) | |
| CHELSIE CHENOWETH | ) | COMAL COUNTY, TEXAS |

FILED FOR RECORD 2014 MAR 10 PM 1:36 KATHY H. FAULKNER DISTRICT CLERK-COMAL COUNTY BY

## RESPONSE TO COURT'S ORDER TO SHOW CAUSE AND REQUEST FOR CONTINUANCE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the CHRISTOPHER GRAHAM, respondent to the Court's show cause notice and order to show cause the above-styled and numbered cause and shows the Court the following:

## FACTS

1. On 2/12/2014, I called the court to request that this case State v. Chelsie Chenoweth be scheduled for hearing on 2/13/2014. I was told by the court coordinator that the case had been set for hearing.

2. On 2/13/2014, I appeared at court expecting to be able to resolve this case and was told that the Court had erred and that case had not been added to that day's docket. I was told by court personnel to return to court on 2/25/2014, to resolve the case.

3. On 2/25/2014, I checked in the court shortly after 9 am to announce my presence and appearance for the above-captioned case.

4. During the next few minutes that followed plea documentation was completed and the Court was notified that the plea in the case was ready to be heard

5. The Court inexplicably took a break from conducting court activities from approximately 9:45 am until 11:20 am.

6. When the Court resumed court business the court twice neglected to address that the State v. Chenoweth case was ready for plea, Counsel for Chenoweth had to twice bring the issue to the Court's attention.

7. The Court then indicated that it needed to proceed with other matters and that the case would be recalled at 1:15 pm.

8. Therefore from approximately 9 am until 1:15 pm counsel for Chenoweth was forced to wait on the Court to address this case. There was no reason why the case could not have been addressed in the morning.

9. Counsel had other planned consultations scheduled in Bexar county during the day, so instead of being unproductive during the lunch hour, I conducted a consultation in Bexar county and then came back to the court at approximately 1:35pm to complete the plea in this case.

10. When I arrived at the court, the Court had already released the client, the long list of cases that the Court was supposed to hear were either reset or not heard. The Court had indicated that it had several contested matters to hear before the Chenoweth case was heard. Therefore it was not unreasonable to think that the Court would not hear this case exactly at 1:15pm.

Response to Show Cause Motion 1

11. Upon my arrival I attempted to address the Court to resolve the plea. The Court did not want to discuss the matter and I was told by the bailiff that the Court would issue a show cause order.

12. I was never personally served with the show cause order, but I found that the hearing on the show cause order was to be heard on 3/13/2014 at 9 am. I was never conferred with in order to discuss the suitability of the date. Counsel for Chenoweth has hearings that are already scheduled for 3/13/2014 in the morning and as a result counsel cannot appear and therefore requests a continuance.

## AUTHORITY AND ARGUMENTS

13. Courts are expected to guard against confusing acts that offend their sensibilities with acts that are actually disrespectful or that obstruct the administration of justice, see Brown v. United States, 356 U.S. 148, 153, 78 S. Ct. 622, 2 L. Ed. 2d 589 (1958). The act itself must be shown to be intentionally disrespectful; whether the statement offended the court is not the test. Contempt is not to be presumed; on the contrary, it is presumed not to exist, Ex parte Taylor, 807 S.W.2d 746, 748 (Tex. Crim. App. 1991). Therefore, the fact that conduct may be irritating or exasperating does not necessarily render it contemptuous, see Ex parte Pink, 746 S.W.2d 758, 762 (Tex. Crim. App. 1988). To sustain contempt proceedings, the order disobeyed must specifically command or order the individual to do or not to do some act or acts. The order must provide the person with specific and definite notice of the acts the person must or must not perform in order to avoid being held in contempt, Lee v. State, 799 S.W.2d 750, 752-753 (Tex. Crim. App. 1990). Furthermore, failure to appear in court due to conflicting court settings generally is not appropriate, see Ex parte Butler, 372 S.W.2d 686, 687 (Tex. Crim. App. 1963)—contempt improper for minor tardiness caused by conflicting settings in courts of equal jurisdiction; In re Monroe, 532 F.2d 424, 425-426 (5th Cir. [Tex.] 1976)—contempt not justified when counsel absent due to trial in another jurisdiction and withdrawal of local counsel.

14. Contempt charges should be personally served on the contemnor. Notice should be given in the form of a show cause order or equivalent legal process, Ex parte Vetterick, 744 S.W.2d 598, 599 (Tex. 1988). Respondent objects that the show cause order was not personally served on Respondent, nor were any changes in the dates of any show cause hearing personally served on Respondent; therefore, Respondent did not get notice of the allegations.

15. Furthermore, the Court did not indicate that a minor tardiness due to a conflict in counsel's schedule would result in a contempt finding. I waited to conduct Chenoweth's pleas for almost 4 hours.

16. I am currently scheduled for trial on 3/10/2014 in Bexar county for a trial that is expected to last the entire week. Furthermore, counsel already has court hearings scheduled in another district court on 3/13/2014. Therefore, counsel will not be in a position to appear at this show cause setting and thus a continuance is requested.

**WHEREFORE, PREMISES CONSIDERED,** Defendant prays that

a. a hearing be held, that an administrative judge be appointed to hear this case if there is a finding of contempt

b. that if there is a finding of contempt that I, Christopher Graham be afforded a personal recognizance bond

c. and that Respondent be afforded a court appointed attorney in this matter.

d. that Respondent's request for continuance be granted in this matter.

Response to Show Cause Motion 2

e. Respondent prays that there be no finding of contempt.

Respectfully submitted,

Lauren Graham & Associates PLLC

By:

CHRISTOPHER L. GRAHAM
700 N. St. Mary's Street #1400
San Antonio, Texas
Texas Bar No. 24047549
Lauren Graham & Associates PLLC

## UNSWORN DECLARATION

"My name is CHRISTOPHER L. GRAHAM; and my address 700 N. St. Mary's Street #1400, San Antonio, Texas. I declare under penalty of perjury that the foregoing information contained in RESPONSE TO COURT'S ORDER TO SHOW CAUSE AND REQUEST FOR CONTINUANCE is true and correct. Executed in Comal County, State of Texas, on the 27th day of February, 2014

_____
Declarant

*101*

101 E. Court St. Rm. 20.
Seguin, Tx. 78155
(830) 303-4188 Ext. 273
Fax (830) 379-0633



Counties Of
Guadalupe
Comal
Hays

## GARY L. STEEL

### 274th JUDICIAL DISTRICT COURT
### STATE OF TEXAS

March 17th, 2014

Honorable Billy Ray Stubblefield
3rd Administrative Judicial Region
405 S. MLK Blvd., Box 9
Georgetown, Texas 78626

Judge Stubblefield,

Please find enclosed the Show Cause Order entitled In Re: Christopher Graham. Mr. Graham will be notified by Certified Mail, Return Receipt Requested, First Class Mail and via Telecopier.

I am requesting a Visiting Judge be assigned to hear this Show Cause Order. I have set the case for April 8th, 2014 at 8:30am.

If there are any questions please feel free to call my Administrator Steve Thomas at 830-221-1270.

Respectfully,

Honorable Gary Steel
274th District Court Judge

CC: Attorney Christopher Graham

**Stationery purchased by Gary L. Steel at no public expense.**

*102*

Cause No. CR2013-366

| | | |
|---|---|---|
| IN RE: | § | IN THE DISTRICT COURT |
| | § | |
| CHRISTOPHER GRAHAM | § | OF |
| | § | |
| | § | COMAL COUNTY, TEXAS |

## SHOW CAUSE ORDER

On the 25th day of February, 2014, the State of Texas vs. Chelsie Michelle Chenoweth was called for Arraignment at which time CHRISTOPHER GRAHAM, the Attorney of record, was required to appear.

On the 13th day of March, 2014, the State of Texas vs. Chelsie Michelle Chenoweth was called for Pre-Trial hearing as well as Attorney Christopher Graham's Show Cause hearing in which he was required to appear.

CHRISTOPHER GRAHAM is now Ordered to show cause to this Court the proceeding transgressions:

1. Failure to arrive on time to the 9:00am docket call on February 25th, 2014;

2. Failure to return to Court at 1:15pm on February 25th, 2014 as instructed by the Court;

3. Failure to appear in Court on March 13th, 2014 for Cause Number CR2013-366, State of Texas vs. Chelsie Michelle Chenoweth, as well as Mr. Graham's own Show Cause notice on the same date without a granted continuance or leave from the Court;

4. False statements in his "Response to Court's Order To Show Cause And Request For Continuance", specifically assertions numbered 5 and 9, among others; and

103

CHRISTOPHER GRAHAM is given the opportunity to appear before this Court on *April 8th, 2014* at *8:30 A.M.* to show cause why he should not be held in contempt of court and not be punished in accordance with the law.

SIGNED this the _17_ day of _March_, 20_14_.

_____
JUDGE PRESIDING

*104*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Show Cause Order has been sent by Certified Mail, Return Receipt Requested, First Class Mail and via Telecopier # 210-787-3430 to Attorney, Christopher Graham at 700 N. St. Mary's St. Ste. 1400 San Antonio, Texas 78205 and hand delivered to Ms. Jennifer Tharp, Comal County District Attorney, 150 N. Seguin, New Braunfels Texas 78130 on this the __17__ day of _March_, 20_14_.

_____
JUDGE PRESIDING

ORIGINAL

**PRECEPT TO SERVE**

CAUSE NO.CR2013-366

THE STATE OF TEXAS

VS.

CHELSIE MICHELLE CHENOWETH

TO THE SHERIFF OF COMAL COUNTY, SAID STATE, GREETING:

**YOU ARE HEREBY COMMANDED** to forthwith deliver to

CHRISTOPHER GRAHAM

WITH ACCOMPNAYING COPY OF SHOW CAUSE ORDER IN THE ABOVE ENTITTLED CAUSE, A HEARING IS SET FOR APRIL 8, 2014 AT 8:30 A.M. IN THE 207TH DISTRICT COURT.

**HEREIN FAIL NOT**, and due return make hereof, without delay.

**WITNESS** my signature and seal of office, on this the 27th day of March, 2014
KATHY H. FAULKNER
DISTRICT CLERK OF COMAL COUNTY, TX
150 N. SEGUIN, SUITE 304, NEW BRAUNFELS, TX

By _____, Deputy
Lynda Lipke

*******************************************************************************

**SHERIFF'S RETURN**

Come to hand on the 31st day of March A.D., 2014 at 8:30 o'clock A.M. and

Executed on 31 day of March A.D., 2014 by delivering to the within named

Christopher Graham at 9:14 am

Returned on the 31 day of March A.D., 2014.

Bob Holder SHERIFF

Comal COUNTY, TEXAS

BY: _____ DEPUTY

*106*

Cause No. CR2013-366

IN RE:                        §        IN THE DISTRICT COURT

                              §

CHRISTOPHER GRAHAM            §        OF

                              §

                              §        COMAL COUNTY, TEXAS

FILED FOR RECORD
2014 APR -8 AM 10: 46
KATHY H. FAULKNER
DISTRICT CLERK, COMAL COUNTY

CONTEMPT ORDER

On April 8, 2014 came on to be considered the show cause order In Re Christopher Graham. Upon hearing said order this court finds Christopher Graham in contempt for the following transgressions:

1. Failure to arrive on time to the 9:00 a.m. docket on February 25, 2014;
2. Failure to return to court at 1:15 p.m. on February 25, 2014 as instructed by the court; and
3. Failure to appear in Court on March 13, 2014 for Cause Number CR2013-366, State of Texas vs. Chelsie Chenowith, as well as Mr. Graham's own Show Cause notice on the same date without a granted continuance or leave from the court.

After finding Christopher Graham in contempt of court, this court further orders that his punishment be assessed at 15 days in the Comal County Jail and a fine of $300.00.

_____
Judge Presiding

# BAIL BOND

Court: _Dist Court_
Appearance Date: _Instanter_
Time: _To Be Set_
Cause No: _____

Type of Bond: _Appeal Bond_
SPN: _624723_
Receipt No. _____

**KNOW ALL MEN BY THESE PRESENTS:**

FILED FOR RECORD

FEB 25 2015

HEATHER N. KELLAR
CLERK DISTRICT COURT
COMAL COUNTY TEXAS

That we, _Christopher Lauren Graham_, as principal, and the undersigned _Secured by Cash ($5000) PD By Reza Z And_ are held and firmly bound unto the STATE OF TEXAS, in the penal sum of _Five Thousand 0/100_ ($_5000_) Dollars and, in addition thereto, we are bound for the payment of all fees and expenses that may be incurred by any peace officer in re-arresting the said principal in the event any of the hereinafter stated conditions of this bond are violated for the payment of which sum or sums will and truly to be made, we do bind ourselves, and each of us, our heirs, executors and administrators jointly and severally.

The condition of this bond is that the Defendant has been charged with _Contempt of Court_ a **Felony – Misdemeanor** offense and to secure his release from custody is entering into this obligation binding him to appear before _District_ Court, as shown above, of _Comal_ County, City of _New Braunfels_ Texas.

Now therefore, if the said Principal shall well and truly make his personal appearance before said Court Instanter as well as before any other court to which the same may be transferred and for any and all subsequent proceedings that may be had relative to said charge in the court of criminal actions based on said charge, and there remain from day to day and term to term of said courts, until discharge by due course of law, then and there to answer said accusation against him, this obligation shall become void, otherwise to remain in full force and effect.

Taken and Approved this day of _8 Apr_, 20 _14_

_Bob Holder_ , Sheriff

By _Sgt 3336_ , Deputy

_____ , Surety

_____
ADDRESS

_____ , Surety

_____
ADDRESS

OATH OF SURETIES
STATE OF TEXAS
COUNTY OF _____

Signed and Dated _8 Apr_, 20 _14_

_Comal_ , County, Texas

Principal

CITY AND STATE

Race _B_ Sex _M_ HT _601_ WT _170_
DOB _____ Hair _BLK_ Eyes _BRO_
DL# _____ State _TX_
NOK: _____

We, each of us, _Secured by Cash ($5000)_ MAILING ADDRESS _(214) 675-4[?]4_
Do swear that we are worth in our own right, at least the sum of _($5000) PD. By Reza Zand_ After deduction from our property all that which is exempt by the Constitution Laws of the STATE OF TEXAS from forced sale, Dollars, and after satisfying all encumbrances upon our property which are known to us; and that we reside in the County of _Comal_ and have property in the STATE OF TEXAS Liable to execution worth:

The Said _____
The Said _____

_____
SIGNATURE

Sum of _____
Sum of _____ Dollars
Surety _____ Dollars

_____
SIGNATURE
Surety

Subscribed and Swore to before me this _8_
day of _April_ A.D. 20 _14_

_____
NOTARY PUBLIC STATE OF TEXAS

_April 12 2015_
EXPIRATION DATE OF NOTARY

*108*

# OFFICIAL RECEIPT
## Comal County Sheriff's Office
3005 W San Antonio St.
New Braunfels, TX 78130
Phone: 830-620-3400
Fax: 830 - 608-2082

Payor
REZA ZAND

Receipt No.
**2014-00784**

Transaction Date
04/08/2014

On Behalf Of  GRAHAM, CHRISTOPHER LAUREN (SO# 627723)

## Amount Received

| Description | Amount Paid |
|---|---|
| Bond Account | 5,000.00 |
| **SUBTOTAL** | **5,000.00** |
| Total Account Balance: $5,000.00 | |

| PAYMENT TOTAL | 5,000.00 |
|---|---|

| Cashier's Check (Ref #9863616736) Tendered | 5,000.00 |
|---|---|
| Total Tendered | 5,000.00 |
| Change | 0.00 |

| 04/08/2014 06:54 PM | Cashier Station BOND2 | Audit 4124446 |
|---|---|---|

# OFFICIAL RECEIPT

**FILED FOR RECORD**
At __1:12__ o'clock __P__M

FEB 2 5 2015

HEATHER N. KELLAR
CLERK DISTRICT COURT
COMAL COUNTY, TEXAS
BY___CEO___ DEPUTY

## CASH BOND
Please Forward Copy of Receipt

# 109
## Contempt of Court

CAUSE NO. CR2013-~~519~~ 366

FILED FOR RECORD
~~1:12~~ o'clock P M
FEB 8 2010
KATHY H. FAULKNER
CLERK DISTRICT COURT
COMAL COUNTY, TEXAS
BY_____ DEPUTY

THE STATE OF TEXAS      X      IN THE DISTRICT COURT
VS. Christopher Graham      X      207th JUDICIAL DISTRICT
     X      COMAL COUNTY, TEXAS

TO THE SHERIFF OF COMAL COUNTY, TEXAS; GREETINGS:

By the order of the Court, on the **8th** day of **April** A.D., 20 **14**, the following action is directed in the above styled and numbered cause:

_____ Defendant Sentenced to serve _____ years in the Texas Department of Corrections / State Jail. Defendant remanded to the Sheriff.

_____ Defendant Sentenced to serve _____ years Probation and _____ Fine. This is your authority to release Defendant on above Cause Number.

_____ Defendant Sentenced to serve _____ Days / Years in the County Jail and $_____ Fine. Defendant remanded to the Sheriff.

✓ Bond ~~Set~~/~~Raised~~/~~Reduced~~. Defendant required to make a Bond in the amount of $ **5,000** in above cause. Defendant remanded to the Sheriff.

_____ Upon hearing, Writ of Habeas Corpus in Cause No. _____, Bail was set in the amount of $_____ in Cause No. _____ Defendant remanded to the Sheriff.

_____ Defendant continued on Probation. This is your authority to release Defendant on above cause number.

_____ Defendant gave Notice of Appeal. Bond is set in the amount of $_____. Defendant remanded to the Sheriff.

_____ JAIL TIME SHOULD BE SERVED DAY FOR DAY WITH NO GOOD TIME TO BE AWARDED.

Above person held in contempt. Per Judge Shaver above person to serve 15 days jail, or post an appeal bond in the amount of $5,000 set.

Witness my hand and Seal of Office, at New Braunfels, Texas, this the **8th** day of **April** A.D., 20 **14**.

KATHY H. FAULKNER, District Clerk,
Comal County, Texas
By *Cecilia Delgado* _____ Deputy

---

## SHERIFF'S RETURN

**IN COURT:**
The above Defendant having been placed in (released from) custody, and ordered remanded to (released from) the Comal County Jail. Said custody (release) is hereby acknowledged on this the **8th** day of **April** A.D., 20 **14** by the Sheriff of Comal County, Texas.

BOB HOLDER - Sheriff
Comal County, Texas      420
By _____ Deputy

**IN JAIL:**
Received this Writ on the **8** day of **April**, 20 **14** at **1100 Am** o'clock **A** M., and I execute the same on the **8th** day of **April**, 20 **14**, by placing in the Comal County Jail the within named Defendant **Christopher Graham**.

BOB HOLDER - Sheriff
Comal County, Texas
By _____ Deputy

*Sheriff to execute return on Original and return to District Clerk.



**110**

COMAL COUNTY SHERIFFS OFFICE
CASH BOND TRUST FUND
3005 W. SAN ANTONIO ST.
NEW BRAUNFELS, TX 78130

1942

30-9/1140
39

FROST
www.frostbank.com

2/24/2015

PAY TO THE
ORDER OF    Comal County District Clerk

$ **5,000.00

Five Thousand and 00/100************************************************************

DOLLARS

District Clerk

MEMO    Rec 2014-00784 SPN 627723 Graham, Christopher

NOT VALID AFTER 90 DAYS

AUTHORIZED SIGNATURE

⑈001942⑈ ⑆114000093⑆ 3900 270491⑈

---

COMAL COUNTY SHERIFFS OFFICE    1942

Comal County District Clerk

2/24/2015    5,000.00

Rec 2014-00784 SPN 627723 Graham, Christopher
Contempt of Court

111



2.24.2015

**VIA FACSIMILE: 830-608-2006**
**espinb@co.comal.tx.us**
Comal District Court Clerk
150 N. Seguin, Suite #304
New Braunfels, Texas 78130

RE:  *State v. Chenoweth, State v. Browne,* Cause Nos. CR2013-366, In the 207th District Court, Comal, Texas; Request for Clerk's Record; SUPPLEMENTAL CLERKS RECORD REQUEST

Dear Clerk of Court:

This letter constitutes a request for Designation of Matters in Clerk's Record in this cause. When the Clerk's Record has been prepared, please forward it to the 3rd Court of Appeals in Austin.

Items comprising the clerk's record should include all items designated under Texas Rules of Appellate Procedure 34.5(a) and the following items:

> 1) **certified copy** of any commitment order saying that Christopher Lauren Graham was taken into custody by the sheriff on or around 4/8/2014
> 2) **certified copy** of order setting the bail at $5,000
> 3) **certified copy** of document specifying that $5,000 cash bond was paid for my release
> 4) a **certified copy** of the online docket sheet for the case that outlines all of the transactions taking place on the case
> 5) **certified copy** document entitled Response to Show Cause Order and Request for Continuance filed on or around 3/5/2014

Should you have any questions please contact me as soon as possible, my cell phone number is 469-605-6846 or via email clgraham@lgi-law.com

Thank you for your cooperation.

Regards,

*112*

Christopher L. Graham, Esq.
LGI PLLC
Lauren Graham & Associates PLLC
State Bar Number: 24047549

*113*

State of Texas vs. CHELSIE MICHELLE CHENOWETH

§
§
§
§

Location: **207th District Court**
Judicial Officer: **Robison, Jack**
Filed on: **08/14/2013**

---

## CASE INFORMATION

**Offense**

| | Deg | Date | |
|---|---|---|---|
| 1. BURGLARY OF HABITATION | F2 | 04/26/2013 | Case Type: **Adult Felony** |
| ACN: 13-01114 | | | Case Flags: **Appeal** |
| Arrest: 04/26/2013 | | | |
| 2. TAMPER FABRICATE PHYSICAL EVID W/INTENT TO IMPAIR | F3 | 04/26/2013 | |
| TRN: 9212987540 TRS: D001 | | | |
| 3. THEFT PROP>=$1,500<$20K | FS | 04/26/2013 | |
| TRN: 9212987540 TRS: D002 | | | |

**Statistical Closures**
05/19/2014 PLEAD GUILTY-SENT. PROB

**Warrants**
Alias Capias - CHENOWETH, CHELSIE MICHELLE (Judicial Officer: Robison, Jack )
10/07/2014 11:04 AM Served
10/07/2014 10:41 AM Arrest
10/03/2014 12:29 PM Sheriff's Office
10/02/2014 9:45 AM New Warrant
Hold Without Bond (Deployment Conversion)

INDT - CHENOWETH, CHELSIE MICHELLE (Judicial Officer: Robison, Jack )
08/20/2013 9:36 AM Served
08/19/2013 4:00 PM Arrest
08/19/2013 3:31 PM Sheriff's Office
08/16/2013 11:24 AM New Warrant
Fine: $0
Bond:

---

**DATE** | **CASE ASSIGNMENT**

**Current Case Assignment**

| | |
|---|---|
| Case Number | CR2013-366 |
| Court | 207th District Court |
| Date Assigned | 08/14/2013 |
| Judicial Officer | Robison, Jack |

---

## PARTY INFORMATION

| | | Lead Attorneys |
|---|---|---|
| **State** | **State of Texas** | |
| | | **HEARRELL, CLAY** |
| **Defendant** | **CHENOWETH, CHELSIE MICHELLE** | **GRAHAM, CHRISTOPHER** *Retained* 210-787-3430(W) |

---

| DATE | EVENTS & ORDERS OF THE COURT | INDEX |
|---|---|---|
| 04/26/2013 | MAGISTRATE WARNING (Judicial Officer: Salyers, Ellen ) | |
| 05/03/2013 | BOND | |

*$50,000 - A COPA BAIL BONDS (CT.I ONLY)*

| | |
|---|---|
| 08/14/2013 | Indictment (OCA) |
| 08/16/2013 | CAPIAS ISSUED (Judicial Officer: Robison, Jack )<br>*CT.II & III - RETURNED - EXECUTED 8/19/13* |
| 08/16/2013 | PRECEPT TO SERVE ISSUED<br>*CT. II & III - RETURNED - EXECUTED 8/19/13* |
| 08/19/2013 | BOND<br>*$10,000 CT.II & $5,000 CT.III - A-COPA BAIL BONDS* |
| 08/23/2013 | NOTICE OF HEARING<br>*9/23/13* |
| 09/23/2013 | **Arraignment** (9:00 AM) (Judicial Officer: Waldrip, Dib) |
| 09/23/2013 | APPLICATION FOR COURT APPOINTED ATTORNEY<br>*ALLISON LANTY - REMOVED ( CO-DEFENDANT CURRENT CLIENT)* |
| 09/25/2013 | PAUPERS AFFIDAVIT (OCA)<br>*CHRISTOPHER GRAHAM* |
| 10/21/2013 | **Arraignment** (9:00 AM) (Judicial Officer: Waldrip, Dib) |
| 11/19/2013 | **Arraignment** (9:00 AM) (Judicial Officer: Waldrip, Dib) |
| 12/19/2013 | *CANCELED* **Pre-Trial Hearing** (9:00 AM) (Judicial Officer: Waldrip, Dib)<br>*Re-Set* |
| 02/25/2014 | **Arraignment** (9:00 AM) (Judicial Officer: Waldrip, Dib) |
| 02/25/2014 | NOTICE (Judicial Officer: Steel, Gary )<br>*OF SHOW CAUSE 3/13/14* |
| 02/25/2014 | WAIVER OF ARRAIGNMENT (Judicial Officer: Steel, Gary )<br>*GRANTED PER JUDGE STEEL* |
| 02/25/2014 | SHOW CAUSE ORDER<br>*FOR ATTORNEY - CHRISTOPHER GRAHAM* |
| 03/10/2014 | RESPONSE TO LETTER<br>*TO SHOW CAUSE ORDER* |
| 03/13/2014 | **Show Cause** (9:00 AM) (Judicial Officer: Waldrip, Dib) |
| 03/13/2014 | **Pre-Trial Hearing** (9:00 AM) (Judicial Officer: Waldrip, Dib) |
| 03/17/2014 | AMENDED ORDER<br>*TO REMOVE CHRISTOPHER GRAHAM AND APPOINT PAUL FINLEY* |
| 03/17/2014 | |

*Printed on 02/20/2015 at 4:47 1*

SHOW CAUSE ORDER
*TO CHRISTOPHER GRAHAM- SIGNED BY JUDGE STEEL SET FOR 4/8/14*

03/26/2014    LETTER
*FROM CHRISTOPHER GRAHAM - REQUESTING A RESET*

03/27/2014    SERVICE

03/27/2014    **Precept to Serve**
GRAHAM, CHRISTOPHER
Unserved

03/31/2014    PRECEPT TO SERVE ISSUED
*CHRISTOPHER GRAHAM - SHOW CAUSE ORDER*

04/07/2014    **Pre-Trial Hearing** (9:00 AM) (Judicial Officer: Waldrip, Dib)

04/07/2014    Plea Recommendation (Judicial Officer: Robison, Jack )
*SX-1*

04/07/2014    EXHIBIT (Judicial Officer: Robison, Jack )
*SX-2*

04/07/2014    COURT COST (Judicial Officer: Robison, Jack )
*$340.00*

04/07/2014    **Plea** (Judicial Officer: Robison, Jack)
1. BURGLARY OF HABITATION
     Guilty
       TRN:   TRS:

2. TAMPER FABRICATE PHYSICAL EVID W/INTENT TO IMPAIR
     Guilty
       TRN: 9212987540   TRS: D001

3. THEFT PROP>=$1,500<$20K
     Guilty
       TRN: 9212987540   TRS: D002

04/08/2014    **Show Cause** (8:30 AM) (Judicial Officer: Waldrip, Dib)

04/08/2014    CONTEMPT ORDER (Judicial Officer: Sitting, Judge )
*GRANTED*

04/21/2014    NOTICE OF APPEAL

04/21/2014    MOTION FOR NEW TRIAL
*DENIED*

05/05/2014    MOTION TO PAY COURT APPOINTED ATTORNEY (Judicial Officer: Robison, Jack )
*CHRISTOPHER GRAHM (NO ITEMIZED STATEMENT)*

05/05/2014    REQUEST FOR TRANSCRIPT
*FROM HEARING HELD 3/13/14 AND 4/8/14 - FROM CHRISTOPHER GRAHAM*

| | |
|---|---|
| 05/05/2014 | 🗎 REQUEST FOR CLERK'S RECORD |
| 05/06/2014 | 🗎 LETTER |
| | *FROM THIRD COURT OF APPEALS - RE: WRIT OF HABEAS CORPUS* |
| 05/19/2014 | **Punishment Hearing** (9:00 AM) (Judicial Officer: Waldrip, Dib) |
| 05/19/2014 | 🗎 CERTIFICATE FOR RIGHT TO APPEAL (Judicial Officer: Robison, Jack ) |

05/19/2014 | **Disposition** (Judicial Officer: Robison, Jack)
1. BURGLARY OF HABITATION
  Plead Guilty - Probation
   TRN:  TRS:

2. TAMPER FABRICATE PHYSICAL EVID W/INTENT TO IMPAIR
  Plead Guilty - Probation
   TRN: 9212987540  TRS: D001

3. THEFT PROP>=$1,500<$20K
  Plead Guilty - Probation
   TRN: 9212987540  TRS: D002

05/19/2014 | **Sentence** (Judicial Officer: Robison, Jack)
1. BURGLARY OF HABITATION
  Sentenced - Probation/Community Supervision
  CSCD 8 Years , 0 Months , 0 Days with Community Service of 250 Hours
   DAY TREATMENT FROM FREE WORLD
  Comment ($2000 FINE, PROBATED FOR 8 YRS. ON CT.I & CT.II)
2. TAMPER FABRICATE PHYSICAL EVID W/INTENT TO IMPAIR
  Sentenced - Probation/Community Supervision
  CSCD 8 Years , 0 Months , 0 Days with Community Service of 250 Hours
   DAY TREATMENT FROM FREE WORLD
  Comment ($2000 FINE, PROBATED FOR 8 YRS. ON CT.I & CT.II)

05/19/2014 | **Sentence** (Judicial Officer: Robison, Jack)
3. THEFT PROP>=$1,500<$20K
  Sentenced - Probation/Community Supervision
  Confinement to Commence 05/19/2014
   5 Years , 0 Months , 0 Days , Comal County Supervision, Comal County Community Supervison
  Concurrent with Prior Sentence
  Comment (CONCURRENT WITH CT. I & CT II)

| | |
|---|---|
| 05/19/2014 | 🗎 JUDGMENT (Judicial Officer: Robison, Jack )<br>*CT.I, CT.II, & CT.III* |
| 05/23/2014 | 🗎 CONDITIONS OF PROBATION (Judicial Officer: Robertson, Sam )<br>*$70 per mos. / BEGINNING 6/10/14* |
| 06/18/2014 | 🗎 MOTION TO PAY COURT APPOINTED ATTORNEY (Judicial Officer: Robison, Jack )<br>*CHRISTOPHER GRAHAM* |
| 06/18/2014 | 🗎 ADDITIONAL CONDITIONS OF PROB (Judicial Officer: Boyer, R. Bruce ) |
| 07/07/2014 | 🗎 ORDER TO PAY COURT APPOINTED ATTORNEY (Judicial Officer: Robison, Jack ) |

*Printed on 02/20/2015 at 4:47 P.*

*$500-CHRISTOPHER GRAHAM*

| | |
|---|---|
| 08/07/2014 | **LETTER**<br>*FROM JUDGE STUBBLEFIELD TO JUDGE ROBISON* |
| 08/07/2014 | **RULES FOR THE APPEAL OF A**<br>*TRIAL COURT'S APPROVAL OF OR FAILURE TO ACT ON A REQUEST FOR PAYMENT*<br>*OF COURT APPOINTED ATTORNEY ATTORNEY'S FEES* |
| 08/14/2014 | **LETTER**<br>*TO 3RD COURT OF APPEALS* |
| 09/02/2014 | **STATE'S CONTEST OF APPELLANT'S AFFIDAVIT OF INDIGENCE** |
| 09/02/2014 | **MEMORANDUM**<br>*FROM THE THIRD COURT* |
| 09/10/2014 | **NOTICE**<br>*OF MOTIONS ON APPEAL* |
| 09/10/2014 | **LETTER**<br>*FROM 3RD COURT OF APPEALS* |
| 09/10/2014 | **ORDER**<br>*EXTENDING TIME TO CONDUCT HEARING* |
| 09/17/2014 | **MEMORANDUM** (Judicial Officer: Robison, Jack )<br>*FROM CSCD* |
| 09/22/2014 | **CONDITIONS NUNC PRO TUNC** (Judicial Officer: Robison, Jack )<br>*CT I* |
| 09/22/2014 | **CONDITIONS NUNC PRO TUNC** (Judicial Officer: Robison, Jack )<br>*CT II* |
| 09/22/2014 | **CONDITIONS NUNC PRO TUNC** (Judicial Officer: Robison, Jack )<br>*CT III* |
| 09/23/2014 | **Motions On Appeal** (9:01 AM)  (Judicial Officer: Waldrip, Dib) |
| 09/23/2014 | **REQUEST**<br>*FOR FINDINGS* |
| 09/23/2014 | **ORDER SUSTAINING CONTEST**<br>*OF AFFIDAVIT OF INDIGENCE* |
| 09/23/2014 | **CONTEST OF AFFIDAVIT OF**<br>*INABILITY TO PAY COSTS* |
| 09/30/2014 | **LETTER**<br>*LETTER FROM 3RD COA, SUPPLEMENTS CLERKS RECORD* |

*118*

| | |
|---|---|
| 09/30/2014 | MEMORANDUM (Judicial Officer: Robison, Jack ) <br> *FROM CSCD / ORDER FOR CAPIAS TO BE ISSUED AND DEFENDANT TO REMAIN IN JAIL TO ATTEND DAY TREATMENT* |
| 10/02/2014 | ALIAS CAPIAS (Judicial Officer: Robison, Jack ) <br> *PER JUDGE ROBISON DEFENDANT TO REMAIN IN JAIL TILL TREATMENT* |
| 10/02/2014 | FINDINGS OF FACT & CONCLUSIONS OF LAW |
| 11/05/2014 | LETTER <br> *FROM CHRISTOPHER GRAHAM RE: STATUS RPT CONCERNING PYMT FOR CLERKS RECORD AND COURT REPORTERS RECORD* |
| 12/09/2014 | WRIT <br> *TO S.O.* |
| 12/09/2014 | MEMORANDUM <br> *FROM CSCD* |
| 12/11/2014 | LETTER <br> *TO 3RD COURT OF APPEALS* |
| 12/22/2014 | ADDITIONAL CONDITIONS OF PROB (Judicial Officer: Robison, Jack ) <br> *CT. I, II, AND III* |
| 12/22/2014 | MEMORANDUM <br> *FROM CSCD* |
| 01/28/2015 | MEMORANDUM <br> *FROM CSCD* |
| 01/29/2015 | WRIT <br> *TO S.O.* |

| DATE | FINANCIAL INFORMATION |
|---|---|

**Defendant** CHENOWETH, CHELSIE MICHELLE

| | |
|---|---|
| Total Charges | 3,073.00 |
| Total Payments and Credits | 272.00 |
| **Balance Due as of 2/20/2015** | **2,801.00** |

*119*

# BILL OF COST

THE STATE OF TEXAS

COUNTY OF COMAL

The Total cost assessed in this case for the Clerk's Record is $16.00

**Record was paid in full on 02/24/2015**

Comal County Cause No. CR2013-366
207th Judicial District Court

In Re Christopher L. Graham, Plaintiff (s)

## DISTRICT COURT OF COMAL COUNTY, TEXAS

**I, Heather N. Kellar, District Clerk** in and for Comal County, Texas do hereby certify that the foregoing is a correct account of the cost for the Clerk's Record in the above entitled and numbered cause, as of this date 1ST of **March, 2015.**

STATE OF TEXAS
COUNTY OF COMAL
I certify this to be a true and correct
copy of the record FILED & RECORDED
in the Official Court records of District
Court on this date and time stamped
thereon.
Heather N. Kellar
Comal County District Clerk
By:

Heather N. Kellar, District Clerk
Comal County, Texas

CERTIFIED TO BE A TRUE AND
CORRECT COPY.
HEATHER N. KELLAR
COMAL COUNTY
DISTRICT CLERK
PAGE_____ OF_____

*120*

**The State of Texas ( )**

**County of Comal   ( )**

I, **Heather N. Kellar**, Clerk of the District Court of Comal County, Texas do hereby

Certify that the documents contained in this record to which this certification is attached

Are all of the documents specified by Texas Rule of Appellate Procedure 34.5 (a) and all

Other documents timely requested by a party to the proceeding under Texas Rule of

Procedure 34.5 (b).

**GIVEN UNDER BY HAND AND SEAL** at my office in Comal County, Texas this

1st   Day of **MARCH, 2015.**

**HEATHER N. KELLAR, DISTRICT CLERK**
**District Court, Comal County, Texas**

By: _____

*121*

REPORTER'S RECORD
VOLUME 1 OF 3 VOLUMES
TRIAL COURT CAUSE NO. CR2013-366

IN RE:                          ) IN THE DISTRICT COURT
                                )
                                ) 274TH JUDICIAL DISTRICT
                                )
CRISTOPHER GRAHAM               ) COMAL COUNTY, TEXAS


_____

MASTER INDEX

_____


On the 8th day of April, 2014, the following proceedings came on to be held in the above-titled and numbered cause before the Honorable Lloyd Douglas Shaver, Judge Presiding, held in New Braunfels, Comal County, Texas.

Proceedings reported by computerized stenotype machine.


RICHARD E. ROBERTS, JR., CSR
(830) 228-4634

Master Index
April 8, 2014

APPEARANCES

MR. DANIEL A. PALMITIER
SBOT NO. 24062934
Comal County DA's Office
150 N. Seguin Street
Suite 307
New Braunfels, Texas   78130
Telephone:  (830)221-1300
Attorney for State

MR. CHRISTOPHER L. GRAHAM
SBOT NO. 24047549
Lauren Graham & Associates
700 N. St. Mary's Street
Suite 1400
San Antonio, Texas   78205
Telephone:  (469)605-6846
Attorney for Respondent

VOLUME 1

MASTER INDEX

April 8, 2014

VOLUME 2

SHOW CAUSE HEARING

April 8, 2014

                                              PAGE VOL.

WITNESSES APPEARING ON BEHALF OF THE STATE:

RICK ROBERTS

Direct Examination by Mr. Palmitier.................10   2
Cross Examination by Mr. Graham....................24   2
Redirect Examination by Mr. Palmitier..............28   2
Recross Examination by Mr. Graham..................28   2


CHELSIE CHENOWETH

Direct Examination by Mr. Palmitier.................29   2
Cross Examination by Mr. Graham....................32   2


NICK REININGER

Direct Examination by Mr. Palmitier.................36   2

CYNTHIA BROWNE

Direct Examination by Mr. Palmitier.................39   2
Cross Examination by Mr. Graham....................42   2


WITNESS ON BEHALF OF RESPONDENT:

CHRISTOPHER GRAHAM

Direct Testimony of Mr. Graham.....................43   2
Cross Examination by Mr. Palmitier.................47   2

RICHARD E. ROBERTS, JR., CSR
(830) 228-4634

Master Index
April 8, 2014

VOLUME 3

EXHIBIT VOLUME

Master Index
April 8, 2014

ALPHABETICAL INDEX OF WITNESSES

|  | Direct | Cross | V. Dire |
|---|---|---|---|
| Brown, Cynthia | 39 v2 | 42 v2 |  |
| Chenoweth, Chelsie | 29 v2 | 32 v2 |  |
| Graham, Christopher | 43 v2 | 47 v2 |  |
| Reininger, Nick | 36 v2 |  |  |
| Roberts, Rick | 10 v2 | 24 v2 |  |
|  | 28 v2 | 28 v2 |  |

RICHARD E. ROBERTS, JR., CSR
(830) 228-4634

Master Index
April 8, 2014

EXHIBITS

| EXHIBIT NO. | DESCRIPTION | OFFERED | ADMITTED |
|---|---|---|---|
| State's 1 | Reporter's Records February 25/March 13, 2014 | 13 | 13 |

STATE OF TEXAS

COUNTY OF COMAL

I, RICHARD E. ROBERTS, JR., Official Court Reporter in and for the 274th District Court of Comal County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

WITNESS MY OFFICIAL HAND on this, the 26th day of January, 2015.


/s/ Richard E. Roberts, Jr.

_____

RICHARD E. ROBERTS, JR., CSR
Texas CSR 5411
Official Court Reporter
274th District Court
P.O. Box 311905
New Braunfels, Texas 78131-1905
Expiration: 12/31/16


RICHARD E. ROBERTS, JR., CSR
(830) 228-4634

CAUSE NOS. CR2013-519, CR2013-366
VOLUME 2 OF 3 VOLUMES

IN RE:                          )        IN THE DISTRICT COURT
                                )
                                )        274TH JUDICIAL DISTRICT
                                )
CHRISTOPHER GRAHAM              )        COMAL COUNTY, TEXAS

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

SHOW CAUSE HEARING
April 8, 2014

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

On the 8th day of April, 2014, the following hearing came on to be heard outside the presence of a jury in the above-styled and numbered cause before the Honorable Lloyd Douglas Shaver, Visiting Judge, held in New Braunfels, Comal County, Texas.

Proceedings reported by Computerized Stenotype Machine; Reporter's Record produced by Computer-Assisted Transcription.

APPEARANCES

FOR CHRISTOPHER L. GRAHAM:

CHRISTOPHER L. GRAHAM
LAUREN GRAHAM AND ASSOCIATES, PLLC
700 N. St. Mary's Street, Suite 1400
San Antonio, Texas  78205

FOR THE STATE:

DANIEL PALMITIER
Assistant District Attorney
150 N. Seguin, Suite 307
New Braunfels, Texas  78130
830.608.2008

*130*

INDEX

PAGE

WITNESSES APPEARING ON BEHALF OF THE STATE:

RICK ROBERTS

Direct Examination by Mr. Palmitier ....................10
Cross Examination by Mr. Graham ........................24
Redirect Examination by Mr. Palmitier .................28
Recross Examination by Mr. Graham ......................28

CHELSIE CHENOWETH

Direct Examination by Mr. Palmitier ....................29
Cross Examination by Mr. Graham ........................32

NICK REININGER

Direct Examination by Mr. Palmitier ....................36

CYNTHIA BROWNE

Direct Examination by Mr. Palmitier ....................39
Cross Examination by Mr. Graham ........................42

WITNESS OF BEHALF OF CHRISTOPHER GRAHAM:

CHRISTOPHER GRAHAM

Direct Testimony by Mr. Graham .........................43
Cross Examination by Mr. Palmitier .....................47

4

EXHIBITS

| EXHIBIT NO. | DESCRIPTION | MARKED | OFFERED | ADMITTED |
|---|---|---|---|---|
| State's 1 | Reporter's Record Feb. 25/March 13, 2014 | 13 | 13 | 13 |

THE COURT: All right. We have two Show Cause orders, No. CR2013-366, In Re Christopher Graham and CR2013-519, In Re Christopher Graham.

Both sides ready to appear?

MR. PALMITIER: Yes, Your Honor.

MR. GRAHAM: Your Honor, I made a request last time for a court-appointed attorney. I just want to make sure that the Court has denied that request for purposes of the record.

THE COURT: All right. Let the record reflect it has been denied.

Are you ready to proceed?

MR. PALMITIER: Yes, Your Honor.

The State calls its first witness, court reporter Rick Roberts.

(Witness placed under oath by the Court)

THE COURT: Have a seat.

Are there any other witnesses in the courtroom that are going to testify?

MR. PALMITIER: There will be one more showing up in the next --

THE COURT: Okay. Well, let me know because they are going to be under the Rule. They will have to wait outside.

MR. PALMITIER: Can I let my investigator know

what to look for real quick?

THE COURT: Sure.

MR. GRAHAM: I would also invoke the Rule at this time.

THE COURT: All right. It's been invoked.

MR. PALMITIER: Actually, there will be -- one is here, Your Honor, our bailiff, Nick.

(Bailiff placed under oath by the Court.)

THE COURT: The Rule has been invoked. That means you can no longer discuss your testimony among other witnesses. You can still talk to the lawyers for either side. If you do that, you have to do it where no one else can hear you and you'll have to remain outside.

THE BAILIFF: Yes, sir.

MR. PALMITIER: I don't know if the Court has had time to go over the files, if you would like a brief opening synopsis of what the testimony would be.

THE COURT: Yes.

MR. PALMITIER: Is that yes? You would like a brief synopsis?

THE COURT: Yes.

MR. PALMITIER: At this time, Your Honor, I would to ask the Court to take judicial notice of the two court files in Chelsie Chenoweth and additionally Cynthia Browne.

THE COURT: I have done so.

MR. PALMITIER: Thank you, Your Honor. A quick review of that is going to show, once looking at the record, that on February 25th Chelsie Chenoweth was to be called for a pretrial arraignment. And at about 9:00 o'clock the Court started calling the docket. At 9:24 they got to Ms. Chenoweth's announcement and Ms. Chenoweth, the defendant, was present. However, defense counsel was not present.

At about 9:38 defense counsel it looked like was here and that he'd be speaking with the DA's office.

The Court then recessed for an hour. And about 10:52 the defense counsel notified the Court he was ready to do a plea in the case. And the Court notified defense counsel that there were custody cases and a contested hearing that were in front of his non-custody plea. So eventually he was recessed to come back after lunch at 1:15. At 1:34 the Court, going through the docket, noticed Mister -- Ms. Chenoweth was present. Mr. Graham was still not present. And the Court shut down at about 1:46. And Mr. Graham showed up around 2:00 o'clock that day.

So Ms. Chenoweth's case would not to able to be taken up that day. It was going to have to be reset. And it was reset to March 13th. And, additionally, at that point the Court set a hearing for March 13 for a Show Cause as to why defense counsel was late in the morning and late -- and didn't show in the afternoon until after the Court had closed.

March 13th, again at 9:38 in the morning, Ms. Chenoweth's case was called. And Mr. Graham was not present. The Court was notified that Mr. Graham would be sending someone else in his place. That person did not show up. And Ms. Chenoweth, when questioned, had not spoken to Mr. Graham either. On that day the defense counsel or anybody from his office wholly failed to show.

That is what the evidence will show after testimony today, Your Honor.

THE COURT: All right. You may proceed.

MR. GRAHAM: Your Honor, am I permitted to give an opening or --

THE COURT: Sure. Go ahead.

MR. GRAHAM: Your Honor, the fact of the matter is this was a case that was -- I attempted to set on the 13th of February, 2014, and called the Court in order to set Ms. Chenoweth's case. It was supposed to be set on that day because I had other cases that were set on the same day. However, when I got here on the 13th of February, I was told by the Court that, no, Ms. Chenoweth's case was not on the Court docket. The fact of the matter is insofar as when her subsequent court case was set on the 25th of February I didn't hear her name called. You know, I wanted to verify with the Court, you know, basically that her case had been called. At that point I said, "Look, you know, has Ms. Chenoweth's case

been called?" And I guess some kind of notation was made in the Court docket that, you know, I was here and was ready to proceed.

Shortly thereafter the case was set up for plea and was ready to go. The plea paperwork in Ms. Chenoweth's case had been signed and was ready. And for whatever reason, the Court took a lengthy recess of an hour or longer. Ms. Chenoweth's case was not gotten to after several attempts. I had to notify the Court again twice that "Hey, look, we have got a plea that's ready to go here."

And so the Court then said that the case was going to be reset until 1:15 that day. So, in other words, we have got a situation here where I have got a plea that's ready to go and I'm waiting to get it done for hours and hours. And I'm a solo practitioner. I had another consultation in San Antonio, thought that I could get it done and come back. I was a few minutes late. The Court indicated to me that there were other contested matters that were going to be taken up prior to the plea anyway. And so I got here and, lo and behold, the other cases had been dismissed. My client was gone. And that's pretty much what happened. It wasn't a situation about any kind of intentional disrespect to the Court. It was just a matter of trying to get back from San Antonio here between that lunch period when the Court recalled the case at 1:15.

So, as a result of that, surely it's not a

situation where there is any obstruction of the Court's, you know, attempts at resolving cases. By all means, I was trying to get that done. It was just a scheduling issue with the jail down in San Antonio. As a result of that, I don't think that any kind of contempt should be issued or actually held in effect here today.

Thank you.

THE COURT: You may proceed.

RICK ROBERTS,

having been first duly sworn, testified as follows:

DIRECT EXAMINATION

BY MR. PALMITIER:

Q. Please state your name for the record.

A. Rick Roberts.

Q. And how are you employed, Mr. Roberts?

A. I am the official reporter for the 274th Judicial District Court.

Q. How long have you been in that position for?

A. January 1st of this year was 15 years.

Q. Who is the judge for that particular court?

A. District Judge Gary Steel.

Q. How long have you worked with him for?

A. Also that -- we started January 1, 1999. That is the day he took the bench.

Q. So working with him over 15 years, have you got to I

guess realize a pattern in how his docket is called?

A.   I do.

Q.   Okay.  To become a certified court reporter, what kind of qualifications, education do you need?

A.   First, you get your certification from some accredited school that basically is a proficiency that you receive that qualifies you to take a State test that's given quarterly.  At that point you have to pass three phases, 225 words a minute Q&A, 200 jury charge, and 180 literary.  If you pass those -- all three at 95 percent, you become certified by the State of Texas.

Q.   And did you do such?

A.   I did.

Q.   So what certifications do you hold?

A.   I hold that certification as an official court reporter for the State of Texas.

Q.   Now, on February 25th and March 13th, what were you doing?

A.   We were handling a nonjury docket here in Comal County.

Q.   And were you recording the record that was going on those two dates?

A.   I was.

Q.   How did you do such?

A.   I do it by court reporting machine and I also have

got a laptop.  And that's how I report all of our jury and nonjury cases.

Q.    Is part of your job preparing records for court cases?

A.    Yes, it is.

Q.    Did you prepare a record in this particular case?

A.    Yes, I did.

Q.    What were the dates you prepared the record for?

A.    If memory serves, February 25th, 2014, and March 13, 2014.

Q.    How many copies of the records did you prepare?

A.    I prepared an original and two copies.

Q.    Who did you give those copies to?

A.    The original and one copy to you, and then I mailed a copy to opposing counsel.

Q.    How did you mail the copy to opposing counsel?

A.    Certified return receipt.

Q.    And did you return -- did you receive a return receipt?

A.    Yes, sir.

Q.    Do you remember when it was delivered to him?

A.    I want to say on or about April the 2nd.  I also sent both counsel an electronic copy via e-mail.

Q.    So when you say "both counsel," is that Mr. Graham as well?

A.   Yes.

MR. PALMITIER:  May I approach the witness, Your Honor?

THE COURT:  Yes.

(State's Exhibit No. 1 marked)

Q.   (By Mr. Palmitier) I'm showing you what's been marked as State's Exhibit No. 1.  Do you recognize this?

A.   I do.

Q.   And who prepared it?

A.   I prepared this.

Q.   Okay.  Did you prepare it with a device that was capable of making an accurate reflection of the record on those two dates?

A.   Yes, I did.

Q.   Has it been changed or altered in any way?

A.   No, sir.

MR. PALMITIER:  If the record would just reflect I'm showing State's No. 1 to Mr. Graham for inspection.

MR. GRAHAM:  I'll object to relevance on the basis it contains the whole docket.  I don't think it's relevant so far as this Show Cause hearing goes.  In addition to that, it contains hearsay statements.

THE COURT:  That's overruled.  It's admitted.

MR. PALMITIER:  State offers Exhibit 1.

Q.   (By Mr. Palmitier) Look at State's 1.  Can you

please tell the Court what time Judge Steel started calling the docket on February 25th?

A. With permission, I'm going to unbind this so that I can take a look at the time stamps, with your permission. Okay. On page three of Volume 1, the setup time, that first time that's indicated, 8:22:22AM, is the time that I came in and set up my machine -- my laptop and my machine to prepare for the day. And then the next time that shows up, the 9:06 a.m., is the time when he began calling the docket.

Q. You said you have worked with Judge Steel for 15 years?

A. That's correct.

Q. And you are familiar with his practice of how he calls the docket?

A. I am.

Q. Could you please, for the record, describe how the docket is typically called?

A. Yes. The -- what he normally does is he will call the civil docket first. In cases -- or in dockets when we have both civil and criminal, he will call the civil docket first, take announcements. If there are announcements of ready, he will go ahead and hear those if they are short. Short announcements of ready he will go ahead and try and get those heard. That can take 10 or 15 minutes.

Once he's taken any short announcements of ready

or uncontested announcements, he will then call the criminal docket and take announcements for the criminal docket.

Q. Okay. Once he takes announcements for the criminal docket, does he have any sort of preference on how he takes up the cases?

A. His main preference is custody over non-custody cases. His priority is that he likes to resolve all custody cases, if possible, before the noon hour so they transport -- you only have to make one transport for the day and don't have to come back after lunch.

Q. Now, on this particular day, without getting into specifics, was there anything out of the ordinary on how the docket was called?

A. My memory, no. I think it went the traditional way.

Q. Okay. Refer you to your report or record. On page 21, please tell the Court, for the record today, what time Ms. Chenoweth's case was first called.

A. That would be 9:24 a.m.

Q. Looking to your record, was Ms. Chenoweth present?

A. The defendant answered present or answered, "Here."

Q. Okay. Did Mr. Graham announce present for Ms. Chenoweth?

A. It appears that he was not present. The defendant then responds to the Court whether her counsel was here. Her response was, "I haven't heard from him."

Q.   What did the Court do at that point?

A.   His response is, "Give him a call and prepare a show cause."

Q.   Now, you are aware that Mr. Graham did show up later that morning?

A.   He did show up later that morning, yes, sir.

Q.   I refer you to your record at page 34.  Can you please tell the Court today what time Mr. Graham announced for Ms. Chenoweth?

A.   Yes.  That would be 9:38 a.m.

Q.   If you can tell from the record, what was Mr. Graham and Ms. Chenoweth's case there set for that day?

A.   I believe it was set for arraignment.  Let me verify that.  Yes, that is correct.

Q.   What did the Court let Mr. Graham know at that moment when he announced?

A.   Usually on first settings for arraignment the Court advises counsel to either get a waiver of arraignment from their client or he will arraign them.  And that is what was stated here on page 35.  The Court says, "For arraignment.  I need you to say hello to the DA's office.  If there is nothing we can do today, then get me a waiver of arraignment or bring your client up and let me arraign her."

Q.   Okay.  What did Mr. Graham respond?

A.   "Sounds good.  Thank you very much, Your Honor."

Q. What did the Court then start taking up after -- after that discussion with Mr. Graham?

A. Let's see. It looks like he's continuing to look for people that didn't answer the docket call, and then looks like he took a sentencing.

Q. Now, once the Court has handled all of the matters that it has before it in the morning, what does the Court typically do?

A. The Court will then usually take a break once he's taken the announcements of ready on the first docket call. And sometimes we get announcements of ready during the morning and those usually are taken before any breaks are done. If there is nothing else to be heard or ready, the Court at that time will take a break.

Q. Looking at the record, can you tell what time the Court took a recess that morning?

A. Recess was taken at 9:48 a.m.

Q. And do you know what time the Court started back up?

A. Yes. It was 10:48 a.m.

Q. Once the Court started back up, what did the Court start doing?

A. The Court's usual procedure -- and did so in this case -- is to recall the docket on any of the cases that have not been resolved.

Q. Refer you to page 48 of your record.

When did he address Mr. Graham?

A.   It that would be at 10:52 a.m.

Q.   What was the discussion that took place at that time?

A.   Discussion had to do -- Mr. Graham was announcing that they had a plea ready in this case.

Q.   Okay.  And what did the Court let Mr. Graham know at that time?

A.   He had -- he had actually scratched that case off of his docket once he had spoken to Mr. Graham earlier.  And so now he was aware that there was a plea ready.

Q.   Could he take up the plea at that time?

A.   He did not take it up then.

Q.   Why was that?  What was in front of it?

A.   Either previous announcements of ready or, again, custody cases take priority.

Q.   Was there any other hearing set for that morning that took precedent?

A.   Yes.  There was one in the original announcement on the docket call.  There was an attorney out of Bexar County who had a trial starting at 1:30.  I believe he also had a custody case here, a contested Motion to Revoke.  And I think the announcement was approximately one hour.

Q.   And the contested hearing -- was that defendant in custody?

A.    Yes.  That is my recollection.

Q.    Did that take precedent over Mr. Graham's matter with Ms. Chenoweth?

A.    That's correct.

Q.    Now, I refer you to page 63 of your record.  Please tell the Court today what the Court did before it broke for lunch.

A.    At that point, once he recognized that it was 11:10 a.m. and that he had an announcement of one hour on a contested Motion to Revoke, he advised the three remaining cases to return at 1:15 while he resolved the Motion to Revoke and took a lunch break.

Q.    Once the Court reconvened at 1:15, was there anything else in front of Ms. Chenoweth's case?

A.    His custom is -- which is he recalled the docket. Of course, there were only three cases left.  He took those announcements and then began hearing the cases that were ready.

Q.    What time did the Court start back up after its lunch recess?

A.    The Court started up at 1:34 p.m.

Q.    And was Mr. Graham present at 1:34 p.m.?

A.    He was not present.

Q.    Was Ms. Chenoweth present?

A.    Yes, she was present.

Q.    Okay.  Did the Court call her case to be heard?

A. Yes, he did.

Q. And what happened next?

A. The defendant announced, "I'm here." And the bailiff then announced to the Court that Mr. Graham has not come back yet.

Q. Did you all wait for Mr. Graham?

A. No, sir, we began hearing the cases that were ready to be heard.

Q. Okay. What time did you all finish the cases that were being heard?

A. 1:46 p.m.

Q. And, before that, did the Court have a conversation with Ms. Chenoweth?

A. Actually, at 1:46, once the last case that was ready was heard and resolved, then he had the discussion with Ms. Chenoweth.

Q. And what was that discussion?

A. That discussion is: "Ms. Chenoweth, we're going to reset your case. I was clear. He was to be back here at 1:15. I will get your attorney's attention and I will do that before I leave the courthouse today. Thank you. You're excused."

Q. At 1:46 you all convened court?

A. We -- right, adjourned.

Q. Okay. At 1:46, did you see Mr. Graham in this courtroom?

A.    At 1:46 he was not present in the courtroom.

Q.    What did you start doing at 1:46?

A.    What I do when we finish for the day I start breaking down my equipment.  If there were any exhibits that were marked during any contested hearings or anything like that, I get with the clerk and make sure those are all turned over and then break down.

Q.    How long does it take you to break down?

A.    Approximately 10 minutes, give or take, 10 to 12.

Q.    Did Mr. Graham eventually show up?

A.    Yes, he did.

Q.    Can you estimate about what time that was?

A.    I'm going to say it was -- I was almost through breaking down.  I don't remember if I had any exhibits or if I dealt with the clerk on anything that day.  So approximately 10, 12 minutes after we adjourned.

Q.    And, by estimation, what time was that?

A.    That would make it 1:55 p.m.

Q.    Now, on March 13th, you were recording the record as well?

A.    That's correct.

Q.    Was Ms. -- what was Ms. Chenoweth's case set for on that day?

A.    I don't see it stated here, but my guess would be that it would be for arraignment.

Q.   Now, was her name called on the docket that morning?

A.   Yes, it was.

Q.   Looking at your record, can you see what time it was?

A.   Yes, 9:38 a.m.

Q.   And was Ms. Chenoweth present?

A.   She was.

Q.   Was Mr. Graham present for her?

A.   He was not present.

Q.   What is the discussion the Court had with Ms. Chenoweth?

A.   With Ms. Chenoweth?

Q.   Correct.

A.   The Court states, "Is your attorney retained or appointed?"

The defendant replies, "Appointed."

The Court:  "Mr. Graham is appointed?"

Defendant:  "Uh-huh."

And the Court says, "Stay put."

Q.   Does the Court ask her if she's had any sort of contact with Mr. Graham?  I refer you to page 6 of your report, record.

A.   The Court asks Ms. Chenoweth, "Ms. Chenoweth, who is coming over from his office?"

The defendant responds, "I don't know."

The Court: "You don't know?"

The defendant: "No, sir."

The Court: "When your attorney gets here, tell him I would like to talk to him."

Her response was, "I don't even know if he's coming. I haven't talked to him at all since the day I -- when I came back after lunch and he never showed up."

Q. Looking at the record for the rest of March 13, did Mr. Graham ever show up that day?

A. He did not.

Q. Did he ever -- did someone from his office ever show up that day?

A. No, sir.

Q. Did anybody announce for Ms. Chenoweth?

A. No, sir.

Q. Was Mr. Graham to be present on March 13th for any other reason?

A. I don't believe so.

Q. Do you know if he was to be there on a Show Cause hearing?

A. I'm sorry. Yes, he was.

Q. Did he announce for that?

A. No, sir.

MR. PALMITIER: Pass the witness, Your Honor.

THE COURT: Mr. Graham?

CROSS EXAMINATION

BY MR. GRAHAM:

Q.   You were talking about basically you were the court reporter on the 13th of March; is that correct?

A.   That is correct.

Q.   Okay.  And also indicated that basically I did not show up at that particular Show Cause hearing.  Isn't that right?

A.   That's correct, sir.

Q.   But it's also true that I filed a Motion for Continuance insofar as the Show Cause hearing goes because I had prior court appearances in other counties.  Are you aware of that?

A.   I believe there was mention of that, yes, sir.

Q.   In other words, it wasn't a situation where there was just a blatant disrespect for the Court date.  Isn't that correct?

A.   To my knowledge, no.

Q.   Okay.  In addition to that, at that particular time I had not been personally served or you don't know if I had been personally served with the Show Cause Order at that point prior to the 13th.  Isn't that right?

A.   That is correct.  I did not know.

Q.   Okay.  So, in other words, you couldn't say one way or another if it had taken place, the personal service, or not.

Isn't that correct?

A. That is correct.

Q. All right. Now, you were also talking about the court appearance insofar as the February 25th. Is that correct? You were also the court reporter on that particular day?

A. I was.

Q. Okay. And, typically, how long does it take for pleas to be completed, an agreed plea?

A. He gets through them pretty quick. I want to say five minutes, give or take.

Q. Five minutes. Okay. But, on this particular day, the plea for Ms. Chenoweth was not reached. Isn't that right? It wasn't handled on that particular day, was it?

A. It ultimately was not.

Q. Okay. Now, you were talking about earlier also that you were very familiar with the court procedures and how the docket is called. Is that correct?

A. That is correct.

Q. And so is it typical in a court procedure where, you know, there is an announcement issue on a case -- typically, does the Court issue Show Causes for all of those attorneys who don't announce ready for whatever reason a few minutes after the docket call in the morning?

A. His typical procedure is that if it's been a

recurring problem he will do it initially. A lot of times he will ask staff to prepare one. If --

MR. GRAHAM: I'm going to object to that, Your Honor.

THE COURT: I'll sustain.

Listen to -- just a second. I'll do it.

Listen to the question and answer just that question.

THE WITNESS: Yes, sir.

Q. (By Mr. Graham) So, in other words, when you say that it's not a regular practice to issue a Show Cause Order for attorneys that for whatever reason might announce ready, you know, a few minutes after the 9:00 o'clock docket call -- that's not a regular practice, is it?

A. Repeat your question, please.

Q. It's not a regular practice for an attorney who issues or says ready shortly after 9:00 o'clock docket call -- it's not a regular court practice to issue a Show Cause Order for all of those attorneys, is it?

A. Not to issue one, no, sir.

Q. Okay. And so, on that particular day, were there any other instances of individuals who may not have announced ready for whatever reason where their offices had to be called?

A. That's usually -- it usually does happen, yes.

Q. Okay. Were Show Cause Orders issued for those

individuals?

A. I would have to go back and look through the docket.

Q. Okay. You don't know?

A. I don't know.

Q. Now, you had also indicated there were a number of contested hearings that were actually set on that particular day; is that correct?

A. I believe there was one.

Q. Okay. And those contested hearings basically take precedent over pleas, right?

A. If they are custody cases, yes. He does normally try to take the shorter cases first and then the longer cases are put towards the back of the docket.

Q. Okay. But you just indicated a second ago that a plea just takes five minutes, so that would be one of those short cases. Isn't that correct?

A. That is correct.

Q. But, on this particular day on the 25th, my plea or the Chenoweth plea was not dealt with, even though it was a short case; isn't that correct?

A. That is correct.

Q. Now, there was also a contested hearing that was actually scheduled to take place after lunch as well; isn't that correct? After 1:15, right?

A. That is incorrect.

Q.   And so what remaining cases were there?  Were they all pleas?

A.   There were three cases and they were -- none had announced contested.

MR. GRAHAM:  I'll pass the witness.

THE COURT:  Anything else?

MR. PALMITIER:  Just briefly, Your Honor.

#### REDIRECT EXAMINATION

BY MR. PALMITIER:

Q.   You mentioned typically a Show Cause will not be issued for people who are late in the morning?

A.   Not -- not -- I believe the way he phrased the question was early in the day.

Q.   Is it typical in your experience over 15 years for an attorney not to show back up after being ordered to after a lunch break?

A.   No, it's not typical.

Q.   What about the next hearing not showing up?

A.   That was the first.

MR. PALMITIER:  Pass the witness.

THE COURT:  Anything else, Mr. Graham?

MR. GRAHAM:  Yes.

#### RECROSS EXAMINATION

BY MR. GRAHAM:

Q.   Insofar as the Court date on the 13th of March, do

you have any knowledge that suggests that, you know, I actually attempted to move that court date but was prohibited from doing so?

A.    I have no knowledge of that.

Q.    Okay.

MR. GRAHAM:  No further questions, Your Honor.

THE COURT:  Anything else?

MR. PALMITIER:  No further questions.

THE COURT:  Is he excused?

MR. GRAHAM:  Yes, Your Honor.

THE COURT:  You're excused.  Thanks for being here.  You'll put the exhibit back together?

THE WITNESS:  Yes, sir, I will.

THE COURT:  Next?

MR. PALMITIER:  The State calls Chelsie Chenoweth.

(The witness entered the courtroom and was placed under oath by the Court.)

THE WITNESS:  Yes, sir.

THE COURT:  Have a seat up here, please.  Scoot up close to the microphone so everybody can hear you.

Go ahead.

CHELSIE CHENOWETH,

having been first duly sworn, testified as follows:

DIRECT EXAMINATION

BY MR. PALMITIER:

Q. Could you please state your name for the record?

A. Chelsie Chenoweth.

Q. Ms. Chenoweth, how do you know Mr. Graham?

A. He's my Court-appointed attorney.

Q. Okay. On February 25th, were you supposed to be here in court?

A. Yes.

Q. What was that for?

A. Some charges that I had.

Q. Was Mr. Graham supposed to be here with you?

A. Yes.

Q. What time did you get here, if you remember, on February 25th?

A. Probably around 9:00 o'clock.

Q. Was Mr. Graham here with you?

A. Not yet.

Q. Had you heard from him that day?

A. No.

Q. Had you heard from him at all prior to that?

A. The only time I talked to him was one time when he became my lawyer and I had called him and he talked to me about my case. That was the only time we talked ever.

Q. Did he let you know he was going to be late that day?

A.   No.

Q.   Do you remember around what time he showed up?

A.   I really don't.  It was at least 30 minutes later.

Q.   Okay.  You were set for arraignment that day.  What did you want to do that day?

A.   I was ready to get it -- get sentenced.

Q.   Okay.  Were you able to do that?

A.   No.  I got a reset.

Q.   Do you remember what time you were told to be back in the afternoon that day?

A.   1:15.

Q.   What time were you back that day?

A.   1:15.

Q.   What time did Mr. Graham come back that day?

A.   I don't know.  The judge released me before he came back.

Q.   Did he call you to tell you he was going to be late?

A.   No.

Q.   That afternoon?

A.   No.

Q.   Did anybody from his office call you?

A.   No.

Q.   Do you know where he was?

A.   No.

Q.   What did you want to do that afternoon?

A. Wanted to get sentenced. Wanted to get everything over with.

Q. Were you able to do that that day?

A. No.

MR. PALMITIER: Pass the witness, Your Honor.

THE COURT: Cross-examine.

CROSS EXAMINATION

BY MR. GRAHAM:

Q. I represented you in your case before. Isn't that correct, Ms. Chenoweth?

A. Yeah.

Q. Isn't it true basically that the plea paperwork in the case was done during the morning time? Isn't that right?

A. Uh-huh.

Q. But, for whatever reason, the Court did not hear your case. Isn't that right?

A. Yeah, he sent us to lunch.

Q. And also isn't it correct that basically I had to remind the Court several times about, hey, look, you have got a case that's ready for plea prior to the lunch hour? Isn't that correct?

A. Yeah, you did.

Q. Because the Court basically continued on several instances to skip over your case. Isn't that right? They didn't call your case?

A. Oh, yeah. That day?

Q. Okay. That's correct.

A. Yeah, uh-huh.

Q. In the morning time. Okay.

A. Uh-huh.

Q. And so basically it was a situation where, you know, we had the plea paperwork done early in the morning, but yet you were forced to wait until the afternoon time. Isn't that correct?

A. Yes.

Q. And you had to come back to court. Isn't that correct?

A. Uh-huh.

Q. Okay. Did the Court, when they indicated that you had to come back at 1:15 -- did they make any kind -- did the Court make any kind of a statement that, well, if you don't come back at a certain time that there could be a contempt? Did the Court say that?

A. I don't think so.

Q. All he said was to be back at 1:15; isn't that right?

A. Uh-huh, yeah.

Q. And the Court also indicated there were other cases that it had in addition to yours after the lunch hour. Isn't that right?

A.    Yeah.

Q.    Did the Court make any kind of statements about any contested hearings or other hearings that were going to happen after the lunch hour?

A.    No.

Q.    But they indicated that there were other cases?

A.    Yeah.

Q.    Isn't that correct?  Okay.  So there was no indication about when actually your case was going to go after 1:15?

A.    Right.

Q.    Correct?

A.    Right.

Q.    You didn't have any specifics on that, right?

A.    Right.

Q.    And since the Court didn't provide me with any specifics, would you agree with me that I wouldn't know specifically when your case would have been taken up after the lunch hour?

A.    Yeah.

MR. PALMITIER:  Objection; speculation.

MR. GRAHAM:  I'll withdraw that, Your Honor.

THE COURT:  Okay.

Q.    (By Mr. Graham) And -- so isn't it true that you were actually appointed a new Court-appointed attorney for your

case?

A.    Yeah.

Q.    Is that right?

A.    Uh-huh.

Q.    And you also indicated you wanted to get this case resolved on the 25th in the morning time as expeditiously as possible, right?

A.    Yeah.

Q.    Okay.  Now, would you say that the appointment of a new attorney for your case -- would that have delayed the process or made it quicker?

A.    I think it made it quicker because yesterday I finished.

Q.    Okay.

A.    Just one time.

Q.    Right.  But this could have been something that could have been resolved before.  Isn't that right?

A.    Yeah.

Q.    Okay.

        MR. GRAHAM:  I'll pass the witness at this time, Your Honor.

        THE COURT:  Anything else?

        MR. PALMITIER:  No further questions, Your Honor.

        THE COURT:  Is she free to go?

MR. GRAHAM: Yes, Your Honor.

THE COURT: You're free to go. Thank you for having to come down.

Call your next.

MR. PALMITIER: State calls Nick Reininger.

(The witness entered the courtroom and was previously sworn by the Court.)

NICK REININGER,

having been first duly sworn, testified as follows:

DIRECT EXAMINATION

BY MR. PALMITIER:

Q. Can you please tell us -- tell the record how you are employed?

A. I'm employed by the Comal County District Court.

Q. And which court is that?

A. The 207th, 274th, the 433rd and the 22nd.

Q. How long have you been in that position?

A. Approximately three years.

Q. Do you remember what you were doing on February 25th? I'm sorry. March 13th.

A. Yes. I was working for Judge Gary Steel.

Q. March 13th and February 25th.

A. 274th District Court bailiff.

Q. And particularly on February 25th, did you remember what was going on that day?

A. It was a mixed docket, nonjury criminal and civil cases.

Q. Did you have any contact with Mr. Graham that day?

A. Yes, I did.

Q. And could you please explain on the record what the contact was?

A. Mr. Graham had a case, a criminal case on the docket. He came in in the morning docket, checked in with me. He was running a little bit late. He made contact with his defendant. I saw him throughout the day. We broke for lunch approximately around 12:00 o'clock. We came back at 1:15. There was a couple of cases left for the afternoon docket. We concluded the business of the docket that day for Judge Steel and Mr. Graham's case was the only case left.

Q. Did Mr. Graham show up for the afternoon?

A. Eventually he did. Not -- not at the time we came back.

Q. What time was everybody supposed to be back at?

A. Judge Steel told all the remaining cases on the docket personnel to be back at 1:15.

Q. Do you remember what time Mr. Graham showed up?

A. It was around 2:00 o'clock, maybe a few minutes before 2:00 o'clock. Judge Steel had just left the bench when Mr. Graham came in.

Q. Did you have a discussion with him at all at that

point?

A. I did because the judge had left the bench and Mr. Graham's client had already been released. Mr. Graham asked me where his client was. I said that the judge had excused her. I told Mr. Graham I would ask Judge Steel if he would like to talk to him in chambers. I went back in chambers. I asked Judge Steel if he would like to see Mr. Graham. He said that he would not like to see him, to inform Mr. Graham that he was going to issue a Show Cause.

So I came back out in the courtroom. I told Mr. Graham he did not wish to see him at this time, that a Show Cause Order was going to be issued.

Q. Did Mr. Graham have any explanation as to where he had been or why he was late?

A. No. He responded to me, "Is the judge really going to issue a Show Cause Order for me being 45 minutes late?"

I said I really had no say-so in the matter. That's just what he told me to relay to Mr. Graham.

MR. PALMITIER: Pass the witness, Your Honor.

THE COURT: Mr. Graham?

MR. GRAHAM: I have no questions, Your Honor.

THE COURT: All right. You can step down. Thank you. You can remain in the courtroom.

He's released from the Rule now, isn't he?

MR. GRAHAM: That's correct, Your Honor.

THE COURT: All right. Thank you.

MR. PALMITIER: And the only other witness I have, Your Honor, is a Cynthia Browne. It's in relation to the second Show Cause Order.

THE COURT: All right. Cynthia Browne.

(The witness entered the courtroom and was placed under oath by the Court.)

THE COURT: Come up here and have a seat, please.

CYNTHIA BROWNE,
having been first duly sworn, testified as follows:

DIRECT EXAMINATION
BY MR. PALMITIER:

Q. Would you please state your name for the record?

A. Cynthia Browne.

MR. GRAHAM: I'm going to object to the State proceeding on this particular Show Cause. The only Show Cause Order that I had notice of was the one insofar as Ms. Chenoweth goes, Your Honor.

THE COURT: That's overruled.

Go ahead.

Q. (By Mr. Palmitier) How do you know Mr. Graham?

A. He's my Court-appointed attorney.

Q. Is he still your Court-appointed attorney this day?

A. I fired him the last time I was in court.

Q.   The last time you were in court, do you remember what day that was?

A.   Last week.  I don't remember what day.

Q.   Do you remember why you were here?

A.   I have no idea why I was here.

Q.   Were you set to be here for a jury trial?

A.   Yes, on March 31st.

Q.   Now, do you remember that day?  We called the docket and we called your name for announcements?

A.   Yes.

Q.   What happened?

A.   My attorney wasn't here.

Q.   Were you here?

A.   Yes.

Q.   Were you ready for trial?

A.   Yes.

Q.   Okay.  Had you spoken to your attorney before that day?

A.   Probably like a month prior maybe, maybe three weeks.  I'm not sure.

Q.   Okay.  Had he told you that he was not going to be there that day?

A.   No.

Q.   Had anybody from his office told you he was not going to be there that day?

A.   No.

Q.   Were you otherwise ready to proceed to trial?

A.   Yes.

Q.   Do you feel your attorney was ready to proceed with trial?

A.   Yes.

Q.   Had you all discussed it before?

A.   Yes.

Q.   Had not for him not being here, you would have been ready to go to trial?

A.   Yes.

Q.   And were we able to do that that day?

A.   No.

Q.   Why is that?

A.   I don't know why I was called for court that day because I had my trial on March 31st.  I was kind of confused why I was now coming on March 31st.

Q.   Okay.  On that day that you were in court, did you ever hear from your attorney?

A.   No.

Q.   Okay.  Or anybody from his office on that day?

A.   No.

Q.   Okay.  What about the day of trial?  Did you hear from your attorney?

A.   Yes.

Q. And were you ready to proceed to trial that day?

A. No. It got reset to May 12th.

MR. PALMITIER: Pass the witness, Your Honor.

THE COURT: Cross-examine.

## CROSS EXAMINATION

BY MR. GRAHAM:

Q. Ms. Browne, I don't know if you are actually aware of this, but your case was actually far down the list insofar as cases that were going to trial. Are you aware of that?

A. Yes.

Q. In other words, it wasn't likely that your case was actually going to go to trial because the Court also had a capital murder case that was going on that particular day. Isn't that right?

A. Yes.

MR. GRAHAM: I'll pass the witness.

THE COURT: Anything else?

MR. PALMITIER: No further questions.

THE COURT: You can be returned. Thank you for coming.

Anything else?

MR. PALMITIER: No, Your Honor. No further witnesses at this time.

THE COURT: Mr. Graham?

MR. GRAHAM: I would like to give some testimony

in this case, Your Honor.

THE COURT: Sure. Come on up.

MR. GRAHAM: Whether I do it here or on the witness stand -- how would you like me to do it?

THE COURT: Let's do it up here on the witness stand.

MR. GRAHAM: Sure.

(The witness was placed under oath by the Court.)

THE COURT: Have a seat, please.

CHRISTOPHER GRAHAM, having been first duly sworn, testified as follows:

DIRECT TESTIMONY

THE WITNESS: It's just a narrative format?

THE COURT: Introduce yourself just like you were calling a witness.

THE WITNESS: Sure. My name is Christopher Graham. I'm an attorney. I have been Court-appointed on several cases, the Chelsie Chenoweth case and also the Cynthia Browne case.

And in response to the State's -- or actually the Show Cause Orders that were issued in the Chelsie Chenoweth case, I just wanted to start with how this whole process began.

Basically, on the 12th of February, 2014, I tried to set this case in order to get it done and also pled

out on the 13th because I had other cases that were set on that same day. Okay. I was actually unable to do so because when I got to court on the 13th what happened was the Court indicated that somehow the case was not on the Court docket. This was a situation where the Chenoweth case probably could have been dealt with on that day. I was then told the case was reset to the 25th of February, in which case I then appeared again on the Chenoweth case in order to see if we could get it resolved. My understanding is the case was set for an arraignment setting.

And at that point I didn't hear the Chenoweth case actually had been called insofar as the docket goes. And so I walked in the court and I said, "Well, has the case been called?"

And the Court then makes the notation.

Shortly thereafter I negotiate with the prosecutors, were able to work out a deal for her insofar as a plea goes. The plea paperwork was signed. And, for whatever reason, I had difficulty in order to get the plea actually heard. This is about maybe 9:30 or maybe 9:45, somewhere in there. It didn't take very long in order to get the plea paperwork done in the case.

And so basically the Court then goes on a break. I'm trying to get the plea done and actually heard by the Court. So this is a situation where basically from almost

10:00 o'clock until about 1:15 when the Court reconvenes after lunch I'm trying to get my plea done. It doesn't make sense to me as to why it's taking so long in order to get this plea done in order to move this case.

In order to use my time efficiently, I'm a -- I'm a solo practitioner. And I had a case that was actually set for trial in the next few days in San Antonio. I figured that once the Court broke for the lunch period from about, you know, 12:00 o'clock to about 1:15 or, you know, give or take, 11:45 to about 1:15 I would be in a position to go ahead and visit one of my clients who was in the Bexar County jail. So that's what I tried to do because I had an investigator who was going to be talking to him also at that time. So I wanted to make the most effective use of my time.

So I talked to my client down there in preparation for trial in Bexar County. Then I come back. And, for that reason, I was a few minutes late. Now, I didn't think that it was going to be a problem because, No. 1, the Court did not tell me that, you know, you are automatically going to get a Show Cause issued.

In addition to that, based on the Court and how it functioned before, you know, things don't typically start on time in this particular court. So I thought that I had a few minutes in order to spare.

In addition to that, the Court also indicated

that there were -- there was a contested hearing that was going to be heard shortly after the lunch hour. So I thought that I would be okay.

And so I came back and then I tried to discuss the matter with the Court about, you know, "Where is my client at? What's going on here? This is the reason for the delay." And then I get hit with a Show Cause.

Now, I've practiced law for quite some time in various counties and I have never seen a situation where an attorney gets a Show Cause, you know, after one issue. And it's an excusable issue. And we're talking about just a few minutes late.

Now, the thing about it is this is not a situation where there was any kind of deliberate disrespect to the administration of the court by no means. It was a situation where, you know, I have got to move around to different counties in order to take care of cases that are set for trial. So I did show up, you know, albeit it a few minutes late.

And insofar as the March 13th, 2014 hearing goes, the Court issued me a court date in order to be here. However, I had already had other court dates that were set that I could not move in Williamson County. So, as a result of that, I filed a Motion for Continuance. It was denied. I tried via telephone in order to talk to the Court about moving

the Show Cause date and that was again denied.

Now -- so I think that -- based on the circumstances, I think that a Show Cause or at least a contempt finding in this case is inappropriate. It's not a situation where there was any kind of intentional disregard for Court orders.

THE COURT: Cross-examine?

<u>CROSS EXAMINATION</u>

BY MR. PALMITIER:

Q. What time did you show up on February 25th?

A. Shortly after 9:00 o'clock.

Q. Exact time?

A. I don't know the exact time.

Q. Were you there for the docket call when it started?

A. I didn't hear her name called. I didn't hear Ms. Chenoweth's name called. That's why I had to approach the bench in order to make sure that, you know, I was registered as being here.

Q. The reason you didn't hear her name called -- is that because you weren't there?

A. Because I was out in the hall.

Q. Did you let Ms. Chenoweth know that you were out in the hall?

A. No.

Q. Why were you out in the hall?

A.   I believe it was a phone call I was taking.

Q.   Who was that phone call with?

A.   It was one of my clients out of Dallas.

Q.   What was the name?

A.   Ms. Harper I believe.

Q.   What is her first name?

A.   I don't know.  I don't know what the first name is off the top of my head.

Q.   Do you know what case it relates to?

A.   It was -- I think it was a breach of contract case or something like that.

Q.   Do you know which court it was set in?

A.   Court No. 3 I believe out of Dallas.

Q.   She is the plaintiff or the defendant in that case?

A.   I think she's plaintiff.

Q.   Who is the defendant in that case?

A.   Not sure.

Q.   So what time did you come in the courtroom on February 25th?

A.   I would say maybe about 9:15, somewhere in there. 9:15, 9:20 I would say.

Q.   You just notified the Court today that you had lots of things to do that day?

A.   I don't understand "lots of things."  What do you mean?

Q. You said you were a busy solo practitioner. You had to be in San Antonio. You had to go to the jail?

A. Right. I had a case, State versus Kochanski (sic) that was set, you know, just a few days away. It was imperative that I talk to him in jail on that day. I have got to make, you know, productive use of my time. I just can't sit around during the lunch hour, so I wanted to make productive use of my time.

Q. Did you notify the Court that you had to go do that?

A. No, I thought that I could actually make it. I thought that I could go there and make it back.

Q. When you realized that you weren't going to make it back, did you notify the Court that you were going to be late?

A. I did not. I wasn't really concerned about it because I figured that the Court had, you know, several hearings, contested hearings that were going on, and the Court wouldn't take up Ms. Chenoweth's case immediately.

Q. You got to look at the record this morning, correct?

A. The one that you issued in evidence? That one?

Q. And you got a copy of it, right?

A. I believe I got a copy via e-mail, if it's the same document.

Q. Okay. And also by certified mail?

A. Not by certified mail. I think someone from my office may have picked it up, but I did get the copy by e-mail.

Someone sent it to me via e-mail.

Q. Have you had a chance to review it?

A. I reviewed it, more or less.

Q. Okay. Going over what the Court had on its docket that day, there were custody hearings it had to take up and the contested hearing?

A. Correct.

Q. And that was it. All of the cases left in the afternoon were just you and two other people.

A. Perhaps there were other cases that were actually -- perhaps there were cases that were resolved. I'm just going by what the Court said. In other words, they were contested hearings. That's what I heard before I left to lunch.

Q. But if you read the record and what the Court said that day, they had a contested hearing they were taking up before lunch. There were no contested hearings taken up after lunch.

A. I don't believe that I heard before or after. I heard contested hearing and that was going to be taken up before my case is what -- I didn't know when it was going to be taken up. I would assume that it would have been taken up after lunch. That's what I assumed.

Q. But after reading the record and hearing it in court today, there was no contested hearing that afternoon, was there?

A. I didn't actually peruse -- I didn't look at it in detailed fashion. I got it, but I kind of skimmed through it.

Q. Would you like a chance to look at it right now?

A. Sure.

Q. If you could, look at it for its accuracy as to whether or not there was a contested hearing scheduled in the afternoon on that day.

A. What was your question again? Your question is to see whether or not there was a contested hearing in the afternoon? Is that your question?

Q. Was there a contested hearing that was announced for that afternoon?

A. Okay. Page 62 talks about the last custody case I'll take before -- or that last case I will take before we start the contested hearing is Rick Anthony Cruz. I've got a punishment in Lopez still pending. I've got Martinez we're about to start.

You know, this is shortly before I believe we actually broke for lunch, so all of this stuff was going to take place prior to, you know, dealing with the Chenoweth plea is what my understanding was.

Q. What time was that at?

A. This is -- this is between 10:53 and 11:27 a.m.

Q. If I refer you to page 62 of the record --

A. Right.

Q.   Okay.

A.   Are you asking me?

Q.   Yes.

A.   Right.  I'm talking about page 62 where he's talking -- he's got all of this -- these other cases that were going to proceed.  And this is after I was asking about the status of the Chenoweth case after the Court had neglected to call it.

Q.   Okay.  Right after you say, "Your Honor, if the Court can take up -- Ms. Chenoweth as well," what does the Court say?

A.   The Court says, "Eventually.  It's not a custody case.  I have a custody case that's ready."  So --

Q.   You say, "Okay."  What does the Court say then?

A.   "How long is that going to take?  It's already ten after 11:00."

Q.   What does Mr. McCrary say?

A.   "I don't think it will take too long."

Q.   Okay.  So you have got a contested hearing that the prosecutor announces is not going to take too long.  Is that correct?

A.   Right.  That's what it says.

Q.   And then what does the Court say?

A.   The Court says, "Well, I'll tell you what.  I'm going to reset -- for those counsel that weren't here at 9:00 o'clock, Lopez will be reset for 1:15.  I'm going to do

Martinez."

And then the Court talks about Mr. Rodriguez. "I've got to get this other one done. Reset for 1:15."

So it looks like to me there was a lot of other cases that were -- that were going to go.

Q. By "a lot of other cases," he says, "Well, I'll tell you what. I'm going to reset -- for those counsel that weren't here at 9:00, Lopez" -- that's one, right?

A. Right.

Q. He's going to do Martinez right now?

A. Right.

Q. "Castilleja. I know you were here, Mr. Rodriguez, but I've got to get this other one done. Reset for 1:15. Chenoweth will be reset for 1:15."

So how many cases is that that's reset for 1:15?

A. And also it says that I will -- I'll take this contested hearing. Rick Anthony Cruz is what he's also talking about as well, as the Court says. So I guess four or five cases, four cases, give or take.

Q. To be reset at 1:15?

A. That was my understanding.

Q. If you read the record right there --

A. Right.

Q. -- how do you understand that to be he's resetting the contested hearing after 1:15?

A.   It doesn't say when he's going to reset it.  It just says we're going to start a contested hearing.

Q.   So what time did you show back up after lunch?

A.   I would say maybe about 1:35, give or take, because it took them awhile in order to actually transport the prisoner or the defendant from his custody -- from his cell in San Antonio.  And they were running behind, and also the traffic getting back.  But I did get back.

Q.   Who was that that you were visiting in San Antonio?

A.   It was Kochanski.

Q.   What was the first name?

A.   Anthony Kochanski.

Q.   Do you know the docket number for that case?

A.   No, I don't --

Q.   Do you know what court it's set in?

A.   Off the top of my head, no.

Q.   What was so important that day that you had to go visit him?

A.   Well, there was an investigator who was helping me prepare for trial in this case and he had an imminent trial setting.  And the only time I could meet with the investigator and also get with him and Kochanski was at that time during lunch.  And I wanted to make productive use of my time at that time.  I just didn't want to sit out here and just do nothing.

Q.   Was it actually set for trial?

A. It was.

Q. Did it go to trial?

A. It did not on that particular day. It was moved. But considering the amount of time that Mr. Kochanski had been in jail, there was a high probability it was going to go at that time.

Q. Once again, did you notify the Court that you were going to be running late?

A. I did not, no.

Q. Did you ask for a reset to go handle the matter in San Antonio?

A. A reset? A reset for the Chenoweth case?

Q. Right.

A. I did not, no, because I thought that I could get back in time and the contested matters would be completed and I could come back and deal with it.

Q. And it's your testimony here today that you showed back up at 1:35?

A. I don't know the exact time, but it was a few minutes after -- it was a little bit of time after 1:15. I didn't log it down or anything like that.

Q. You did not tell the bailiff that you were 45 minutes late?

A. No, I did not. It was before 2:00. I know that. Before 1:50, probably before 1:45 I would say.

Q.    You have had a chance to look at the record, right?

A.    Correct.

Q.    You saw what time it ended at?

A.    Well, I know what the court reporter said.  However, he wasn't in the courtroom when I got here.

Q.    So his testimony was false earlier then?

A.    That's correct.

Q.    And so would the bailiff's testimony be false?

A.    I did speak to the bailiff.  Insofar as his time estimates when I got here, I don't know if that's accurate.  But when I got here, I don't recall seeing the court reporter here.

Q.    Move forward to the March 13th date.  Why were you supposed to be here?

A.    Presumably for a Show Cause setting, Show Cause setting in the Chenoweth case.

Q.    So you were set for two -- two matters on that date?

A.    One, as far as I know.

Q.    Ms. Chenoweth and your Show Cause?

A.    Right.  Right.

Q.    Two separate matters?

A.    Okay.  Yes.

Q.    Did you show up that day?

A.    I did not, no.

Q.    Why is that?

A.    Because I had prior hearings that were scheduled in Williamson County on that day.  And I filed a Motion for Continuance, you know, after I got the Show Cause via fax.

Q.    When did you file your Motion for Continuance?

A.    A few days after it was faxed to me, that the Show Cause was faxed to me.  I don't remember.  A day or two after. I don't know off the top of my head.

Q.    Would you like to see a copy of the Court's record?

A.    Sure.

Q.    Do you remember what day the notice to be here was sent to you?

A.    Maybe a day or two after the 25th of February.

Q.    So February 25th?

A.    A day or two after that.  I remember it being that long.

Q.    February 27th?  Okay.  That's when you were given notice to be here for Ms. Chenoweth and your Show Cause hearing?

A.    Correct.  It was sent to me via -- I think it was sent by fax.

Q.    And your testimony today is that you sent in the Motion for Continuance shortly thereafter?

A.    Right.  I don't know exactly when it was, but I did send in a Motion for Continuance as well as my response to the Court's order to show cause.

Q. I'm showing you what you filed as Response to Court Orders to Show Cause and Request for Continuance.

For the record, can you read what date that was filed on?

A. It says here March 10th, 2014.

Q. Okay. And so how long after you received notice was that then?

A. Apparently, the -- it was file stamped March 10th of 2014.

Q. Okay. How many days is that before you were set to be here?

A. Just three days apparently. However, it was actually mailed in. That's why it's --

Q. When did the Court receive it?

A. All the documents are stamped March 10, 2014. I assume that's when it was received and also entered into your system or the court system.

Q. Did you get a ruling on that Motion for Continuance?

A. Did not, no.

Q. Yet you failed to show up on March 13th?

A. That is correct.

Q. Going back to that Motion for Continuance, was that a sworn-to affidavit?

A. It was an unsworn declaration is what it was.

Q. Okay. So you didn't -- filing an unsworn

declaration, not getting a ruling, you failed to show up on March 13th for Ms. Chenoweth's matter and your Show Cause?

A. That is correct. I didn't show up.

Q. Why couldn't you be here that day?

A. Well, I figured one of my associates was going to be able to make it on that particular day. But, apparently, he had some kind of issue with the South by Southwest issue that was going on in Austin and he could not get down here.

Q. Were you able to make it that day?

A. I was not, no.

Q. Why not?

A. Because of the hearings that I had in Williamson County.

Q. What hearing was that?

A. I had two or three cases that were set on that particular day. I don't recall who they were off the top of my head, but I did have several prior arranged court appearances in Williamson County.

Q. You don't know the names of those defendants?

A. I have got it in my calendar, but I don't know off the top of my head, no.

Q. Do you remember which court you were in?

A. No.

Q. What time did you have to be there?

A. Morning time, 9:00 a.m.

Q. What time did you finish up there?

A. Probably noontime.

Q. You don't remember which courtroom you were in?

A. I don't recall, no.

Q. Do you remember which judge you were in front of?

A. Off the top of my head, no. That was my first appearance in Williamson County. I do not remember.

Q. You did make an appearance that day?

A. I did.

Q. You will be on the record there that day?

A. Yes.

Q. After finishing up, where did you go next?

A. I don't recall. I think I spoke to my operations guy in my office and that was pretty much it. I think I went back to Dallas is what I think insofar as taking cases --

Q. Did you check in with the Court here?

A. No, because I filed a Motion for Continuance. I would assume the Court would either deny it or reset the case. That's what I figured was going to happen.

Q. Looking at the motion you filed --

A. Right.

Q. Look at No. 5. You say, "The Court inexplicably took a break from conducting court activities from approximately 9:45 to 11:20."

Looking at the record, is that correct?

A.    Well, those are estimates based on my estimation.  I know it was a long time that the Court took a break and my plea was not handled during that period.

Q.    Are the times correct?

A.    I didn't record them down specifically, so it's an approximation.

Q.    Knowing what the times are now, is that a correct estimate?

A.    I would say, give or take, a correct approximation, yes.

Q.    Would you like to look at the record?

A.    I don't see where it says in here specifically.  All I know is that the break was protracted.

Q.    Looking at No. 9, "I conducted a consultation in Bexar County and then came back to the Court approximately 1:35 to complete the plea in this case."

It's still your testimony today that you showed back up at 1:35?

A.    Now, insofar as, you know, did I write it down at that time as when I got back?  It's an approximation.  I think it was about 1:35 when I got back.  That's correct.

Q.    After looking at the record and hearing testimony today, do you still think that's correct, approximately 1:35?

A.    Give or take, yes.  It's a correct approximation.

Q.    Now, that day --

A. I wasn't actually -- I didn't actually talk to the bailiff until shortly thereafter, but I was here around 1:35.

Q. On February 25th, was the Court able to dispose of Ms. Chenoweth's case?

A. No, it was not.

Q. On March 13th, was the Court able to dispose of Ms. Chenoweth's case?

A. I would assume not at that point. I assume the Court basically appointed somebody else to the case.

Q. Why was the Court not able to do so on February 25th or March 13?

A. Insofar as -- I'm just kind of guessing here, but on the 25th I really don't have an answer for it. I think certainly if pleas take five minutes in order to do, there is no reason why we should have been forced or I should have been forced to wait from, you know, 10:00 o'clock to 1:15 in order to do a plea. I don't know the reason of that. I don't know the answer to that.

Q. And, on March 13th, why was the Court not able to dispose of Ms. Chenoweth's case?

A. Because the Court gave me an arbitrary date where I had preexisting hearing dates that were set in Williamson County on that day. And I wasn't able to be present and also my associate could not get here. And he apparently had communication with the Court about his difficulties getting

here because of an accident in downtown Austin, Mr. James Lacy.

Q. So would you say due to your tardiness, unable to be in court, we were not able to handle Ms. Chenoweth's case in an expeditious manner?

A. I would say due to the breaks and the Court's tardiness, the plea was unable to be handled. The plea could have been handled on the 25th of February.

Q. So it's the Court's fault?

A. Well, all I know is the plea paperwork was done in the morning time and, you know, there had to be a wait until 1:15, when, you know, the court reporter indicated that basically pleas just take five minutes in order to get done.

Q. And Ms. Cynthia Browne's case.

A. Uh-huh.

Q. What was it set for on the Thursday prior to trial?

A. My understanding it was actually set for -- the standard protocol here, my understanding now, is that the Thursday prior to trial there is some kind of an announcement. However, I called about Cynthia Browne's case. And, No. 1, it was set so quickly for trial after her prior court date, which was kind of strange I thought, and also because of how young her case was it was far down the list. The probability of it going was almost nonexistent. In addition to that, I was told by Mr. Steve Thomas, one of the court coordinators here, that there was a capital murder that was going and so therefore

Ms. Browne was not going to go at all.

Q. What did the notice say in regards to being here on the Thursday prior to trial?

A. After -- I assumed that the notice specified you have got to be here for a pretrial date if it's set or a court date or trial date if it's set. Sentence No. 2 or 3 it says the Thursday prior to trial there are announcements.

Q. Did you show up the Thursday prior to trial to make an announcement?

A. I did not, no, because I was told the case would not go.

Q. Did that make you believe that you still did not have to announce?

A. Yes, and also I didn't think there was protocol until I read it more thoroughly about having to appear the Thursday prior. I didn't know there was an automatic setting.

Q. Do you typically have to announce ready for trials, not ready?

A. Most of the places that I operate in typically there is a pretrial. And at that point you announce ready or not ready or there is a specific setting on a specific day and you announce ready. But sometimes, you know, basically if there are other cases that are definitively going to go and the Court is not going to pull your client over and the case is not -- there is no need to make an announcement if the case doesn't

go.

Q.   Does that mean that you would not have to then show up?

A.   If the case doesn't go, sometimes an e-mail, sometimes a call.  "Look, Mr. Graham, your case is not going to go."  That's how it works in some of the counties.

Q.   You have been doing this for a long time, right?

A.   For awhile.

Q.   Do you know that on a list -- on a docket sheet sometimes cases don't go?  Sometimes they are supposed to go and they don't, right?

A.   Correct.

Q.   That's common knowledge?

A.   Correct.

Q.   Routine in your practice?

A.   Correct.

Q.   Okay.  So what would then prevent you -- or what would make you think that you would not have to make an announcement?

A.   Well, like I said before, I thought that my appearance was required even on a pretrial day or a trial day.  And that wasn't the case.  But the notice says the Thursday prior you need to be here to make an announcement.  I thought the case wasn't going to go.  I didn't think the announcement was ready.  I thought my required appearances were on a

pretrial day that was set or a trial day.

Q. But you acknowledge that's not what the notice told you to do?

A. Right, and I didn't read it until -- until later, that particular line.

MR. PALMITIER: No further questions.

THE COURT: Do you have any more questions of yourself?

THE WITNESS: No, Your Honor.

THE COURT: You can step down.

THE WITNESS: Thank you very much, Your Honor.

THE COURT: Call your next.

MR. GRAHAM: No other witnesses, Your Honor.

THE COURT: State have anything else?

MR. PALMITIER: No, Your Honor. We'll rest.

THE COURT: Both sides rest and close?

MR. GRAHAM: Yes, Your Honor.

THE COURT: State has the right to open and close.

MR. PALMITIER: Briefly, I think it's all before the Court in the records and the testimony you heard this morning, Your Honor. Clearly, Mr. Graham did not show up on time on February 25th which, in and by itself, is not enough for a Show Cause. But then it's not -- I guess we're not on Mr. Graham's time. It's on the Court's time. There are things

that a Court must take up first. And that's always been the Court's practice. Custody cases have to go first. They have to go back to the jail. They take precedent. And Mr. Graham was ordered by the Court to be back here at 1:15, which he failed to do so.

It's all in the record, Your Honor. You can look to the testimony from Bailiff Nick Reininger. The testimony from Rick Roberts, the court reporter, was that he didn't show up until closer to 2:00 o'clock, 45 minutes late. They were unable to handle Ms. Chenoweth's case that day, although she was ready to plea and wanted to plea. That, in and by itself, is probably not enough to get to the Show Cause.

However, what happens next is on March 13th Mr. Graham fails to wholly appear on that date. That is what gives rise to the Show Cause Order and what he needs to be held in contempt for, Your Honor.

Looking at the Court's record and the testimony you just heard, he received notice of it on February 25th via fax and February 27th by mail. And on March 10th he filed his notice for continuance. It was an unsworn declaration. And without getting a hearing on it or ruling, he wholly failed to show up or anybody else from his office. And, once again, Ms. Chenoweth's case had to be reset.

And, additionally, he was there -- noticed to be there that day for the Show Cause hearing which he failed to

show up to as well. That, Your Honor, is enough to rise to the level of contempt. It slowed down the Court's process in that we were trying to move Ms. Chenoweth's case. We were unable to do so on two different occasions, Your Honor.

Additionally, in regards to Ms. Browne's case, he was noticed as well to be here on the Thursday before and failed to do so. Although he may have spoken to somebody about whether or not another case was going, that still does not relieve him of having to show up and make an announcement of ready or not ready on the Thursday prior to trial. For that, Your Honor, the State is asking to hold him in contempt.

THE COURT: Mr. Graham?

MR. GRAHAM: Your Honor, the State actually indicated a second ago that various actions that allegedly were committed by me do not rise to the level of contempt. In other words, they are saying that basically that the 25th appearance -- that didn't rise to a level of contempt in what took place on that particular day. However, a Show Cause Order was actually issued on that particular day. You heard testimony from the court reporter that indicated that it's not standard practice to issue a Show Cause Order under these circumstances. In other words, there were other situations where attorneys may have been a few minutes late insofar as making a docket announcement, but they didn't get, you know, Show Cause Orders issued.

For whatever reason, it seems as if I have been singled out here and unjustifiably so. This is not a situation where there was any kind of intentional disrespect to the Court. I was here that particular morning. I showed up. I tried to set the case before. For whatever reason, the case, insofar as Ms. Chenoweth goes, was not set on the 13th. I came back again in order to get the case finalized and waited for numerous hours to order to try to get the plea done. And, for whatever reason, we still could not get it done, each though the Court, you know, would have taken 5 or 10 minutes in order to hear a plea.

In addition to that, insofar as -- you know, I'm a solo practitioner, Your Honor, and there are other arrangements and other things I have got to do. I just can't wait in one court in order to wait for a plea to take place. I wanted to make constructive use of my time during the lunch hour and I figured that I was able to go to San Antonio, talk to Mr. Kochanski that was actually set for trial and make it back.

The action of the jailers there insofar as not getting Mr. Kochanski back from the jail in a prompt fashion and also traffic issues necessitated my taking a few minutes. However, I was here in the afternoon again, after having waited for numerous hours, to do the plea for Ms. Chenoweth. And, to my chagrin, the case had basically been -- been reset and she

had been dismissed.

Now, insofar as the March 13th hearing, this is not also my situation where basically I was trying to disrespect the Court in any way. By all means, I filed a Motion for Continuance in order to alert the Court that, hey, I have got a preexisting hearing in a different county and therefore I can't make it.

What I also did was have one of my associates, Mr. Lacy, try to make it. He had contact with the Court. And basically he was unable to make it due to an accident in downtown.

So I think that if you look at this, if you look at the law that's applicable to Show Causes and also to contempt situations like this, this is not a situation where I obstructed the administration of justice of this Court here. If anything, the Court has somewhat delayed this process because Ms. Chenoweth's plea could have been taken a long time ago. And I think that appointing a new attorney on the case actually delayed the process. This was a case that I was intimately familiar with. This is a case where plea documents were already drafted. And so there was no reason to appoint somebody else and waste additional time on this plea.

The -- there is some case law that talks about in these kinds of cases that contempt is not to be presumed in these kinds of cases. In other words, contempt is actually

presumed not to exist and that -- and that basically the Court needs to look for things that obstruct the administration of justice. That was not the case here. That was not my intent here. So I would ask the Court not to find a contempt in this case and proceed forward.

THE COURT: Anything else from the State?

MR. PALMITIER: No, Your Honor.

THE COURT: In Cause No. CR2013-519, In Re Christopher Graham, the Court finds insufficient evidence to hold the defendant in contempt.

In Cause No. CR2013-366, it appears to the Court that the defendant seems to make his own determination as to when he should or should not arrive in court from all the evidence the Court has heard today. It's a continuing pattern. Therefore, the Court finds that the defendant did fail to arrive on time at the 9:00 a.m. docket call on February 25th, 2014. The defendant failed to return to court at 1:15 p.m. on February 25th, 2014, as instructed by the Court; that Mr. Graham failed to appear in court on March 13, 2014, for Cause No. CR2013-366, State of Texas versus Chelsie Michelle Chenoweth, as well as Mr. Graham's own Show Cause noticed on that date without a grant of continuance or a leave from the Court. Mr. Graham's conduct does obstruct the administration of justice with the pattern that the evidence today has shown.

The Court now holds you in contempt in Cause No.

CR2013-366 and sets your punishment for confinement in the Comal County Jail for a period of 15 days and a fine of $300.

You can go with the bailiff.

MR. GRAHAM:  Can we -- can we postpone that particular commission?

THE COURT:  No, you can go with the bailiff now. An appeal bond at $5,000.

MR. GRAHAM:  Appeal bond $5,000?

THE COURT:  Yes.

MR. GRAHAM:  Okay.

(End of Proceedings)

C E R T I F I C A T E

STATE OF TEXAS          )  CAUSE NOS. CR2013-519, CR2013-366

COUNTY OF COMAL         )

I, DOTTIE NORMAN, Deputy Official Court Reporter in and for the 274th Judicial Court of Comal County, Texas, do hereby certify that the above and foregoing constitutes a true and correct transcription of the hearing in the above-styled and numbered cause, all of which occurred in open court and reported by me.

I further certify that I am neither attorney nor counsel for, related to, nor employed by any of the parties to the action in which this testimony was taken.  Further, I am not a relative or employee of any attorney of record in this cause, nor do I have a financial interest in the action.

I further certify that the total cost for the preparation of this transcript is $472.00.  Witness my official hand this the 19th day of January, 2015.

/s/ Dottie Norman

_____
DOTTIE NORMAN, Texas CSR 2283
Expiration Date:  12/31/16
1806 Toro Canyon Road
Austin, Texas  78746
(512) 327-4650

VOLUME 3 OF 3 VOLUMES
TRIAL COURT CAUSE NO. CR2013-366

IN RE:                          ) IN THE DISTRICT COURT
                                )
                                ) HAYS COUNTY, TEXAS
                                )
CHRISTOPHER GRAHAM              ) 274TH JUDICIAL DISTRICT

------------------------------------------------

VOLUME 3

EXHIBIT VOLUME

------------------------------------------------

I, Richard E. Roberts, Jr., Official Court Reporter in and for the 274th Judicial District Court of Comal County, State of Texas, do hereby certify that the following exhibits constitute true and complete duplicates of the original exhibits, excluding physical evidence, offered into evidence in the above-entitled and numbered cause as set out herein before the Honorable Lloyd Douglas Shaver, Visiting Judge of the 274th Judicial District Court of Comal County, State of Texas.

WITNESS MY OFFICIAL HAND on this, the 26th day of January, 2015.

/s/ Richard E. Roberts, Jr.

_____
RICHARD E. ROBERTS, JR,   CSR 5411
Official Court Reporter
274th District Court
P.O. Box 311905
New Braunfels, Texas 78131-1905
Expiration:  12/31/16

# Master Index
## April 8, 2014

EXHIBITS

| EXHIBIT NO. | DESCRIPTION | OFFERED | ADMITTED |
|---|---|---|---|
| State's 1 | Reporter's Records February 25/March 13, 2014 | 13 | 13 |

REPORTER'S RECORD
VOLUME 1 OF 2 VOLUMES
274th JUDICIAL DISTRICT COURT

---

NON-JURY DOCKET

---

**STATE'S EXHIBIT # 1**

On the 25th day of February, 2014, the following proceedings came on to be held in the above-titled and numbered cause before the Honorable Gary L. Steel, Judge Presiding, held in New Braunfels, Comal County, Texas.

Proceedings reported by computerized stenotype machine.

RICHARD E. ROBERTS, JR., CSR
(830) 228-4634

VOLUME 1

NON-JURY DOCKET

February 25, 2014

|                         | PAGE | VOL. |
|-------------------------|------|------|
| Non-Jury Docket ........................................3 | | 1 |
| Reporter's Certificate ..........................75 | | 1 |

Non-Jury Docket
February 25, 2014

P R O C E E D I N G S

NON-JURY DOCKET

THE COURT: Okay. I've got some civil cases. Let me call them and get announcements and then I'll take them up when I can after I've dealt with at least calling the criminal docket.

2013-1144, Adams and Adams versus Lakecroft and Western Hemisphere Investments.

MS. BASCON: The plaintiffs are present, Your Honor. 30 minutes?

MR. FAHLE: I think that's right.

THE COURT: What are you attempting to continue?

MS. BASCON: I have a hearing on a Motion for Summary Judgment scheduled for March 13th and he's looking to push that back.

THE COURT: Okay. See if you can work something out. I'll mark you as ready and I'll call the criminal docket and deal with it accordingly.

MS. BASCON: Thank you, Your Honor.

THE COURT: Thank you.

2013-1296, in the Matter of the Marriage of Dove. Give them a call and see if they're going to come.

2012-1030, Skidmore versus Brown and Prestige Gunite.

MR. SOMMERS: The movant is ready, Your Honor.

Five minutes or less.

THE COURT: And your client is Ms. Skidmore?

MR. SOMMERS: Mr. Skidmore. Yes, Your Honor.

THE COURT: I'm sorry. Is Mr. Skidmore here? Is there any filed opposition from the defendants?

MR. SOMMERS: No, Your Honor. I called them yesterday morning to see, but neither of the other attorneys called me back.

THE COURT: Let me see that file.

THE CLERK: (Complies.)

THE COURT: If you will approach Mr. Sommers.

MR. SOMMERS: (Complies.)

THE COURT: I assume you've given all of the required notice?

MR. SOMMERS: Yes, Your Honor. Here is the original motion to withdraw. Based upon the issues that have occurred, I assumed that Mr. Skidmore would consent.

THE COURT: Okay.

MR. SOMMERS: I gave him until yesterday to consent. He didn't consent, so we filed a grounds motion to withdraw. Basically our relationship has deteriorated to such an extent that I can't, in good faith, represent him or put him on a witness stand.

THE COURT: Well, he just didn't get to know you very well.

207

(Laughter.)

MR. SOMMERS:  That is the proof.  That's the letter attached to it showing that the motion sent to Mr. Skidmore was sent.

THE COURT:  I'll mark this as Movant's Exhibit 1 and admit it.

MR. SOMMERS:  Thank you, Your Honor.  And I would rather not go into the factual basis for what occurred.

THE COURT:  He's not here.  You've given proper notice.  There's no objection from the other side.  You've given his address in your motion.  Have you got an order?

MR. SOMMERS:  Yes, Your Honor, I do.

THE COURT:  The Motion to Withdraw is approved.

If you would do me the favor of contacting opposing counsel and letting them know that I've signed this and what his address is for future notices.

MR. SOMMERS:  Absolutely, Your Honor.  And I will go ahead and send a copy to all parties involved in the case, too.

THE COURT:  Okay.

MR. SOMMERS:  Can I take it to the clerk's office and get a copy?

THE COURT:  I'm going to return your motions.  I assume they're already filed?

MR. SOMMERS:  Yes, sir, Your Honor.

THE COURT: I've got your exhibit and order. And if you will just deal with my clerk, she will tell you --

MR. SOMMERS: Okay.

THE COURT: -- what she allows and doesn't allows.

MR. SOMMERS: Thank you, Your Honor. May I be excused?

THE COURT: You may. Good seeing you again, Bill.

MR. SOMMERS: Yes, Your Honor.

THE COURT: And temporary orders in 2013-522, In the Interest of Dome, a Child.

MS. VILLARREAL: That's been passed.

THE COURT: That's been passed.

Did they not tell you that?

UNIDENTIFIED SPEAKER: No.

THE COURT: Who's your attorney?

UNIDENTIFIED SPEAKER: Tracy Wright-Reneau.

THE COURT: Okay. Give her a call. But they've called my office and said that they don't want the hearing, so you're excused.

UNIDENTIFIED SPEAKER: Thank you.

THE COURT: Give her a call before you get too far away in case there's some misunderstanding, but it's been passed by agreement.

Non-Jury Docket
February 25, 2014

UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

THE COURT:  Thank you.

Okay.  I'm looking for attorneys in the Dove matter and I've got one short Motion for Continuance I'll take up here in a moment.

Let me go ahead and call the criminal docket. If I call your name as the defendant, I need you to stand so we know that you're here.  I need defense counsel to let me know whether you are obviously here, whether you're ready or conferring.  And I'm going to assume the State is ready unless they announce otherwise.

I'll start with three punishment hearings. 2013-227, Gilbert Lopez.

THE DEFENDANT:  Here.

MS. VILLARREAL:  The attorney called.  He will be late.

THE COURT:  Your attorney has called.  He will be here shortly.  Do not leave without permission of the Court.

2013-282, Camille Sauls.

THE DEFENDANT:  Present.  My lawyer is running late.

THE COURT:  Okay.  Give Mr. Dwyer a call, but he's told the client -- his client he's running late.  It shouldn't be a problem.

And 2013-446, Jenesha Martinez.

MS. JONES: She's in custody, Judge. We're ready.

THE COURT: Thank you.

If you announce ready, especially on a custody case, stay close. I'm going to come back and pick those up before the first break.

2011 -- Motions to Adjudicates and Motions to Revoke. 2011-031, Carl Stahmann.

THE DEFENDANT: Here.

THE COURT: Do you have an attorney, Mr. Stahmann?

THE DEFENDANT: Yes, sir.

THE COURT: Who's that?

THE DEFENDANT: Joseph Strickland.

THE COURT: First name?

THE DEFENDANT: Joseph.

THE COURT: And is he out of San Antonio?

THE DEFENDANT: Yes, sir.

THE COURT: Do you have a phone number for him in case he doesn't show up here shortly?

THE DEFENDANT: I do, but I just talked to him. It's (210)447-2600.

THE COURT: Give his office a call and confirm that.

Marked as a contested hearing: 04-315, Benito Martinez.

MR. CANTRELL: Judge, he's present and we are ready. I just want to let the Court know I have a trial that's supposed to begin at 1:30 today.

THE COURT: Approach.

*(Mr. McCrary and Mr. Cantrell approach.)*

THE COURT: Estimates of time? Well, first of all let me ask this. Are we proving up both --

MR. CANTRELL: We're going to plead true, Your Honor.

THE COURT: You're going to plead true.

MR. CANTRELL: It's an issue of just punishment.

MR. MCCRARY: I have three witnesses subpoenaed. I may not need to call all of them.

THE COURT: How many have you got?

MR. CANTRELL: Just my client.

THE COURT: Okay. 1:30?

MR. CANTRELL: My trial starts at 1:30.

THE COURT: Where?

MR. CANTRELL: In County Court 13 in Bexar County.

THE COURT: Okay. I will --

MR. McCRARY: My witnesses are supposed to be here at 10:30. It won't take long, though.

RICHARD E. ROBERTS, JR., CSR
(830) 228-4634

THE COURT: Okay. We'll try to get it started as close to 10:30 as possible.

MR. CANTRELL: Thank you, Judge.

THE COURT: Thank you.

2011-631, Brian Wilson.

MS. MENDEZ: Judge, the defendant is in custody, Your Honor. And I would like a reset.

THE COURT: Have you talked to the D.A.'s office yet?

MS. MENDEZ: I spoke to them previously, but I have not since the last time we came to court.

THE COURT: Approach.

*(Mr. McCrary and Ms. Mendez approach.)*

THE COURT: Is this a state jail punishment?

MR. McCRARY: Yes, sir, it is.

THE COURT: Been in jail for 50 days. Why do we need more time?

MS. MENDEZ: We're asking for medical records and I'm still waiting for them to be submitted. Nix Health Care let me know that the records from them would be here this week. But as far as Methodist Health Care, they still expect ten days before I receive them.

MR. McCRARY: I guess what I need to know is if he's going to accept my plea offer or not.

MS. MENDEZ: He has rejected the plea offer.

He's made that clear to me.

MR. McCRARY: Then we need to reset it for contested hearing is what needs to happen.

THE COURT: Okay.

MR. MCCRARY: I conveyed a plea offer at the last setting and it was reset to let him decide. This is the first I've heard he's rejected it. But either he's going to plead and go to state jail peacefully or it's going to be a fight.

THE COURT: When do you anticipate those medical records?

MS. MENDEZ: Methodist Hospital is the last hospital I heard from and they said that they expect it will be at least another 10 to 15 days before I even receive the records.

THE COURT: Reset for a contested hearing in approximately 30 days on my docket. What -- what date is that? It would be the end of March.

THE CLERK: The 24th.

THE COURT: The 24th of March for a contested. Bring your witnesses.

Is he contesting the truth of the matter or just the punishment?

MS. MENDEZ: The punishment.

THE COURT: Talk to him. Let's see if we can

get him out here to plead true to the allegations to shorten that hearing and let everybody know who they need to bring.

MS. MENDEZ: Okay.

THE COURT: Okay?

MS. MENDEZ: Thank you.

THE COURT: So I will mark you conferring at this point. If he's willing to plead true to the allegations, let me know: We will bring him out, he'll plead true, and we'll set a contested punishment hearing.

MS. MENDEZ: Yes, Your Honor.

THE COURT: Thank you.

MS. MENDEZ: Thank you.

THE COURT: 2013-300, Brenden Weir.

MR. MILLAN: Your Honor, he's in custody. We would ask to have that moved to a contested docket. He's also the next one, Your Honor, 13-301.

THE COURT: Is he going to -- approach.

MR. MILLAN: Not today, Your Honor.

THE COURT: You're not going to approach today?

MR. MILLAN: Oh, I'm sorry.

THE COURT: Want to bet?

*(Laughter and Mr. McCrary and Mr. Millan approach.)*

THE COURT: Is he going to plead true to the allegations or are we contesting everything?

MR. MILLAN: I'm pretty sure he's going to be pleading true to some of the allegations at least.

THE COURT: Do you want to try to do that today so we can shorten the hearing and lessen the costs on the State to bring in all of their witnesses on the allegations?

MR. MILLAN: My problem is I have witnesses that I want to bring in that aren't available today.

THE COURT: But is that for punishment or for the truth of the allegations?

MR. MILLAN: For punishment.

THE COURT: We can reset for a contested punishment. My question is: Is he willing to plead true to the allegations today so we know what we're contesting?

MR. MILLAN: Judge, I would ask that we move everything if we can. Because I mean I'm trying to get people in here regarding -- I understand what you're saying if you can save some of the time. I've got three cases set in Guadalupe County this morning, also. So I wanted to see if can get this reset.

THE COURT: Okay.

MR. MILLAN: I think next time I do want to contest -- at a minimum contest the punishment the next time. But I'm --

THE COURT: Let's set it for two weeks not contested and then let's see what allegations he's willing to

plead true to.  I mean that can be a difference of an hour, hour and a half in my court.

MR. MILLAN:  I understand.

THE COURT:  So I'll give you -- it's a second degree felony.  We will reset it in two weeks.  It will not be contested.  The primary issue then is whether you're going to plead him true or not.

MR. MILLAN:  Right.

THE COURT:  If he's not, then be prepared to go again fairly quickly in two weeks --

MR. MILLAN:  I understand, Judge.

THE COURT:  -- if the State or you can be ready to do that.

MR. MILLAN:  I understand, Judge.

And I did want to speak about something with you off of the docket at some point this morning, if possible.

THE COURT:  Well, why don't you go talk to your client about truth and stuff and then --

MR. MILLAN:  No.  No.  It's about something else.  That's why I tried to see you this morning.

THE COURT:  Can we do it right now off the record or do you have to do it in --

MR. MILLAN:  Yes.

THE COURT:  -- Chambers?  Oh, okay.

Let's go off the record.

*(Discussion off the record.)*

THE COURT: So we will reset Weir for two weeks. Uncontested.

2013-301, the same thing. Reset two weeks, uncontested.

Plea docket. These three matters need to -- or actually it's one matter that needs to be resolved today or it goes to the jury docket.

2013-346, 347, 348, Abelardo Rodriguez, Jr.

MR. MILLAN: Your Honor, I'm going to speak to my client. I'm pretty sure that's going to go to the trial docket, but I'm going to try one last effort to try to come to a resolution.

THE COURT: I'll mark you as conferring. Thank you.

2012 -- pretrial docket. I'm talking mostly to defense counsel here. If you want to go to the plea docket, which is the last non-jury setting before going to the jury docket, just let me know and it will happen. If you want to go to the jury docket, let me know and it will happen.

If you want to stay on the pretrial docket, you're going to need to approach, even if the D.A. is in agreement, and let me know why the case is not moving forward.

2012-181, Kirk Slaughter.

MR. FANUCCHI: Good morning, Judge. He's

present.  Would you put us on the plea docket?

THE COURT:  To the plea docket on 2012-181.
Thank you.

2013-216, Felix Castilleja.

MR. RODRIGUEZ:  Present, Judge.  We'll confer.

THE COURT:  Thank you.  In custody.

2013-349, Gerald Robinson.  It says "Motion."  I
don't know.  It's stuck in the middle of my pretrials.

What are we doing here?

MR. RODRIGUEZ:  The defendant is in custody.
It's a motion to sever counts.

THE COURT:  Okay.  Have you talked to the D.A.'s
office about it?

MR. RODRIGUEZ:  I haven't had a chance this
morning yet.

THE COURT:  Okay.  Confer.  I will mark you as
conferring and then we'll see what we need to do.

How are we standing, otherwise?  Is it ready to
go to the jury docket?

MR. RODRIGUEZ:  Otherwise on the 17th, Your
Honor, yes.

THE COURT:  Oh, it's --

MR. McCRARY:  We're already on a jury docket.

THE COURT:  And the 17th is my docket?

MR. McCRARY:  Yes, sir.

THE COURT: Okay. Good. Thank you.

2013-358, John Paul Moreno.

THE DEFENDANT: Present.

THE COURT: And Chelkowski? Ms. Chelkowski?

Give her a call and prepare me a show cause if you can't get ahold of her.

Mr. Moreno, do not leave until you're excused by the Court.

2013-402, Wally Gracia.

MR. HUDSON: He's in custody, Your Honor. We will confer. We'd like to go to the plea docket, if possible.

THE COURT: Which one, conferring or move it to plea docket?

MR. HUDSON: If we could move it to the plea docket.

THE COURT: To the plea docket. Thank you. Obviously if you get something resolved today, let me know and we'll take it up.

2013-409, Carl Stahmann?

THE DEFENDANT: Here.

THE COURT: Okay.

MR. MCCRARY: That's the same guy that was on Page 1, Your Honor, earlier.

THE COURT: Yeah. I'm looking at that.

You've got Andrew Del Cueto as your attorney on

this case?

THE DEFENDANT:  I don't believe so.  I believe it's Joseph Strickland.

THE COURT:  Can I see that file, please?

THE CLERK:  We were looking at that.

THE COURT:  We've got a notice of -- why don't you approach, please, sir.

*(Mr. Stahmann approaches.)*

THE COURT:  We've got a Notice of Appearance of retained counsel of Andrew del Cueto, C-U-E-T-O.  And you're telling me he's not your attorney?

THE DEFENDANT:  It's the same office, possibly.  Because he -- I haven't had a chance to talk to him yet.  I can get all of this straightened out as soon as my attorney gets here.  They office in the Offices of Nicholas Lahood and del Cueto.

THE COURT:  Well, give them a call and find out what's going on and get somebody here today or prepare me a show cause for Mr. del Cueto.  And get me a notice -- well, get somebody here or I will have to order Mr. Stahmann to retain counsel in the other case.  But make some phone calls.

Don't leave.  We will work on it.  Thank you.

THE DEFENDANT:  Okay.  Thank you.

MR. McCRARY:  Did he make bond on that revocation?

THE CLERK:  Yes, he bonded out.

THE COURT:  Was it a regular bond or was it an attorney bond?

MR. McCRARY:  Just curious what it was set at.

THE CLERK:  Yeah, it's through a bail bonds.

MR. MCCRARY:  How much is it?

THE CLERK:  $110,000.  One is $100,000 and one is $10,000.

THE COURT:  2013-435, Denis Chavez.

MR. CAMPOS:  May I approach?

THE COURT:  You may.

I'm not seeing your client stand.  Is he here?

MR. CAMPOS:  No, Judge.

THE COURT:  Is that why you're approaching?

MR. CAMPOS:  Yes.

THE COURT:  Okay.

MR. CAMPOS:  My client lives in Florida.  He's had a very serious medical procedure.  He has not been released to travel.  I provided medicals to the State.

MS. KELLY:  That's correct, Your Honor.

THE COURT:  How long do you need to get him here?

MR. CAMPOS:  Judge, he's going to move back to Texas in mid April, so I'd like a setting after April 15th.

THE COURT:  Is that -- excuse me.  Is that

acceptable to the State?

MS. KELLY: Yes, Your Honor.

THE COURT: After April 15th?

MR. CAMPOS: Yes, sir.

THE COURT: The first setting after April 15th for pretrial on 2013-435.

MR. CAMPOS: May I be excused?

THE COURT: You may. Thank you.

2013-575, Jessica Lindig.

MS. ANCIRA: Your Honor, I got a phone call from my client this morning saying that she didn't have transportation to court.

THE COURT: Call her name three times, issue a warrant, forfeit her bond, and get her transportation.

THE BAILIFF: Yes, Your Honor.

MS. ANCIRA: May I be excused?

THE COURT: You may. You might want to let her know that we've issued a warrant for her arrest. That may help her find transportation.

MS. ANCIRA: I told her to expect that.

THE COURT: Okay.

MS. ANCIRA: But I will call her and let her know.

THE COURT: This is the arraignment docket. At the very least, defense counsel, I need to arraign your

clients or get a waiver of arraignment.  Once we've done that and you've said hello to the D.A.'s office, then we will reset the matter for pretrial.  I need to make sure everybody has counsel on the arraignment docket.

2013-366, Chelsie Chenoweth.

THE DEFENDANT:  Here.

THE COURT:  I've got Christopher Graham as your counsel?

THE DEFENDANT:  Yeah.  I haven't heard from him.

MS. VILLARREAL:  I haven't heard from him, either.

THE COURT:  Give him a call and prepare a show cause.

Was he retained or appointed, ma'am?

THE DEFENDANT:  He's court appointed.

THE COURT:  Okay.  Go ahead and issue a show cause if you can't get ahold of him or if he tells us he can't get here.  And make a note to remove him off of my court-appointed --

MS. VILLARREAL:  I think we did that.

THE COURT:  Okay.  Well, make a note for me to double-check that.

MS. VILLARREAL:  Okay.

MR. McCRARY:  I think Steve did so.

THE COURT:  I'm sorry?

MR. McCRARY: He did so.

THE COURT: Oh, he's already been removed?

MR. McCRARY: That's what I was told.

THE COURT: Okay. Well, now he will look at a show cause.

2014-16, Rick Anthony Cruz.

MS. WIGINGTON: He's in custody, Your Honor, and I'm conferring with the D.A.'s office. Because of the length of time he's been in custody, I'm hoping that we can resolve something today. If not, we'll advance it very quickly.

THE COURT: Is he -- it says "state jail." Is it a state jail punishment or is it an enhanced?

MS. WIGINGTON: It's enhanced.

MR. McCRARY: It's enhanced.

THE COURT: Oh, okay. I'll mark you as conferring. At the very least, Ms. Wigington, get me a waiver of arraignment. And as you said, if can we go ahead and get it to the jury docket as soon as you've had time to prepare, we will do that.

MS. WIGINGTON: Yes, Your Honor.

THE COURT: It's two cases. Also 2014-17.

2014-19, Bradley Whitten.

MR. SCHARMEN: Present with counsel, Judge. We'll waive arraignment. We may have already filed a waiver. I don't know.

THE CLERK:  No, it's not.

MR. SCHARMEN:  Yeah, Judge.  We're going to waive arraignment.

THE COURT:  Is your client here?

MR. SCHARMEN:  He's here.

THE COURT:  Okay.  Get me -- do we have a form for --

THE CLERK:  Yes, sir.

THE COURT:  Get me a waiver of arraignment; say hello to the D.A.'s office; get whatever they've got for you, maybe including an offer; and we will reset it for pretrial. If there's anything that the Court can do on your case today, let me know.  Otherwise, I will not call it again subject to your --

MR. SCHARMEN:  That's all we can do today, Your Honor.

THE COURT:  Subject to the waiver of arraignment, it will be reset for pretrial.

2014-27, Felix Castilleja.

MR. RODRIGUEZ:  May we approach, Judge?

THE COURT:  You may.

*(Ms. Rankin and Mr. Rodriguez approach.)*

MR. RODRIGUEZ:  Good morning, Judge.

THE COURT:  Are you retained or appointed?

MR. RODRIGUEZ:  I'm appointed.

Non-Jury Docket
February 25, 2014

THE COURT: In both cases already?

MR. RODRIGUEZ: Yes. This is one of those where we were waiting on the trial docket and my client didn't appear. I was wondering if the State is going to subpoena me or my office about whether I gave him notice and that kind of thing. I know that has happened to my colleagues.

THE COURT: Yeah, it has happened out of this office that we have to do a conflict and get a separate attorney.

Is that the intent of the State?

MS. RANKIN: If we could confer. If he does not accept an offer today, then that would be a conflict, yes.

THE COURT: Okay.

MR. RODRIGUEZ: We can do that, Judge.

THE COURT: Then we will just mark you as conferring for the short term and I will call it again. So don't leave until it's been reset by the Court.

MR. McCRARY: Kind of the deal with that from an office standpoint is if we can work something out, we -- I've pled cases like this before. But if it's going to be where we're going to end up fighting, then yes he'll be a witness.

THE COURT: Okay. We should be able to resolve that hopefully today.

MR. RODRIGUEZ: Okay. Thank you, Judge.

THE COURT: Thank you.

227

2014-39, Elizabeth Hernandez-Magana -- or "Magana." How do you say that?

THE DEFENDANT: "Magana."

THE COURT: "Magana." Thank you.

Do you have an attorney, Ms. Magana?

THE DEFENDANT: No, sir, I don't.

THE COURT: When do you anticipate getting one?

THE DEFENDANT: I was working on that, Judge.

THE COURT: I'm sorry. Why don't you go ahead and approach. I can't understand you. Old man's hearing.

*(Ms. Magana approaches.)*

THE DEFENDANT: I was working on that. I don't have a lawyer.

THE COURT: Are you going to be able to get one in a reasonable time?

THE DEFENDANT: I was -- yeah. I was, you know, in the process of getting a lawyer. It's just the money issue. But other than that, it's coming together. So --

THE COURT: If I were to give you 30 days, would you have an attorney?

THE DEFENDANT: Oh, yeah, yeah, yeah. That will be good.

THE COURT: Okay. What I'm going to do is my clerk is going to prepare an order for you to retain counsel. Read it carefully before you sign it. If you show up without

counsel and can't, under oath, explain all of the good-faith efforts you've made to get counsel, you can be held in contempt of court: up to 180 days in jail and a $500 fine.

If you don't show up on the date that's on that -- and this will be the only notice you will receive, so give it to the -- give a copy of it to the attorney you hire.

If you don't show up, it could be a third-degree felony for failure to appear.

THE DEFENDANT: Okay.

THE COURT: Do you understand that?

THE DEFENDANT: Yes, sir, I do.

THE COURT: If you'll step over to the side and read it carefully after you sign it. After you've signed it, take a copy with you.

THE DEFENDANT: (Complies.)

THE COURT: Order to employ in 2013-377, Cynthia Dawn Hart.

THE DEFENDANT: I still haven't been able to get one.

THE COURT: If you will approach.

May I see that file, please?

THE CLERK: (Complies.)

*(Ms. Hart approaches.)*

THE COURT: Okay. Have you retained counsel?

THE DEFENDANT: Not yet, sir. I'm still trying

to come up with the funds to hire an attorney.

MS. KELLY: Your Honor, previously she had Ms. Gillingham. Ms. Gillingham got her admitted to drug court. She decided she didn't want to go to drug court and Ms. Gillingham withdrew as counsel. And she was admonished on the 2nd of January that she must have an attorney by today.

THE DEFENDANT: On the 2nd of January?

THE COURT: Yeah. That's when you were in front of Judge Robison and you signed your order to employ.

THE DEFENDANT: I never -- okay. I never went in front of Judge Robison. I -- I was given some forms by my attorney and I signed them and then they sent me a notice that we had court. And I went to court and they -- it was postponed and I wasn't given a new date.

THE COURT: How much time do you need to get counsel?

THE DEFENDANT: Can I have another 30 days, Your Honor?

THE COURT: That's a long time.

THE DEFENDANT: Yes, sir.

THE COURT: Can you do it in two weeks?

THE DEFENDANT: I can try, yes, sir.

THE COURT: You need to get counsel.

THE DEFENDANT: Yes, sir, I know. I will do my best to do it within two weeks.

MR. McCRARY:  Considering the whole situation, it might be a good idea to have her urine tested.

THE COURT:  Would you pass a UA if I give it to you?

THE DEFENDANT:  Yes, sir.

THE COURT:  I'm sorry?

THE DEFENDANT:  Yes, sir.

THE COURT:  Here's what I'm going to do.  I'm going to give you 30 days to get counsel.  No more excuses.

I will ask probation to take her down and get a UA.  If she passes a UA, then we will reset this matter.

You come back in here and we will sign that when you get back.  If you don't pass a UA, then I will probably put you in jail and we'll get a court-appointed attorney.

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.  Don't lie to me.  Are you going to pass a UA?

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.  Give her a UA.  If he gets the UA, I will give her 30 days to get counsel.  If she doesn't pass the UA, then we will put her in jail.  And obviously she can't make anymore money and I'll have her fill out a court-appointed application.  Thank you.

2013-614, Marilyn May Bray.

THE DEFENDANT:  Here, sir.

THE COURT: Have you got an attorney, Ms. Bray?

THE DEFENDANT: No, sir. I was not able to obtain counsel. I would like to get a court-appointed attorney.

THE COURT: Approach.

Let me see that file.

THE CLERK: (Complies.)

*(Ms. Bray approaches.)*

THE COURT: You apparently made representations back on the 14th of January that you could employ counsel. I know I told you -- because my signature is on this and I always do -- that you're going to have to explain to me under oath all for the good-faith efforts. So if you will raise your right hand.

*(Defendant sworn.)*

THE COURT: Tell me everything that you've done to get counsel.

THE DEFENDANT: Yes, sir. I did go and speak with an attorney. And I was planning to make -- he said it would be $500 to get him started on it. And I had like a family emergency and my new position -- I got a new job and I started that last week. And I just couldn't come up with the $500 to get us going. I apologize. And --

THE COURT: But you've got a new job now?

THE DEFENDANT: Yes, sir, I do. I do and I love

it.  It's great.

THE COURT:  So if I gave you 30 more days, you could come up with it?

THE DEFENDANT:  Yes, sir.

THE COURT:  What people don't understand on court-appointed attorney's is you have to pay them anyway.  It's part of the judgment at the end.

THE DEFENDANT:  I will do that.  I mean I -- I do apologize.

THE COURT:  I would rather you pick one you like.  And quit apologizing.  We're just in court here.

THE DEFENDANT:  Okay.

THE COURT:  We're going to find out what's going on and we're going to do what's just and fair.

Can you pass a UA if I gave one to you today?

THE DEFENDANT:  Sure.

THE COURT:  No meth since this case has been pending?

THE DEFENDANT:  Oh, no, sir.  Absolutely not.  I never did that in the first place.  It was an empty baggie.  I don't even know how it got --

THE COURT:  Shush.

THE DEFENDANT:  Okay.  I'm sorry.

THE COURT:  Don't talk about your case.

THE DEFENDANT:  I'm sorry.  I'm sorry.

THE COURT: Don't talk about your case.

THE DEFENDANT: No, everything is fine, sir. I just need counsel. That's all I need.

THE COURT: Reset. Order to retain, 30 days. Read it carefully before you sign it. If you come in again without counsel, you're going to have to come up here and tell me again why your new job isn't paying you or whatever that is. You've told me all you need is $500. You've got 30 days, which should be two paychecks. You should be able to come up with $500 to retain your own counsel.

THE DEFENDANT: Yes, Your Honor.

THE COURT: Step over to the side. Make sure you take a copy with you after you've read it and signed it.

THE DEFENDANT: Yes, sir.

THE COURT: Motion to Substitute: 2012-486, Humberto Ibarra.

May I see that file, please. 2012-486.

THE CLERK: (Complies.)

THE COURT: Is your client here?

MR. ACEVEDO: No, Your Honor.

THE COURT: Did you tell him to be here?

MR. ACEVEDO: I just called him, Your Honor, and apparently he was told that he had a setting like in March: March 17th and March 11th. He's on full house arrest, Your Honor. And what I'm thinking, Your Honor, is that they

didn't -- since the order wasn't granted or the lawyer didn't follow up on it, he didn't get notice of this hearing. And so I tried to call his office right now and there's no answer.

THE COURT: So new counsel isn't here, either?

MR. ACEVEDO: No, Your Honor.

THE COURT: Here's what I will do in this case unless the State has any objections. I'm going to grant the Motion to Substitute. It's signed by Mr. Vela. And I'll reset this matter in two weeks. So we'll get notice out.

I'm going to ask you, as an officer of the Court, to call Mr. Vela and tell him he's got a setting coming in approximately two weeks.

MR. ACEVEDO: Yes, Your Honor.

THE COURT: If he hadn't -- he needs to call up here and find out when that's -- well, let's just set it on my docket.

What day is my next docket?

THE CLERK: March 13th.

THE COURT: It's going to be reset on the 13th. Mr. Vela needs to be here or there will be a show cause order issued.

MR. ACEVEDO: March 13th, Your Honor?

THE COURT: March 13th.

MR. McCRARY: Where is the defendant at right now?

MR. ACEVEDO: He's in Bexar County at home. He's got full house arrest. He's got full house arrest here, Your Honor, and he has full house arrest in Bexar County.

THE COURT: Let's get Mr. Vela here in two weeks. Let him know it's coming on the 13th. We will send notice. There will be no excuses. I expect his client to be here or a really good explanation on why he's not. Okay?

MR. ACEVEDO: Your Honor, is it on the March 11th docket? Because he said he got something in the mail.

THE COURT: Is it already on the March 11th docket?

THE CLERK: March 17th.

MR. ACEVEDO: March 17th.

THE CLERK: It's for a jury trial.

THE COURT: Well, that pretrial is on the 13th so he has to be here either way.

Make sure Mr. Vela knows that. Send new notice to Mr. Vela for both jury and pretrial and circle it like you do and highlight. Call him and tell him if he's not here on that Thursday, I will issue a show cause.

MR. ACEVEDO: Thank you, Judge.

MR. McCRARY: Does he know he's substituting in on a case that's set for trial?

MR. ACEVEDO: Yes.

MR. McCRARY:  He's not going to try to weasel out of trial based on substituting in at the last minute?

THE COURT:  Y'all can have that discussion.

I've granted the motion.  Let me see the docket sheet.

THE CLERK:  (Complies.)

THE COURT:  And a writ in 2012-559, Carolyn Carnes.

MR. RODRIGUEZ:  We will confer on that.

THE COURT:  Thank you.  Is that, what, a 90-day writ or a bond writ or what?

MR. RODRIGUEZ:  It's --

MR. McCRARY:  It's none of the above.

MR. RODRIGUEZ:  It's a 90-day writ subsequent to bond conditions previously.

THE COURT:  So it's a bond conditions writ?  I just always like to know what they are.

MR. McCRARY:  She violated the conditions of bond.

THE COURT:  Oh, okay.

Okay.  Anybody here whose name I did not call or came in late?

THE BAILIFF:  Mr. Graham is here, Your Honor.

THE COURT:  Mr. who?

MR. GRAHAM:  Chelsie Chenoweth.  It was a case

that was supposed to be set a week or two ago but, for whatever reason, it wasn't on the list and so now I'm back on it.

THE COURT: For arraignment. I need you to say hello to the D.A.'s office. If there's nothing we can do today, then get me a waiver of arraignment or bring your client up and let me arraign her.

MR. GRAHAM: Sounds good.

THE COURT: And it will be reset for pretrial subject to that waiver of arraignment.

ATTORNEY ATTORNEY: Sounds good. Thank you very much, Your Honor.

THE COURT: We have a form for that if you're not carrying one with you.

MR. MCCRARY: May we approach?

MR. MILLAN: Your Honor, on Abelardo Rodriguez, we want to move him to the trial docket.

THE COURT: 2013-346, 347 and 348 to the trial docket.

MR. MILLAN: Your Honor, I have no further business before this Court. May I be excused?

THE COURT: You may. Thank you.

I'm looking for Mr. Darwin, Mr. Dwyer, Mr. Strickland, Ms. Chelkowski, del Cueto, Ms. Jessica Marie Lindig.

Non-Jury Docket
February 25, 2014

None of those people are here, so I will proceed with the punishment in 2013-446, Jenesha Martinez.

MR. MCCRARY: On the Brian Wilson case, she actually came back and told me he's going to plea on it.

THE COURT: Brian Wilson.

MR. MCCRARY: You marked it off. It was one of the ones on Page 2.

THE COURT: Oh, going to come back and plead true to the allegations?

MR. MCCRARY: I think he's going to plead and take the deal.

THE COURT: Oh, okay.

*(Discussion off the record.)*

*(Open Court, Defendant present.)*

THE COURT: Okay. Ms. Martinez has pled guilty: two years in a state jail facility, probated for four years; $1,500 fine; $140 in restitution; 12.45 two cases -- two misdemeanor cases; court costs due at the time of sentencing, but you've been in jail so we will take care of that as soon as you can; standard stuff; DWI school.

MS. JONES: Actually it's drug education, Judge.

THE COURT: I'm sorry. Drug -- it's DWI school/drug school, a women's support group.

I'm going to approve the plea, but I've got two comments. Number one is you have to get a job. If you don't

get a job, you're going to be back in here and then back in the state jail facility.

And then my second comment is to the probation department.  I want you to get her some help on getting child support from the father of her children.

PROBATION:  Okay.

THE COURT:  It says two children.  You have two or one child?

THE DEFENDANT:  One.

MS. JONES:  She has one and she's pregnant.

THE COURT:  Okay.  It's both children.  And that's going to be a condition of probation is that you actively seek child support from the fathers of these children.  If you fail to do that and give them a pass, you go to jail.  Do you understand?

THE DEFENDANT:  Yes, sir.

THE COURT:  My staff is very good at getting the attorney general's attention on these kind of the cases.

So I find you guilty and sentence you to two years in a state jail facility, probated for four years; $1,500 fine; $140 in restitution; court costs; Crime Stopper's fee to be paid as soon as she can, accelerated; 200 hours of community service restitution; and follow all of the recommendations in the PSI.

MS. JONES:  And Judge, she's a resident of

Temple and I've explained to her -- and I believe the probation department is intending to transfer this up. I told her that she needs to stay in touch with our department on a weekly basis to make sure that that is accepted so it doesn't get lost in transit.

THE COURT: The first thing is -- does she have any other holds on her?

MS. JONES: No, sir.

THE COURT: As soon as you get out of jail, the first place you go is to my probation department.

THE DEFENDANT: Yes, sir.

THE COURT: And they will explain all of that to you on how to report until it gets transferred and everything that goes along there.

THE DEFENDANT: Yes, sir.

THE COURT: But I think what's important is regardless of what they do in Temple if my people find out you don't have a job, if my people find out you're not seeking child support, then my people will bring you back here and you will end up in my jail until we decide how to deal with you.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: You're under my thumb. It's not Temple's. It's mine. And we're a lot harsher than they are in Temple, Texas.

Non-Jury Docket
February 25, 2014

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.  Thank you.

MS. JONES:  Thanks, Judge.

THE COURT:  Thank you.

MS. JONES:  May I be excused?

THE COURT:  You may.

The waiver of arraignment in 2014-19, Bradley Whitten, is approved.  Reset for pretrial.

MR. SCHARMEN:  Are we excused, Judge?

THE COURT:  Yes.  Thank you.

MR. SCHARMEN:  Thank you, Judge.

THE COURT:  Any announcements?

MS. BASCON:  Your Honor, on the civil matter, 2013-1144, we've reached an agreement.

THE COURT:  Yeah.  You may approach.

*(Ms. Bascon and Mr. Fahle approach.)*

THE COURT:  Okay.  What is the agreement?

MR. FAHLE:  Your Honor, we --

THE COURT:  I assume you want to dictate it into the record.

MR. FAHLE:  Yes, sir.

MS. BASCON:  I think that's a good idea.

THE COURT:  Okay.

MR. FAHLE:  We have agreed to reset the Plaintiff's Motion for Summary Judgment for April 24th, 2014

at 9:00 a.m.

THE COURT: Is that my docket?

MS. BASCON: Yes, sir.

MR. FAHLE: Yes, sir, Your Honor.

The Defendants agree to file and serve their Response to Motion for Summary Judgment by April 24th, 2014 with receipt of the response to Plaintiff's counsel on the 14th. And we've agreed that we will do that by fax and by electronic filing. That way they will have double notice.

THE COURT: Okay.

MR. FAHLE: Plaintiffs further agree that Plaintiffs -- the parties further agree that Plaintiffs are not required to answer outstanding discovery for Plaintiff within 30 days (sic).

MS. BASCON: "Until."

MR. FAHLE: Until 30 days following a ruling by the Court on the Motion for Summary Judgment should the Court deny the Motion for Summary Judgment.

MS. BASCON: And that discovery is the outstanding Request for Production and Request for Disclosure and Interrogatories to all of the Plaintiffs.

THE COURT: Okay.

MR. FAHLE: And that agreement -- that paragraph does not address the Defendants' Request for Abstract.

MS. BASCON: And I will separately respond to

that within a timely matter.

THE COURT: And that's the agreement of both parties?

MS. BASCON: Yes, Your Honor.

THE COURT: Are you going to put it in writing or are you going to rely on dictating it into the record.

MR. FAHLE: We've got it in writing, Your Honor. And we will sign this as a Rule 11 Agreement.

And there is one other. Defendants agree to provide Plaintiffs' counsel contact information they have for Arthur Cronenberg (phonetic) who is a potential witness in this case by -- can we have one second, Your Honor?

THE COURT: You may.

*(Sotto voce discussion between attorneys.)*

MR. FAHLE: By March 6th, Your Honor.

THE COURT: Okay.

MR. FAHLE: And one last thing. And we have not discussed this, but let me just clarify. This says "Should the Court deny the Motion for Summary Judgment, then they will -- then they will provide discovery." Even if the Court grants the Motion for Summary Judgment, we contend that that is not dispositive of the entire case. This is actually a Motion for Partial Summary Judgment.

MS. BASCON: I would agree that there would still be an issue as to how much money I would be entitled to.

(Laughter.)

MS. BASCON: If he grants the Motion for Summary Judgment, I don't see the purpose of needing to answer the discovery. That was our agreement.

MR. FAHLE: Well, what I'm -- what I'm saying is if -- if he grants the Motion for Summary Judgment but that doesn't dispose of all of the issues in the case --

THE COURT: Are you still reserving the right to object to that discovery within 30 days?

MS. BASCON: I filed objections already, Your Honor.

THE COURT: Well, then we can -- if she doesn't provide it in 30 days, we can set it for a hearing to see whether it's necessary or not.

MS. BASCON: Okay.

MR. FAHLE: Thank you, Your Honor.

THE COURT: Okay.

MS. BASCON: Sure.

THE COURT: And that will be part of the Rule 11. And I don't mean to dictate terms. Are y'all in agreement with that?

MS. BASCON: That's fine.

MR. FAHLE: Yes, Your Honor.

THE COURT: Okay. Then that is the Rule 11. It's approved by the Court. You've represented you're going

to put it in writing. You may do so. But the record is the record. And make sure you've talked to Savanah to get on my April 24th docket.

MS. BASCON: We have done that already.

THE COURT: Okay. Thank you.

MS. BASCON: Thanks, Your Honor. May we be excused?

THE COURT: You may.

MR. FAHLE: Thank you, Your Honor.

THE COURT: Okay. Any announcements? Anybody that came in late? There being none, we will take a short break. We will contact those attorneys that I had said we were going to contact.

And I will ask my staff or bailiffs to let me know if we have anything ready and we'll come out and do it all again.

THE BAILIFF: Yes, Your Honor.

THE COURT: Short recess.

*(Recess.)*

THE COURT: Okay. A little housekeeping. Off of my civil docket, the only matter was the Dove matter. And they did call with an agreed pass, so the civil docket is complete.

Criminal docket. Let me just run through and see what we've got.

Non-Jury Docket
February 25, 2014

Mr. Darwin here yet?

THE BAILIFF:  No, Your Honor.

THE COURT:  Mr. Dwyer here yet?

MR. DWYER:  I'm here, Your Honor.  We're ready.

THE COURT:  Thank you.

Mr. Strickland here yet?

MR. DEL CUETO:  I'm here for Mr. Strickland.  I'm Andrew del Cueto, Your Honor.

THE COURT:  If you will approach.

*(Mr. del Cueto approaches.)*

THE COURT:  It's my understanding that you represent Mr. Stahmann in the underlying offense.

MR. DEL CUETO:  Yes, Your Honor.  I believe my office will be faxing a motion of retained counsel for the MTR as well.

THE COURT:  Well, can you not just hand write something that says you will be representing him on that so we'll --

MR. DEL CUETO:  Sure, Judge.  If I get a piece of paper I sure can.

THE COURT:  Are you going to do anything on these cases today?

MR. DEL CUETO:  I can't, Judge.  This is the first day I got the police reports and I believe there's a DVD or video.

RICHARD E. ROBERTS, JR., CSR
(830) 228-4634

Non-Jury Docket
February 25, 2014

THE COURT: What I'm going to do is subject to your appearance today, I will reset 2011-31, the motion to adjudicate, and 2013-409 to the -- that will be on the pretrial docket. It will be on my docket because of the motion to adjudicate.

Get me an appearance of counsel, handwritten, with bar number, phone number, et cetera, so we can get you into the computer and you will get resets on potential.

MR. DEL CUETO: Thank you, Your Honor.

THE COURT: Thank you.

MR. DEL CUETO: After that, may I be excused?

THE COURT: You may.

MR. DEL CUETO: Thank you, Judge.

THE COURT: Martinez is ready; is that correct?

MR. MCCRARY: Yes, sir. And that's the hearing.

THE COURT: Wilson. Are we going to do anything additional on Brian Wilson?

MS. MENDEZ: Yes, Your Honor. My client has had a change of heart and I believe we will enter a plea.

THE COURT: Okay. And do a recommended --

MR. MCCRARY: Yes, sir.

MS. MENDEZ: Yes, sir.

THE COURT: Is it ready?

MR. McCRARY: Yes, sir.

THE COURT: Okay. Thank you.

Go ahead and bring out Brian Wilson. I will take that up first.

Then Castilleja, Mr. Rodriguez.

MR. RODRIGUEZ: Judge, we came to an agreement on that matter, so it will be a plea today.

THE COURT: Plea today. Is it paper ready yet?

MR. RODRIGUEZ: Yes, sir.

THE COURT: Thank you. And that's both cases will be resolved one way or the other?

MR. RODRIGUEZ: Yes, sir.

THE COURT: Thank you.

Robinson?

MR. COLLINS: It's ready, Your Honor.

THE COURT: Thank you.

Did Ms. Chelkowski get here?

MR. McCRARY: Yes, sir. I saw her.

THE COURT: Okay. So she's conferring somewhere?

MR. McCRARY: I don't know where she went, but I talked to her.

THE CLERK: Yes, sir.

THE BAILIFF: She's in the back, Your Honor.

THE COURT: Okay. That's with Mr. Moreno.

And then Cruz, Ms. Wigington?

MR. McCRARY: It's going to be a plea. She has

the paperwork. I assume she's in the back talking to him.

THE COURT: Thank you.

Did Jessica Marie Lindig ever get here?

THE BAILIFF: No, Your Honor.

THE COURT: Has that name been called?

THE BAILIFF: Yes, it has, Your Honor, at 10:13 a.m., three times. There was no response.

THE COURT: Issue a warrant, forfeit the bond. And I will take judicial notice of your certification and announcement in open court.

It's my understanding that Ms. Hart failed her UA. Has she been given an application for court-appointed attorney?

THE CLERK: No, sir.

THE COURT: Somebody give her an application for court-appointed attorney. She's not going to be able to make any money under those circumstances. And I will look at that and get her counsel. We will reset that matter for pretrial after I have reviewed and appointed her counsel.

And last but not least is Carolyn Carnes.

MR. RODRIGUEZ: Judge, I've conferred with the State. We have agreed to reset that matter to March 13th, which I think is your next document.

THE COURT: Reset to March 13th. Thank you.

Okay. Brian Wilson 201-1631.

MR. McCRARY:  You skipped one case in there somewhere.

THE COURT:  Oh, I did?  What did I skip?

MR. GRAHAM:  Chenoweth, Your Honor.  Chelsie Chenoweth is a plea.  The paperwork is ready on that one.

THE COURT:  Oh, I'm sorry.  I did.  I thought we were just going to do a waiver of arraignment.  But it is ready and we're going to resolve that today?

MR. GRAHAM:  That's correct, Your Honor.

THE COURT:  Thank you.

Raise your right hand.

*(Defendant present and sworn.)*

THE COURT:  Okay.  And you are Brian Gerard Wilson?

THE DEFENDANT:  Correct, sir.

THE COURT:  The first document we're going to go over is the Trial Court Certification Regarding Defendant's Right to Appeal.  Your signature on this document?

THE DEFENDANT:  Correct, sir.

THE COURT:  And you have marked that you have waived your right to appeal.  You do understand in marking that that, first of all, if you plead true to any of the allegations in the State's motion and I punish you within the appropriate range of punishment, you will have waived your rights to appeal?

THE DEFENDANT:  Correct, sir.

THE COURT:  And you also understand that there may be a recommendation from the State, but I'm not obligated to follow that recommendation.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.  I'm looking at a motion to revoke, dated November 22nd.  Is that the active motion?

MS. MENDEZ:  Yes.

MR. McCRARY:  November 22nd, 2013.  Yes, sir, Your Honor.

THE COURT:  Do you waive -- well, first of all I'm going to approve the Trial Court Certification Regarding Rights to Appeal.  I would ask one thing.

May I write that you are currently, as your address, the Comal County jail?

THE DEFENDANT:  That's correct, sir.

THE COURT:  I will give your counsel and counsel's copy to counsel.

Generally speaking, you are currently on supervision for failure to comply, five years.  That's a third degree felony; is that correct?

MR. McCRARY:  State jail.

THE COURT:  State jail.  So we've got up to two years in a state jail and everything less than that.

The allegations are, generally speaking, moved

and failed to report to the San Antonio Police Department within the statutory time. You've apparently moved twice and didn't report. So the first four are reporting violations -- or registration violations?

THE DEFENDANT: Yes, sir.

THE COURT: And then intentionally and knowingly threatened Chancy Wilson with imminent bodily injury; and then failed to report to probation; change of residence and didn't give notice as required, two allegations of that; failure to pay; failure to pay; and failure to complete CSR hours.

How do you plead to the allegations in the State's motion, true or not true?

THE DEFENDANT: Well, as I said before, I wouldn't refute the statement, sir. I can't --

THE REPORTER: I'm sorry. Repeat that.

THE DEFENDANT: I said I wouldn't refute the statements, sir.

THE COURT: Are they true or not true? If you say false or not true, then we'll have a hearing and the State could prove them up. And then we can proceed at that point and obviously any recommendation --

THE DEFENDANT: No, sir.

THE COURT: -- I'm sure will be off the table.

THE DEFENDANT: No, sir. No, sir. No, sir. No, sir.

THE COURT: True or not true?

THE DEFENDANT: All true, sir.

THE COURT: Does the State have a recommendation in exchange for the plea of true?

MR. McCRARY: Basically that he get 18 months state jail and a $500 fine.

THE COURT: Was that the original fine?

MR. McCRARY: That's the original sentence, quite honestly. I'm not making him any kind of deal other than it won't be stacked.

THE COURT: Okay. Then I do hereby revoke your probation and sentence you to 18 months in a state jail facility and give you credit for time served as allowed under the rules and laws of this state.

THE DEFENDANT: Yes, sir.

THE COURT: Any and all unpaid fines, fees, restitution, et cetera, will be remain due and owing.

Good luck, sir.

Thank you, Counsel.

THE DEFENDANT: Remain due and owing, sir? Remain -- I'm confused, sir. I don't want to be confused, sir.

THE COURT: When you originally were found guilty --

THE DEFENDANT: Yes, sir.

Non-Jury Docket
February 25, 2014

THE COURT: -- there was a fine.

THE DEFENDANT: Yes, sir.

THE COURT: There was court costs.

THE DEFENDANT: Yes, sir.

THE COURT: There may have been restitution.

THE DEFENDANT: Yes, sir.

THE COURT: I don't know.

THE DEFENDANT: Yes, sir.

THE COURT: And if you haven't paid them --

THE DEFENDANT: Yes, sir.

THE COURT: -- they will remain due and owing. You've still got to pay them.

THE DEFENDANT: Yes, sir.

THE COURT: Okay. Thank you.

THE DEFENDANT: Yes, sir.

THE COURT: Next will be 2013-282, Camille Sauls.

The next custody case is Jerryl Robinson. If you will get him ready.

(Defendant present.)

THE COURT: Okay. Ms. Sauls, it's a four-year deferred adjudication; a $1,000 fine; $140 restitution; 200 hours community service restitution.

Did you bring your court costs today?

THE DEFENDANT: Yes, sir.

RICHARD E. ROBERTS, JR., CSR
(830) 228-4634

THE COURT: Let's get those paid.

The conditions of probation recommended are fairly standard for this kind of offense, including intensive outpatient. Any further discussion?

Then we'll defer adjudication for four years. Pay your court costs. I'll assess $140 restitution, a $1,000 fine, 200 hours community service restitution, and follow the recommendations in the supervision plan as the conditions of probation.

Don't leave until you've been excused by the probation department.

Thank you, counsel.

MR. DWYER: Thank you.

THE COURT: Now you can go back to campaigning.

MR. DWYER: Yes, sir.

MS. WIGINGTON: Your Honor, I wanted to let you know we also have Rick Anthony Cruz that's going to be signing here and he will be ready. He's in custody as well.

THE COURT: Is it paper ready now?

MS. WIGINGTON: I'm letting them have it to take it to him to sign now.

THE COURT: Thank you. I will mark it as ready under those circumstances.

(Defendant present.)

THE COURT: Mr. Robinson?

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.

*(Pause.)*

THE COURT:  Okay.  It's your motion, Counsel.  I have read it.  Tell me why I should sever these counts.

MR. COLLINS:  Your Honor, what we have here is Mr. Robinson is charged under indictment in this case on two counts.  Count 1 is theft greater than $15,000 (sic), less than $20,000.

THE COURT:  It's $1,500.  But go ahead.

MR. COLLINS:  $1,500 and less than $20,000, which is a state jail enhanced to a second degree.  Count Two he's charged with theft less than $1,500 with two or more prior theft convictions.  That's enhanced as well, so it's a second degree.  So both are second degrees.

What it is -- the issue we have here is count -- it's two value differences.  What we're arguing is that Count 1 is greater than $1,500, less than $20,000; and Count 2 is less than $1,500.  That's two separate charges.

THE COURT:  On the same day with the same victim?

MR. COLLINS:  Same date.  Same victim.

MR. McCRARY:  The same offense.

MR. COLLINS:  The same items, but two different values are being charged.  We've got a box of 36 cartons of

cigarettes apparently it's -- supposedly it's greater than $1,500, less than $20,000; and at the same time it's less than $1,500. We have two counts. Two charges.

THE COURT: It's the same cigarettes?

MR. McCRARY: The same cigarettes.

THE COURT: Doesn't the State have to elect which one -- what the value is?

MR. McCRARY: No, sir, I don't.

THE COURT: You can go --

MR. MCCRARY: I can charge in the alternative and get him either way.

MR. COLLINS: And again we go back to: If he's charged in the alternative, Judge, we're saying that there's two -- two counts are two separate offenses and that's why we're asking to sever under 3.04, Texas Penal Code.

MR. McCRARY: And therein lies the gravamen of this. And, quite honestly, there's benefits to me either, so I'm really not taking a real strong position either way. Because it's one of two things: Either they're separate offenses, which if they are, under 3.04 he's entitled to sever. That's what the Code says.

If they're alternative means of committing one offense, then he's not entitled to sever them. And I don't have to elect. I don't have to do anything. The jury will be told, you know: If you believe this one or this one, you find

him guilty.  It's alternative means of committing a single crime.

So basically what you have is a unit of prosecution case, Your Honor.  And, quite honestly, I have done the research.  There is not a case out there that says whether theft with two priors is a separate statutory offense from theft over $1,500 if you could break it down.

However what there is is a couple of Court of Criminal Appeals' cases that discuss the gravamen of theft.  And it's kind of what you were hitting upon.  They said it's a taking of a particular item of property from a particular person.  So if you have like say a Jeep stolen and there's two owners -- let's say we're joint owners of it.  It's one theft.  They've actually addressed that.

On the other hand if you steal two Jeeps, your jeep and my jeep, it's two thefts.  You can aggregate, but the State doesn't have to.  They've specifically addressed that.  They've said the State could break that into two offenses.  So for each separate item with a different owner for that item, you can break it down.

Looking at those cases, based on the way they've written them, it seems to indicate the gravamen and the way it is with the one item and one owner you probably only have one offense.  There is an argument to be made though there's different elements because one requires two priors and the

other one has a different value.

The benefit to me if they're basically alternative means of committing the same offense is I get to go at him two ways at once. On the other hand if he's right and he's entitled to sever them and they're separate offenses, I get to try him twice and try to get 20 years stacked on him for two different offenses. So that's why I'm not particularly offended by either idea.

But at the end of the day the question is what the law requires. And this case out of Amarillo specifically addresses that if they're not separate offenses, he's not entitled to sever. It cites back to a Court of Criminal Appeals case. And then these cases, Your Honor, all out of -- well, there's one out of El Paso and two or three out of the Court of Criminal Appeals that all talk about what the gravamen of theft is. You might want to review those.

My main concern, whichever way you go, is that it's right. Because if he's right and they're severed and he's taking this position and I try him on one, even if he wins and I get a not guilty I get to turn around and try him on the second if they're separate offenses. So --

MR. COLLINS: And, Your Honor, we also have the issue too that for Count 2 you have to show the two or more prior offenses, which then we're going to run into an issue as far as 404(b) of the Rules of Evidence that is character

evidence that could come into play with Count 1, which would be inadmissible.

THE COURT: And hard to fix with an instruction.

Well, logic says that it's one act, but I think your last argument makes the point. I don't know how you try both of them when you have that separate element. One is a prior convictions 404(b) problem and, one, it's an element in the case. And I don't know how you separate that.

MR. COLLINS: That bell is hard to be unrung, Your Honor, once it has.

THE COURT: No.

MR. McCRARY: But that is ultimately not the question. The question is unit of prosecution. Is it one offense or two? All this bell unrung stuff has really nothing to do with it.

THE COURT: Well, except it's separate elements as you stated in your argument. It's separate elements and therefore it can be two.

MR. McCRARY: I would just ask the Court to look at the case law because, when I first did it, I was going at it as if they were going to be separate offense. That was kind of my thought. I would have two different offenses on him because of the separate elements. Reading the case law I'm not sure that's the case.

But it needs to be right either way because if

he's going to take this position, I'm telling him straight up he's going to get tried twice. You can't have it both ways. You can't say they're separate offenses and make me pick one and then me not get my shot at the second one.

THE COURT: I understand.

And you understand that, too, Counsel?

MR. COLLINS: I do, Your Honor. And we're looking at, too, the value as one thing and then we're going to try a second one and now we're coming back and saying the value is separate. It's one or the other. Again, we're back to: What is it? What was stolen and what is the value?

THE COURT: Well, let me read the cases. Obviously I want to be right, too. I don't want to try it four times.

MR. McCRARY: There is a Court of Criminal Appeals' case, in particular. And it's not amongst those I gave you. But it's fairly recent. And what they did is they indicted a guy for burglary of a habitation and they alleged with intent to commit a felony offense like sexual assault. I think while in the house the guy also took something, so they also did a theft. One is a first degree felony; and, as you know, the other is a second degree. He was tried on both and convicted on both.

He went to the Court of Criminal Appeals and the State's argument was different elements: One is you commit

theft, the other is you had the intent to commit a sexual assault. The Court of Criminal Appeals said the gravamen of that offense is the entry into the house: one crime, one conviction. And so --

THE COURT: And the gravamen here is the taking of the cigarettes.

MR. MCCRARY: And that's where I think the problem comes in. That's why I'm not so sure that it's separate offenses.

MR. COLLINS: And again, if we go back to the paragraphs, they're separate counts with separate elements that are -- again we have different --

THE COURT: Do you have any cases other than these that --

MR. COLLINS: No, Judge. That's what I have is the severing. Again, we're back to arguing that it's separate offenses.

THE COURT: This is set on my March 17th jury docket?

MR. McCRARY: Yes, sir.

MR. COLLINS: Yes, sir.

THE COURT: I will take these cases and do a little research. I will get back to you as quickly as I can.

MR. McCRARY: Thank you, Your Honor.

THE COURT: I'm going to take this file with me.

THE CLERK: Yes, sir.

THE COURT: Okay. Thank you. I'm going to -- the indictment is in the file, Counsel. I'm going to give you back what you gave to me.

MR. COLLINS: Thank you, Judge.

THE COURT: It's also attached to your motion I noticed, so I have the file.

MR. COLLINS: Thank you.

THE COURT: Okay.

MR. McCRARY: There's not a clearcut answer or I would have given it to you.

THE COURT: That's true. I can always rely on that, especially when it's in your favor.

MR. MCCRARY: Well, it's in my favor either way, Your Honor. Just pick which way you want to go about it.

THE COURT: That is interesting on both sides, though.

MR. McCRARY: It's going to end badly one way or the other.

MS. CHELKOWSKI: Judge, can we approach?

I have John Moreno. I talked to Mr. McCrary about it. He has a drug court interview on Friday, so we would like to see about resetting the case so that way he can get that interview completed.

THE COURT: 2013-358, John Moreno, reset for

pretrial.

MS. CHELKOWSKI: Thank you, Judge.

THE COURT: Thank you.

MS. CHELKOWSKI: May I be excused?

THE COURT: You may.

The last custody case I'll take before -- or the last case I will take before we start the contested hearing is Rick Anthony Cruz, 2014-16 and 2014-17.

I've got a punishment in Lopez still pending. I've got Martinez we're about to start.

MR. CANTRELL: Ready, Your Honor.

THE COURT: Oh, there you are.

Castilleja is ready also, but I'm going to go ahead and start the contested hearing. I need to get that started. They've been ready since 10:30.

So I'll do Cruz and then we'll start the hearing and then we'll see what we've got.

MR. GRAHAM: You're Honor, if the Court can take up the -- Ms. Chenoweth as well?

THE COURT: Eventually. It's not a custody case. I have a custody case that's ready.

MR. GRAHAM: Okay.

THE COURT: How long is that going to take? It's already ten after 11:00.

MR. McCRARY: I don't think it will take too

long.

THE COURT:  Well, I'll tell you what.  I'm going to reset -- for those counsel that weren't here at 9:00, Lopez will be reset for 1:15.

I'm going to do Martinez.

Castilleja.  I know you were here, Mr. Rodriguez, but I've got to get this other one done.  Reset for 1:15.

Chenoweth will be reset for 1:15 this afternoon.

The other Castilleja will be at 1:15.

And for Hart all I need is an application for court-appointed attorney.

*(At this time the contested Motion to Revoke in Benito Martinez, III was heard until 12:02 p.m. and then a recess for lunch.)*

THE COURT:  Lopez?

MR. DARWIN:  Ready.

THE COURT:  Page 2 is done.  Page 3 is done.

Castilleja?

MR. RODRIGUEZ:  Ready, Judge.

THE COURT:  Both cases ready.

And Chenoweth?

THE DEFENDANT:  I'm here.

THE BAILIFF:  Mr. Graham hasn't come back yet, Your Honor.

THE COURT: Okay. Cruz we did.

And Castilleja.

Okay. None of those are custody cases, correct?

MR. RODRIGUEZ: Yes. Castilleja is.

THE COURT: Well, then let's do Felix Castilleja, 2013-216 and 2014-27.

*(Discussion off the record and defendant present.)*

THE COURT: Mr. Castilleja, if you will raise your right hand.

*(Defendant sworn.)*

THE COURT: Okay. And you are Felix Castilleja?

THE DEFENDANT: Yes, sir.

THE COURT: And the same Mr. Castilleja that was indicted in -- we're going to do the plea in which one, 2013 --

MR. RODRIGUEZ: The newer cause number.

THE COURT: Going to plea in 2014-27. And that's you?

THE DEFENDANT: Yes.

THE COURT: Okay. And part of the plea, if I heard correctly, was to dismiss the 2013 case?

MR. RODRIGUEZ: Yes, sir.

THE COURT: Okay. I will just put that over here. We're not going get to those yet.

We're going to go over some documents. The first document is entitled acknowledgment of discovery and compliance regarding discovery. It's got a longer name than that. Is this your signature on this document?

THE DEFENDANT: Yes, sir.

THE COURT: Does that signature represent to the Court you read and understood this document?

THE DEFENDANT: Yes, sir.

THE COURT: And Counsel, you had ample opportunity to review the State's file and you're comfortable that you've done all of the discovery you need to do under the new article 39.14?

MR. RODRIGUEZ: Yes, Judge. This is, of course, the new statute. And in this case since it's a bail jumping/failure to appear, the discovery was very minimal and we have gone over it together.

THE COURT: Okay. Brand new form and y'all still put 2013 on it. You need to fix your form.

Okay. So that will be approved. Also in here is a waiver of arraignment. Your signature, Mr. Castilleja?

THE DEFENDANT: Yes, sir.

THE COURT: Does that signature represent to the Court you read and understood this document?

THE DEFENDANT: Yes, sir.

THE COURT: And you understand, since this is

your first setting, that you and your attorney could have had at least ten days to prepare for trial?

THE DEFENDANT: Yes, sir.

THE COURT: And you're comfortable going forward today with this plea?

THE DEFENDANT: Yes, sir.

THE COURT: And Counsel, you're waiving your rights to ten days to prepare and you've seen all of the discovery and you understand all of the facts and you believe this is an appropriate, fair and just way to proceed?

MR. RODRIGUEZ: Yes, Judge. I'm waiving the ten days.

THE COURT: Okay. Next is an appointment of an attorney. You've represented Mr. Castilleja in the 2013 case; is that correct?

MR. RODRIGUEZ: The whole time, correct.

THE COURT: Okay. And so we're just appointing you based upon the fact that he's still in jail and his financial position hasn't changed. And the Court will approve the appointment of you to the 2014 case.

The next document is Trial Court Certification of Defendant's Right to Appeal. I need to make two changes to this document and I want to make sure you approve of it. This is a plea bargain case. If you plead guilty and I follow the plea, you will be waiving your right to appeal. So may I

269

check that box?

THE DEFENDANT:  Yes, sir.

THE COURT:  And then as far as the address goes, may I just put in Comal County jail?

THE DEFENDANT:  Yes, sir.

THE COURT:  Your signature on this document?

THE DEFENDANT:  Yes, sir.

THE COURT:  And does that signature represent to the Court you understood this document and approve the two changes I made?

THE DEFENDANT:  Yes, sir.

THE COURT:  I will approve that and give counsel your copy and his copy.

MR. RODRIGUEZ:  Thank you, Judge.

THE COURT:  Next document is entitled admonishments, voluntary statements and plea bargain agreement.  Your initials on Page 1?

THE DEFENDANT:  Yes, sir.

THE COURT:  Two?

THE DEFENDANT:  Yes, sir.

THE COURT:  Three?

THE DEFENDANT:  Yes, sir.

THE COURT:  Four?

THE DEFENDANT:  Yes, sir.

THE COURT:  Five?

THE DEFENDANT:  Yes, sir.

THE COURT:  And your initials on signature on Page 6?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do those initials and signatures on this document represent to the Court that you fully read it and fully understood it?

THE DEFENDANT:  Yes, sir.

THE COURT:  Are you a citizen of the United States of America.

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you understand that you have a Constitutional right to a trial by jury?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you understand that you have a Constitutional right to confront the witnesses against you?

THE DEFENDANT:  Yes, sir.

THE COURT:  Are you willing to waive those two rights for the purpose of entering into this negotiated plea agreement?

THE DEFENDANT:  Yes, sir.

THE COURT:  You're going to be pleading guilty to a third degree felony, which has a range of punishment of not more than ten years or less than two years in a Texas penitentiary and a fine not to exceed $10,000.  Do you

understand that range of punishment?

THE DEFENDANT: Yes, sir.

THE COURT: The plea agreement will speak for itself as written, but generally speaking it is eight years in the penitentiary, a $2,000 fine, and the State will dismiss 2013-216. What was the indictment in that case?

MS. RANKIN: Ag assault, deadly weapon.

THE COURT: Is that everybody's understanding of the agreement?

MS. RANKIN: Yes, Your Honor.

THE COURT: Yours, sir?

THE DEFENDANT: Yes.

MR. RODRIGUEZ: Yes, sir.

THE COURT: You understand I'm not obligated to follow this agreement?

THE DEFENDANT: Yes, sir.

THE COURT: If I choose not to follow this agreement, I will allow you to withdraw the plea of guilty I anticipate receiving from you today.

If you do plead guilty and I do follow the agreement, do you understand that you will have waived any and all rights to appeal, including your right to bring a Motion for New Trial before this court?

THE DEFENDANT: Yes, sir.

THE COURT: Counsel, is it your opinion your

client is competent to stand trial?

MR. RODRIGUEZ: Yes.

THE COURT: Then based upon this negotiated plea agreement, how do you plead, sir?

THE DEFENDANT: On that bail jumping?

THE COURT: On the bail jumping.

THE DEFENDANT: I'm -- I plead guilty.

THE COURT: Are you pleading guilty because you are guilty and for no other reason?

THE DEFENDANT: Yes, sir.

THE COURT: State's evidence.

MS. RANKIN: The State offers State's Exhibit 1, the plea bargain paperwork; State's Exhibit 2 in compliance with the new rules; and State's Exhibit 3 into evidence.

MR. RODRIGUEZ: No objections to those.

THE COURT: And 2 was what we went over earlier?

MR. RODRIGUEZ: Yes, sir.

THE COURT: 1, 2 and 3 are admitted.

Is there any reason for a presentence investigation in this case?

MS. RANKIN: No, Your Honor.

THE COURT: Then I do hereby find you guilty and sentence you to eight years in the Texas Department of Criminal Justice, Institutional Division, and give you credit for time served as allowed under the rules and laws of this

state.

Is it a $2,000 fine?  Is that what it was?

MS. RANKIN:  That's correct.

MR. RODRIGUEZ:  Yes, sir.

THE COURT:  Assess a $2,000 fine, court costs, Crime Stopper's fees, and reimbursement of court-appointed attorney's fees.

Is there anything additional?

MR. RODRIGUEZ:  No, sir.

MS. RANKIN:  Nothing from the State.

THE COURT:  Good luck, sir.

Thank you, Counsel.

And you're going to get me a dismissal in the 2014 case?

MS. RANKIN:  In the 2013 case.

MR. RODRIGUEZ:  The 2013 case.

THE COURT:  I'm sorry.  In the 2013 case.

MS. RANKIN:  Yes, sir.

THE COURT:  Okay.  2013-227, Gilbert Lopez for punishment.

*(Defendant present.)*

THE COURT:  Okay.  Here on a state jail possession case.  The agreement was two years in the penitentiary -- or in a state jail facility, probated for five; $1,500 fine; $140 restitution; 250 hours of community

service restitution; and court costs.

Did you bring your court costs?

THE DEFENDANT: No, sir.

THE COURT: That was part of the deal, wasn't it? Yeah. If you go back and look, it says you will bring it at the time of punishment. How are we going to deal with that?

MR. DARWIN: Well, Judge, he's -- I think it will probably be better if he could explain. Mr. Lopez can explain what happened recently.

THE DEFENDANT: I recently lost my aunt and my brother went under triple --

THE COURT: Bypass?

THE DEFENDANT: -- bypass. And the money I have been trying to save, I have been using it to fund my trips back and forth.

THE COURT: Okay. Well, then we'll give some time to pay court costs on this.

Are you employed now?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. We'll set up a schedule then under those circumstances where you can get it paid.

THE DEFENDANT: Thank you.

THE COURT: And I'm sorry you're having to deal with all of that. How did the surgery go? Everything good?

THE DEFENDANT: Yeah. He's just got to go to dialysis now for the rest of his life. But he's alive, so --

THE COURT: Yeah. I was going to say it beats the hell out of the alternative.

THE DEFENDANT: Yeah.

THE COURT: Okay. Well, I'm glad to hear that.

In the conditions we've got drug school, intensive outpatient and $140 restitution if I didn't say that.

So I will find you guilty and sentence you to two years in a state jail facility, probate it for five years; $1,500 fine; $140 restitution; 250 hours community service restitution; as well as all the other conditions of probation recommended in the supervision plan. And will give him a little bit of time, probably not more than 90 days, to get his court costs paid. Okay?

Don't leave until you've been excused by the probation department.

THE DEFENDANT: Thank you, Your Honor.

THE COURT: Thank you.

MR. DARWIN: Here's that, Judge.

THE COURT: Thank you.

MR. DARWIN: May I be excused, Your Honor?

THE COURT: You may. Thank you.

MR. DARWIN: Thank you. See you tomorrow.

Non-Jury Docket
February 25, 2014

THE COURT:  You going to see me in Guadalupe County?

MR. DARWIN:  Yes, sir.

THE COURT:  Can't wait.

*(At the Bench, on the record.)*

THE COURT:  Christopher Graham has been moved off of our court-appointed list?

THE BAILIFF:  Yes, Your Honor.  He has a tendency to do this kind of thing a lot.

*(End of Bench discussion.)*

THE COURT:  Ms. Chenoweth, we're going to reset your case.  I was clear.  He was to be here at 1:15.  I will get your attorney's attention and I will do that before I leave the courthouse today.  Thank you.  You're excused.

THE DEFENDANT:  Okay.  Thank you.

THE COURT:  We're in recess.

*(Recess.)*

RICHARD E. ROBERTS, JR., CSR
(830) 228-4634

STATE OF TEXAS

COUNTY OF COMAL

I, RICHARD E. ROBERTS, JR., Official Court Reporter in and for the 274th District Court of Comal County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

WITNESS MY OFFICIAL HAND on this, the 31st day of March, 2014.

/s/ Richard E. Roberts, Jr.

RICHARD E. ROBERTS, JR., CSR
Texas CSR 5411
Official Court Reporter
274th District Court
P.O. Box 311905
New Braunfels, Texas 78131-1905
Expiration: 12/31/14

REPORTER'S RECORD
VOLUME 2 OF 2 VOLUMES
274th JUDICIAL DISTRICT COURT

_____

NON-JURY DOCKET

_____

On the 13th day of March, 2014, the following proceedings came on to be held in the above-titled and numbered cause before the Honorable Gary L. Steel, Judge Presiding, held in New Braunfels, Comal County, Texas.

Proceedings reported by computerized stenotype machine.

RICHARD E. ROBERTS, JR., CSR
(830) 228-4634

VOLUME 2

Non-Jury Docket

March 13, 2014

PAGE VOL.

Excerpts of CR2013-366 ...........................3    2

Reporter's Certificate ..........................10    2

P R O C E E D I N G S

*(Beginning of requested excerpt)*

THE COURT:  2013-366, Chelsie Chenoweth.

THE DEFENDANT:  Present.

THE COURT:  Your attorney is Christopher Graham?

THE DEFENDANT:  Yes, sir.

THE COURT:  Let me see that file.

MS. MAURER:  Your Honor, his office called.  An attorney by the name of James Lacy is going to show up and is going to be late.  This is one we have a show cause on.

THE COURT:  I know.

MR. HEARRELL:  There's another docket sheet, I believe.

THE COURT:  Is your attorney retained or appointed?

THE DEFENDANT:  Appointed.

THE COURT:  Mr. Graham is appointed?

THE DEFENDANT:  Uh-huh.

THE COURT:  Stay put.

*(End of requested excerpt)*

*(Beginning of requested excerpt)*

THE COURT:  2013-366.  Is this a probation show cause?

MS. MAURER:  That's your show cause.

THE COURT:  Oh, that's my show cause for

Excerpts of CR2013-366
March 13, 2014

Christopher Graham. Has anybody from his office gotten here yet? It's my understanding he's filed a Motion for Continuance. It's somewhere. I have been told he's filed a Motion for Continuance.

MR. MCCRARY: I've seen it. It exists.

THE CLERK: Yeah. Well, I don't think he filed --

THE COURT: That's mine.

THE CLERK: It's for the show cause.

MR. MCCRARY: It's within it somewhere.

THE CLERK: Oh, is it?

MR. MCCRARY: Yeah.

THE COURT: Here's what I'm going to do on my show cause. I'm going to ask for a visiting judge to hear the show cause. And I would like to ask the district attorney if you would be willing to represent the Court in the show cause against Mr. Graham. Talk to your boss and see whether you're willing to do that for me or not.

And I'm going to instruct the court reporter on the date of his failure to appear at 9:00 and return at 1:15, to assist the visiting judge as well as the State if they choose -- and I think you have the right to opt out if you want to. But I would ask you to please -- I've never done that, but I'd ask you to represent the Court on the show cause.

What's the date of my show cause for his failure to appear?  It's an unsworn declaration on his Motion for Continuance.  I will let a visiting judge deal with all of this.

It was my last date.  You can find it, Rick.

THE REPORTER:  Yes, sir.

THE COURT:  I would like you to prepare a sworn transcript on the docket call as well as when we broke for lunch when I called the three cases that were left and informed them to be back here at 1:15 and anytime that I called that case and he wasn't here and the times he was here.

He showed up late and then he disappeared.  We had court and reconvened, if I remember, at 1:15 or very close thereto; dealt with the other cases; and then left and he wasn't here.  He may have shown up later.

I will inform the D.A.:  If you're going to do this, I think he did show up later and spoke to -- is that -- to Nick?

THE BAILIFF:  Yes, Your Honor.

THE COURT:  He spoke to my bailiff quite rudely I understand, but I will let you deal with that.  And I will need to get a request for a visiting judge to hear the contempt.  I will need to send out another notice to him on the show cause.

And I'd like the D.A. to report back to me on

RICHARD E. ROBERTS, JR., CSR
(830) 228-4634

whether you're going to represent me in that case or not.

MR. McCRARY: I will talk to the boss.

THE COURT: Ms. Chenoweth, who is coming over from his office?

THE DEFENDANT: I don't know.

THE COURT: You don't know?

THE DEFENDANT: No, sir.

THE COURT: When your attorney gets here tell him I'd like to talk to him.

THE DEFENDANT: I don't even know if he's coming. I haven't talked to him at all since the day I -- when I came back after lunch and he never showed up.

THE COURT: Do we have any kind of Motion for Continuance for the pretrial today? I've not been shown one.

MS. MAURER: I haven't seen it.

THE COURT: Then issue him a show cause for not being here at 9:00 today, also, with the same visiting judge.

I'll ask y'all to represent me in that one, also.

THE REPORTER: Do you want this portion, also?

THE COURT: Pardon me?

THE REPORTER: Do you want this portion, also?

THE COURT: Yes, I do.

Ms. Chenoweth, if you will approach.

*(Ms. Chenoweth approaches.)*

THE COURT: You were appointed Mr. Graham; is that correct?

THE DEFENDANT: Uh-huh.

THE COURT: He's been removed from our court-appointed list. I'm going to substitute a new attorney for you. Don't leave until you find out who that is.

THE DEFENDANT: Okay.

THE COURT: And then once we find out who that is, if they're here I will let you confer with them and we'll give them a reset. If it's somebody that's not here today, then I will excuse you and you'll get new notice through the new counsel.

THE DEFENDANT: Okay.

MR. MCCRARY: Just for the record, can we be sure she doesn't have any objection to that, Your Honor?

THE COURT: Do you have any objections to that?

THE DEFENDANT: No.

THE COURT: Are you sure?

THE DEFENDANT: Uh-huh.

THE COURT: Okay. And just so we were clear, you're not even sure whether you're going to have counsel here today. Is that what you were telling the Court?

THE DEFENDANT: Uh-huh. I haven't anything from him at all.

THE COURT: Since?

RICHARD E. ROBERTS, JR., CSR
(830) 228-4634

THE DEFENDANT:  Since the last time I had court and he didn't show up after lunch when I came back.

THE COURT:  Okay.  And you don't have any objection to me giving you a new attorney off of our list that's been approved by the Court?

THE DEFENDANT:  No, I don't.

THE COURT:  Please don't leave until we've done that.

THE DEFENDANT:  Okay.

THE COURT:  Get me a substitution of counsel in this case.

MS. MAURER:  Yes, sir.

*(End of requested excerpt)*

*(Beginning of requested excerpt)*

THE COURT:  Let me do that real quick and see who we're missing.  Michael Zamora?

Christopher Graham or anybody from his law office?

*(End of requested excerpt)*

*(Beginning of requested excerpt)*

THE COURT:  I've got Oaks conferring.

We're waiting for Mr. Esman now.

I've got Valdez on a Motion to Suppress.

I'm still looking for Mr. Graham.  I don't think he's going to be here.

RICHARD E. ROBERTS, JR., CSR
(830) 228-4634

I'm waiting for Mr. Peterson to come back on Hart.

I've got Carnes with Mr. Rodriguez as conferring.

Covarrubias with Mr. Darwin that's conferring.

I've got Reyes is ready.

I've got Kuykendall waiting for a State's witness.

Ontiveros conferring.

Zuniga conferring.

*(End of requested excerpt)*

STATE OF TEXAS

COUNTY OF COMAL

I, RICHARD E. ROBERTS, JR., Official Court Reporter in and for the 274th District Court of Comal County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $457.50 and will be paid by Comal County.

WITNESS MY OFFICIAL HAND on this, the 31st day of March, 2014.

/s/ Richard E. Roberts, Jr.

_____

RICHARD E. ROBERTS, JR., CSR
Texas CSR 5411
Official Court Reporter
274th District Court
P.O. Box 311905
New Braunfels, Texas 78131-1905
Expiration:  12/31/14

RICHARD E. ROBERTS, JR., CSR
(830) 228-4634

## 2nd SUPPLEMETAL CLERK'S RECORD
### Volume I of I
Appellant Court Cause No. 03-14-00270-CR
Trial Court Cause No. CR2013-366
In the 207th District Court
Of Comal County, Texas


Judge - Honorable Jack Robison, Judge Presiding
Court Reporter: Mary Scopas

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## IN RE
## CHRISTOPHER GRAHAM

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### Appealed to the Court of Appeals for the Third District of Texas, at Austin, Texas

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Attorney (s) for Appellant (s)


Name:            Mr. Christopher L. Graham
Address:         700 N. St. Mary's Street #1400
                 San Antonio, TX  78205
Telephone No:    210-787-3430
Fax No.:         same as phone number
SBOT No:         24047549
Attorney (s) for:  Christopher L. Graham,  Appellant (s)


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Delivered to the Court of Appeals for the Third District of Texas, at Austin, Texas

On this 21st day of May, 2015

Heather N. Kellar
District Clerk, Comal County, Texas

By: _____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Appellate Court Cause No 03-14-00270-CR


Filed in the Court of Appeals Third District of Texas, at Austin, Texas

This _____ day of _____, 2015

_____, Clerk

By: _____, Deputy

TRANSCRIPT COVER SHEET 2nd SUPPLEMENTAL CLERKS RECORD VOL I OF I          1

INDEX          2

CAPTION          3

APPLICATION FOR WRIT OF HABEAS CORPUS (FILED MAR 19, 2015)          4-8

LETTER FROM CHRISTOPHER L. GRAHAM (FILED APR 27, 2015)          9

MEMO FROM SANDRA MAGGIANI (FILED MAY 13, 2015)          10

DESIGNATION OF MATTERS IN CLERKS RECORD (FILED MAY 19, 2015)          11

BILL OF COST          12

CLERKS CERTIFICATE          13

The State of Texas  { }
County of Comal    { }


In the 207TH   Judicial District of Comal County, Texas, The Honorable, Jack Robison,

Judge Presiding, the following proceedings were held and the following instructions and

Other papers were filed in this cause to with:

Trial Court Cause No: CR2013-366 Appellant

Court Cause No: 03-14-00270-CR


**IN RE**                                    **IN THE DISTRICT COURT**

**CHRISTOPHER GRAHAM**              **COMAL COUNTY, TEXAS**

NO. CR2013-366

FILED FOR RECORD
At 2:29 o'clock P M

MAR 19 2015

HEATHER N. KELLAR
CLERK DISTRICT COURT
COMAL COUNTY, TEXAS
BY_____ DEPUTY

IN RE        )  IN THE 207TH DISTRICT COURT

           )

           )

           )

CHRISTOPHER GRAHAM   )  COMAL COUNTY, TEXAS

## APPLICATION FOR WRIT OF HABEAS CORPUS

### TO THE HONORABLE JUDGE OF SAID COURT:

Now comes accused, CHRISTOPHER GRAHAM, and makes his Application for Writ of Habeas Corpus Seeking release from confinement and release from the contempt order entered on 4/8/2014, and for good cause shows the following:

1. CHRISTOPHER GRAHAM is illegally confined and restrained of his liberty by the Sheriff of Comal County, Texas; CHRISTOPHER GRAHAM has been released pending appeal of the contempt order on a $5,000 cash bond.

2. CHRISTOPHER GRAHAM confinement and restraint is illegal because bond is excessive, oppressive and beyond the financial means of CHRISTOPHER GRAHAM, in violation of the Eighth and Fourteenth Amendments to the United States Constitution, Article I, §§ 11, 13 and 19 of the Texas Constitution, and Articles 1.09 and 17.15 of the Texas Code of Criminal Procedure. Furthermore the contempt order entered on 4/8/2014 is illegal

3. CHRISTOPHER GRAHAM respectfully requests the Court to conduct an evidentiary hearing and, after receiving evidence, to reduce the amount of bond to a reasonable amount or a personal recognizance bond in order that CHRISTOPHER GRAHAM will have an opportunity to

Application for Writ of Habeas Corpus   1

obtain release on a personal recognizance bond pending the appeal of the erroneous contempt order and that the Court grant the habeas corpus application and vacate the 4/8/2014 contempt order because of due process violations due to the following reasons:

1. Movant committed no acts intentionally disrespectful to the court, or that actually obstructed the administration of justice. The cases at issue were in no way delayed except for by actions of the Court that were independent of the actions of Movant, therefore a finding of contempt in this case was improper.

2. The Court allowed for the admission of the court transcript of all docket activities taking place on 2/25/2014. The recording of the Court transcript from the docket call of 2/25/2014 contained matters from other cases that was irrelevant to the contempt proceeding. Furthermore, it contained inadmissible hearsay. The State was unable to prove any hearsay exception calling for the admissibility of the transcript. The admission of the transcript was improper.

3. The Court did not specify that counsel would be subjected to criminal contempt for failure to announce ready at precisely 9 am at the 2/25/2014 docket call. Additionally, the Court did not state that Movant would be held in contempt by arriving at court shortly after 1:15 pm when it had announced other contested matters to be heard during the afternoon session on 2/25/2014. Furthermore, the court did not indicate in its notice of trial documentation in the State v. Cynthia Browne case that a failure to appear by counsel on 3/27/2013 would result in criminal contempt when Movant had spoken to the court coordinator and was told that the case was not going to trial on 3/31/2014. Therefore, criminal contempt was improper.

4. Movant was not afforded counsel nor informed about a right to counsel in the criminal contempt procedure. Therefore the contempt ruling is in error.

Application for Writ of Habeas Corpus          2

5. Court documentation does not reflect that Movant was properly personally served with the show cause order in either case.

6. Movant was entitled to a jury trial in this contempt action since the punishment that could have been assessed could have been more than 6 months.

7. Punishment of 15 days assessed in this case was draconian, considering that Movant is an officer of the court and has other obligations in other courts. The Court could have and should have considered other alternatives to confinement, such as a fine, community service, house arrest or reporting to confinement on weekends, or work release to name a few.

8. There was no evidence in the record to support a $5,000 cash bond that was assessed in this case. Movant is not a flight risk, dangerous, there are no victims at risk as a result of Movant's actions, there was no evidence that Movant was not dutifully going to pursue appeal in this case or neglect any court appearances. Officers of the court are typically entitled to personal recognizance bonds in contempt matters pending the appointment of an administrative judge. It should be no different on appeal. Movant requests that the cash bond be converted to a personal recognizance bond and that all bond monies be refunded to Movant..

**WHEREFORE, PREMISES CONSIDERED,** CHRISTOPHER GRAHAM prays that the Court grant this application and discharge CHRISTOPHER GRAHAM from such illegal confinement; and/or that CHRISTOPHER GRAHAM be allowed a personal recognizance appeal bond.

Respectfully submitted,

Lauren Graham & Associates PLLC
700 N. St. Mary's Street #1400
San Antonio, Texas
Tel. (210) 787-3430

Application for Writ of Habeas Corpus          3

By: _____

CHRISTOPHER L. GRAHAM
State Bar No. 24047549

## CERTIFICATE OF SERVICE

Ther is to certify that on 3/19/2015 a true and correct copy of the above and foregoing document was

served on the District Attorney's Office, Comal County, Texas via facsimile 830-608-2008 .

UNSWORN DECLARATION

"My name is CHRISTOPHER GRAHAM. I declare under penalty of perjury that the foregoing information contained in the Application for Habeas Corpus is true and correct to the best of my knowledge. Executed in County, State of Texas, on the 18th day March, 2015

_____
Declarant

Application for Writ of Habeas Corpus          4

## NO. CR2013-366

| | | |
|---|---|---|
| IN RE | ) | IN THE 207TH DISTRICT COURT |
| | ) | |
| | ) | |
| | ) | |
| CHRISTOPHER GRAHAM | ) | COMAL COUNTY, TEXAS |

### O R D E R

On _____, 2015, came on to be considered the Application for Writ of Habeas Corpus in the above styled and numbered cause, and said Application is hereby (GRANTED) (DENIED). Accordingly, the contempt order of 4/8/2014 is vacated.

Signed on _____.

_____
JUDGE PRESIDING

Application for Writ of Habeas Corpus            5



# LAUREN GRAHAM
## AND ASSOCIATES, PLLC
### ATTORNEYS & COUNSELORS
California I Illinois I New York I Texas

4.22.2015

**VIA CERTIFIED MAIL: 7014 2870 0000 9003 4357**
Comal County District Clerk
150 N. Seguin, Suite #304
New Braunfels, Texas 78130

> RE: In Re Christopher Graham, Case No. CR2013-366; Application for Habeas Corpus and request for Court date/Decision on Application

To Whom It May Concern:

I filed a request for habeas corpus in the above captioned case on 3/19/2015, almost a month has gone by without any hearing being set or any action taken by the court on the application. I have called several times to request a hearing date only to be rebuffed or given the run around. I am requesting a hearing date on my application for Habeas corpus or I am requesting that the court make a decision as soon as possible on the application.

You can reach me anytime via cell phone at 469-605-6846 should you have any questions.

Thank you for your cooperation.

Regards,

Christopher L. Graham, Esq.
LGI PLLC
Lauren Graham & Associates PLLC
State Bar Number: 24047549



FILED FOR RECORD

At 3:15 o'clock PM

MAY 1 3 2015

HEATHER N. KELLAR

CLERK DISTRICT COURT

COMAL COUNTY TEXAS

BY_____ DEPUTY

# MEMO

To:     Honorable Jack Robison
        207th District Court

FROM:   SANDRA MAGGIANI
        Community Supervision Officer

Date:   5/12/15
Re:     CHELSIE MICHELLE CHENOWETH
        CR2013-366CTI; BURGLARY OF HABITATION
        CR2013-366 CTII; TAMPER FABRICATE PHYSICAL EVID/INTENT TO IMPAIR
        CR2013-366 CT III ; THEFT OF PROPERTY >=$1,500<$20K

Attached is a Motion to Waive Probation/Supervision fees.

Ms. Chenoweth complete the Volunteers of America 90-day Treatment program

Your signature is respectfully requested.

# LAUREN GRAHAM
## AND ASSOCIATES, PLLC
### ATTORNEYS & COUNSELORS
California | Illinois | New York | Texas

5.19.2015

**VIA FACSIMILE: 830-608-2006**
**VIA EMAIL: alanid@co.comal.tx.us**

Comal District Court Clerk
150 N. Seguin, Suite #304
New Braunfels, Texas 78130

      RE:    *State v. Chenoweth, State v. Browne,* Cause Nos. CR2013-366, In the 207th District Court, Comal, Texas; Request for Clerk's Record; SUPPLEMENTAL CLERK'S RECORD REQUEST

Dear Clerk of Court:

      This letter constitutes a request for Designation of Matters in Clerk's Record in this cause. When the Clerk's Record has been prepared, please forward it to the 3rd Court of Appeals in Austin.

  Items comprising the clerk's record should include all items designated under Texas Rules of Appellate Procedure 34.5(a) and the following items:

> 1) **certified copy** of application for writ of habeas corpus filed 3/19/2015
> 2) **certified copy** of memorandum dated 5/13/2015
> 3) certified copy of letter dated 4/22/2015 from Christopher Graham to the court requesting a hearing date/decision on the application for writ of habeas corpus

      Should you have any questions please contact me as soon as possible, my cell phone number is 469-605-6846 or via email clgraham@lgi-law.com

Thank you for your cooperation.

Regards,

*Christopher Jan Gr*

Christopher L. Graham, Esq.
LGI PLLC
Lauren Graham & Associates PLLC
State Bar Number: 24047549

# BILL OF COST

## THE STATE OF TEXAS

## COUNTY OF COMAL

The Total cost assessed in this case for the Clerk's Record is $13.00

**Comal County Cause No. CR2013-366**
**207th Judicial District Court**

## IN RE

## CHRISTOPHER GRAHAM

## DISTRICT COURT OF COMAL COUNTY, TEXAS

**I, Heather N. Kellar, District Clerk** in and for Comal County, Texas do hereby certify that the foregoing is a correct account of the cost for the Clerk's Record in the above entitled and numbered cause, as of this date 21ST of **May, 2015.**

.

_____
**Heather N. Kellar, District Clerk**
**Comal County, Texas**

The State of Texas ( )

County of Comal   ( )


I, **Heather N. Kellar**, Clerk of the District Court of Comal County, Texas do hereby

Certify that the documents contained in this record to which this certification is attached

Are all of the documents specified by Texas Rule of Appellate Procedure 34.5 (a) and all

Other documents timely requested by a party to the proceeding under Texas Rule of

Procedure 34.5 (b).

**GIVEN UNDER BY HAND AND SEAL** at my office in Comal County, Texas this
**21ST  Day of MAY, 2015.**


**HEATHER N. KELLAR, DISTRICT CLERK**
**District Court, Comal County, Texas**

By: _____